1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7   CABRERA et al,                                    Case No. 2:18-cv-00304-RFB-DJA

8                               Plaintiffs,                          ORDER

9        v.

10  SERVICE EMPLOYEES INTERNATIONAL
    UNION et al,
11
12                              Defendants.

13
14   **I.     INTRODUCTION**

15       Before the Court is Plaintiffs' Motion for Reconsideration (ECF No. 134).

16
     **II.    PROCEDURAL BACKGROUND**
17
18       This case was removed to federal court on February 16, 2018. ECF No. 1. Plaintiffs filed

     the amended complaint on March 8, 2019. ECF No. 27. On May 10, 2019 Defendants Mary K.
19
     Henry and Service Employees International Union ("SEIU") filed a Motion to Dismiss, ECF No.
20
     36, as did Defendants Blue, Clark County Public Employees Assoc., and Manteca, ECF No. 38.
21
22       A hearing was held on the Motions to Dismiss and others on March 11, 2020. ECF No.

23   131. The Court ruled, *inter alia*, that Plaintiffs' first, second, third, and sixth Americans with

24   Disabilities Act ("ADA") claims, and tenth, eleventh, and twelfth Nevada state law discrimination

     claims warranted dismissal because Plaintiffs failed to adequately plead exhaustion of their
25
     administrative remedies. The Court relied on Ninth Circuit precedent to conclude that
26
     administrative exhaustion is a jurisdictional prerequisite, and that because Plaintiffs had failed to
27
     adequately plead exhaustion, the Court did not have subject matter jurisdiction over the ADA
28
     claims.

1    Plaintiffs filed the instant Motion for Reconsideration on March 31, 2020. ECF No. 134.

2    Defendants Luisa Blue, Clark County Public Employees Association, and Martin Manteca

3    responded on April 14, 2020, ECF No. 140, as did Defendant SEIU, ECF No. 141. Plaintiffs

4    replied on April 21, 2020. ECF Nos. 144, 146.

5    Plaintiffs filed a Motion to Stay Summary Judgment Deadline on April 21, 2020, pending

6    the Court's ruling on the instant motion. The Court denied the motion but extended the dispositive

7    motions deadline by two weeks while it considered the instant motion. ECF No. 151.

8

9    **III.    FACTUAL BACKGROUND**

10    The Court includes only those facts relevant to the claims at issue in the instant Motion for

11    Reconsideration, as alleged in the Amended Complaint.

12    Plaintiff Miller was employed with SEIU Local 1107 for nine years, from 2009 through

13    2017. On September 13, 2017, after a rally at Rancho High School that was part of the Trustees

14    new program, Miller collapsed in the parking lot at work while getting out of her car because the

15    changes to her working schedule made her unable to keep her blood sugar levels in check. Miller

16    had severe burning and stabbing pains in my legs after this fall.

17    On September 25, 2017, while in Canada visiting her parents, Miller collapsed again, while

18    sitting in a chair at a restaurant.

19    On September 28, 2017, Mrs. Miller visited her orthopedic doctor, Dr. Liu, due to her

20    collapsing at work. Dr. Liu recommended that Mrs. Miller have x-rays of her hips, and two weeks

21    of medical leave. That day, Mrs. Miller sent an email to her supervisors, Davere Godfrey, and

22    Local 1107 Deputy Trustee Martin Manteca, informing them that Dr. Liu had recommended two

23    weeks of medical leave, and requesting a meeting to discuss her medical condition upon her return

24    from medical leave.

25    Miller attended several appointments with her treating physicians who told her that due to

26    the change in her working schedule, which caused her diabetic mellitus to worsen, she needed to

27    request that Local 1107 give her a set work schedule or transfer her to a position with a set work

28    schedule and less standing.

1    On October 17, 2017, Miller informed the Trustees over Local 1107 of her medical

2 condition and requested that she be given an accommodation to her schedule. She and NSEUSU

3 alternatively requested that she be transferred to a front desk administrative position within the

4 bargaining unit that was filled by a temporary employment agency employee.

5    On October 19, 2017, Defendants sent Miller a formal letter regarding the October 17,

6 2017 meeting requesting additional information because her doctor's notes were insufficient due

7 to failure to include a percentage of disability and description of how her disability affected her

8 ability to perform the essential functions of her job. The letter also indicated it was unclear what

9 the qualifying disability was. Defendants also noted that Miller requested leave to meet with her

10 doctors to gather the requested information, asserting that the collective bargaining agreement did

11 not provide such leave past thirty days, and after that she would be required to use her paid time

12 off.

13    On October 23, 2017, Miller met with Dr. Liu, who once again provided recommendations

14 that Miller be provided accommodations in her job that required no more than "50% sitting and

15 50% standing during her shift." Dr. Liu's second note was provided to Defendants.

16    On October 26, 2017, the Trustees over Local 1107 sent Miller a letter denying her request

17 to be placed in the open front desk position and a fixed schedule.  The letter stated she had not

18 explained how her impairment prevented her from working her current schedule or how it

19 prevented her from performing her essential work duties, or how a desk job would help her manage

20 her diabetes. Additionally, her transfer to a front desk position would create an undue hardship on

21 Local 1107 because it would eliminate an essential job function and she did not qualify because

22 she does not speak Spanish.

23    That same day, Miller was sent an email from her supervisor Grace Vergara instructing her

24 to return to work on October 30, 2017.

25    On October 30, 2017, Miller returned to work at Local 1107 and was informed that she

26 would no longer be working her organizing territory of nearly ten years, the Saint Rose Hospitals.

27 Miller was also informed that she had been demoted from lead organizer to organizer and told she

28 would be working a new bargaining territory, the Clark County bargaining units, under another

3

organizer. The new bargaining unit territory required far more walking than Miller's prior organizing territory, as the territory was spread out amongst numerous county departments, and parking was limited. Miller protested Local 1107 increasing her work duties, rather than accommodating her disability, demoting her for requesting accommodations, and requested medical leave. Defendants required her to take paid time off.

Plaintiff Javier Cabrera was the President of the NSEUSU up until his termination on October 30, 2017. In early October 2017, while Plaintiff Cabrera was serving as NSEUSU President, he assisted with and participated in initiating the interactive process between Plaintiff Miller and Local 1107 and requested that the SEIU International trustees provide Miller with reasonable accommodations for her diabetes disability including requesting that she be given a fixed schedule, to be exempt from the additional duties of organizers imposed by the trustees upon imposition of the trusteeship to facilitate the temporary SEIU International TWR campaign, and/or be transferred to the front desk position within the NSEUSU bargaining unit, a protected activity under 42 U.S.C. § 12203(a). Within less than three weeks from Plaintiff Cabrera's participation in the interactive process to request that Defendants provide Miller with reasonable disability accommodations, Defendants terminated his employment.

Plaintiff Miller asserted disability discrimination in violation of Title I of the ADA (first claim), retaliation in violation of the ADA (second claim), and disability harassment resulting in a hostile work environment in violation of the ADA (third claim). Plaintiff Cabrera asserted retaliation in violation of the ADA (sixth claim). Plaintiff Miller also asserted disability discrimination in violation of NRS 613.330(1) (tenth clam) and retaliation in violation of NRS 613.340(1) (eleventh claim), and Plaintiff Cabrera asserted retaliation in violation of NRS 613.340(1) (twelfth claim).

## IV.    LEGAL STANDARD

### A.  Motion for Reconsideration

The Court has discretion to grant or deny a motion for reconsideration. <u>Navajo Nation v. Norris</u>, 331 F.3d 1041, 1046 (9th Cir. 2003). Pursuant to Rule 60(b) of the Federal Rules of Civil

4

Procedure, this Court may relieve the parties from its summary judgment order on various grounds, including the Court's mistake and any other reason that justifies relief. See Fed. R. Civ. P. 60(b). However, "[a] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citation and quotation marks omitted). Motions for reconsideration are disfavored, and a movant may not repeat arguments already presented. D. Nev. Civ. R. 59-1(b). Conversely, "A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, 571 F.3d at 880 (internal quotations and citations omitted).

### B.  Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences

1  from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S.

2  Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

3

4      **V.    DISCUSSION**

5      Plaintiffs assert there has been an intervening change in law that warrants reconsideration

6  of the Court's order dismissing Plaintiffs' ADA and Nevada state law claims. Specifically,

7  Plaintiffs indicate that after briefing concluded on the Motions to Dismiss, the Supreme Court

8  issued its decision in Fort Bend Cty. v. Davis, 139 S. Ct. 1843 (2019), which overturned Ninth

9  Circuit precedent this Court relied upon in granting the Motions to Dismiss Plaintiffs' ADA claims.

10     The Court dismissed Plaintiffs' ADA claims based on the Ninth Circuit's holding in

11  Sommatino v. United States, 255 F.3d 704 (9th Cir. 2001). "Title I incorporates provisions of Title

12  VII of the Civil Rights Act of 1964, as amended" and "thereby incorporates Title VII's charge

13  requirement." Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1177-78 (9th Cir. 1999).

14  The Ninth Circuit in Sommatino noted that, "In order to bring a Title VII claim in district court, a

15  plaintiff must first exhaust her administrative remedies." 255 F.3d at 707 (citations omitted). The

16  Court further noted that:

17

18         The Supreme Court has held that the failure to file a timely EEOC
           administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but
19         is merely a statutory requirement subject to waiver, estoppel and equitable tolling.
           A number of our circuit cases have also held that the administrative exhaustion
20         requirements under Title VII are not jurisdictional but are conditions precedent to
           filing an action which a defendant may waive or be estopped from asserting.
21
22         However, our case law also holds that substantial compliance with the
           presentment of discrimination complaints to an appropriate administrative agency
23         is a jurisdictional prerequisite. As we have explained, "[t]he jurisdictional scope of
           a Title VII claimant's court action depends upon the scope of both the EEOC charge
24         and the EEOC investigation." The district court has jurisdiction over any charges
           of discrimination that are "like or reasonably related" to the allegations in the EEOC
25         charge, or that fall within the "EEOC investigation which can reasonably be
           expected to grow out the charge of discrimination." Our cases also instruct that
26         abandonment or failure to cooperate in the administrative process prevents
           exhaustion and precludes judicial review.
27

28

6

> In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, we have held that the district court does not have subject matter jurisdiction.

Id. at 708-09 (citations omitted).

Subsequent to briefing on the Motions to Dismiss in this case, the Supreme Court decided Fort Bend Cty., Texas v. Davis, in which it considered the question "whether Title VII's charge-filing precondition to suit [is] a 'jurisdictional' requirement that can be raised at any stage of a proceeding; or . . . a procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted." 139 S. Ct. 1843, 1846 (2019). The Court held that "Title VII's charge-filing instruction is not jurisdictional," but a "claim-processing rule[] that must be timely raised to come into play." Id. Consequently, though Title VII's charge-filing requirement is a mandatory claim-processing rule, "an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'" Id. at 1849 (quoting Eberhart v. United States, 546 U.S. 12, 15 (2005)). Thus, the Court abrogated the Ninth Circuit's holding in Sommatino that exhaustion is a jurisdictional prerequisite.

At the hearing on the Motions to Dismiss, the Court dismissed Plaintiffs Miller and Cabrera's ADA claims on the record, relying on Sommatino. The Court found that Miller had not pled that she exhausted her administrative remedies under the ADA in the Amended Complaint, though she attached a Notice of Right to Sue to her original Motion to Amend the pleadings. The Court noted that even if it were to consider the notice filed outside the pleadings as evidence that Plaintiff had exhausted her administrative remedies as to her Title I ADA claims, the Notice did not indicate which issues the Equal Employment Opportunity Commission ("EEOC") considered, or provide any information about the nature of Plaintiff's administrative complaint before the EEOC. The Court concluded it therefore had no opportunity to ascertain whether it had subject matter jurisdiction over Plaintiff's ADA claims, because it could not determine the scope of both the EEOC charge and investigation, as necessitated by Sommatino. Consequently, the Court also could not determine whether Plaintiff Cabrera's ADA claims were as alleged, "like or reasonably related to the allegations that were contained [in] Plaintiff Miller's EEOC charge and thus properly

7

before this Court." ECF No. 27 at 23. Because Cabrera did not independently allege exhaustion, the Court found that he too had failed to adequately plead exhaustion of his administrative remedies. The Court also found that because Plaintiffs had failed to plead exhaustion as to their ADA claims and did not independently plead exhaustion as to their corresponding Nevada state law discrimination claims, claims ten, eleven, and twelve warranted dismissal.

The Court committed clear error in applying <u>Sommatino's</u> jurisdictional holding to Plaintiffs' ADA claims. Accordingly, Plaintiffs move for reconsideration of dismissal of the first, second, third, sixth, tenth, eleventh, and twelfth claims. The Court therefore reconsiders the Motions to Dismiss as to Plaintiffs' ADA claims in light of the Supreme Court's holding in <u>Fort Bend</u>.

Defendants argue Plaintiffs did not exhaust their ADA or Nevada state law claims. ECF No. 36 at 22-23; ECF No. 38 at 14. Plaintiff Miller responded that she did exhaust as evidenced by the EEOC Right to Sue letter attached to her Motion to Amend the complaint at ECF No. 17-1, and that she was not required to plead exhaustion because it is an affirmative defense. ECF No. 47 at 15; ECF No. 48 at 11-12. Plaintiff Cabrera argued his ADA claims are reasonably related to Miller's and therefore exhausted, <u>id.</u> at 15-16, and that he should not be penalized for failure to independently exhaust because it was unclear whether his ADA claim fell within the scope of the National Labor Relations Board's jurisdiction over Miller's unfair labor practice claim, <u>id.</u> at 17-18. Defendants replied the EEOC letter was not pled and should not therefore be considered and, in any event, fails to identify what claims Miller exhausted; consequently, Cabrera cannot plead his claims are "reasonably related" to Miller's ADA claims. ECF No. 60 at 5-6.

The Supreme Court has held that failure to exhaust is an affirmative defense that does not require a Plaintiff to specifically plead or demonstrate exhaustion in the complaint. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007) (treating the administrative exhaustion requirement under the Prison Litigation Reform Act as an affirmative defense). "Ordinarily, it is incumbent on the defendant to plead and prove such a defense . . . ." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 907 (2008) (citing <u>Jones</u>, 549 U.S. at 204). Nonetheless, "[a] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." <u>Jones</u>, 549 U.S. at 215 (internal quotations

1   and citations omitted).

2

3   **A.  Miller's ADA claims**

4   Plaintiffs attach Miller's EEOC charge to the Motion for Reconsideration and Defendant

5   SEIU argues that because Miller only checked the box for discrimination based on "disability" and

6   did not check "retaliation" on the EEOC charge, and because Miller's description of her grievance

7   only emphasizes discrimination based on disability, the charge on its face indicates Miller failed

8   to exhaust as to her retaliation and harassment claims (claims two and three). Plaintiff counters

9   that this argument should be reserved for summary judgment and that Plaintiff's retaliation and

10  harassment claims relate to the alleged denial of reasonable accommodations and discrimination

11  based on disability.

12  As an initial matter, the Court need not convert the motion to a Motion for Summary

13  Judgment merely because SEIU relies on the document Plaintiff herself attached to the Motion for

14  Reconsideration. "A document is not considered 'outside the pleading' for purposes of Rule 12(b)

15  'if the complaint specifically refers to the document and if its authenticity is not questioned.'"

16  Molina v. Los Angeles Cty., Dep't of Mental Health, 58 F. App'x 311, 313 (9th Cir. 2003) (quoting

17  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.1994), overruled on other grounds by Galbraith v.

18  County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). See also Coto Settlement v. Eisenberg, 593

19  F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to

20  consider documents in situations where the complaint necessarily relies upon a document or the

21  contents of the document are alleged in a complaint, the document's authenticity is not in question

22  and there are no disputed issues as to the document's relevance."). Plaintiffs explicitly refer to

23  Miller's EEOC charge in the complaint when asserting that Cabrera's ADA claim is "like or

24  reasonably related to the allegations that were contained Plaintiff Miller's EEOC charge and thus

25  properly before this Court." ECF No. 27 at 23. Accordingly, the Court may consider the EEOC

26  charge in deciding the Motions to Dismiss. See Molina, 58 F. App'x at 313 (holding that district

27  court could reference EEOC charge without going outside the pleadings where Plaintiff's

28  complaint specifically referred to her EEOC charge and right-to-sue letter). Moreover, it was

1   Miller who attached the document to the instant motion; she cannot therefore complain when

2   Defendant relies on it to carry its burden to plead and prove an affirmative defense.

3      A plaintiff has exhausted her administrative remedies if her claim "[falls] within the scope

4   of the EEOC's *actual* investigation or an 'EEOC investigation which *can reasonably be expected*

5   *to grow out of the charge of discrimination.*'" E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 899 (9th

6   Cir. 1994) (quoting Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir.1990) (emphasis in the

7   original)). Courts "construe the language of EEOC charges with utmost liberality since they are

8   made by those unschooled in the technicalities of formal pleading." B.K.B. v. Maui Police Dep't,

9   276 F.3d 1091, 1100 (9th Cir. 2002), as amended (Feb. 20, 2002) (internal quotations and citations

10  omitted). "[T]the crucial element of a charge of discrimination is the factual statement contained

11  therein." Id. (internal quotations and citations omitted). "Allegations of discrimination not

12  included in the plaintiff's administrative charge may not be considered by a federal court unless

13  the new claims are like or reasonably related to the allegations contained in the EEOC charge." Id.

14  (internal citations and quotations omitted). Further:

15

16     In determining whether a plaintiff has exhausted allegations that she did not specify
17     in her administrative charge, it is appropriate to consider such factors as the alleged
       basis of the discrimination, dates of discriminatory acts specified within the charge,
18     perpetrators of discrimination named in the charge, and any locations at which
       discrimination is alleged to have occurred. In addition, the court should consider
19     plaintiff's civil claims to be reasonably related to allegations in the charge to the
       extent that those claims are consistent with the plaintiff's original theory of the case.

20

21  Id. (citation omitted). "'[T]he administrative charge requirement serves the important purposes of

22  giving the charged party notice of the claim and narrowing the issues for prompt adjudication and

23  decision.'" Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting

24  B.K.B., 276 F.3d at 1099).

25     The EEOC charge attached to the instant motion indicates Plaintiff asserted discrimination

26  based on "disability" by checking the box for "disability" discrimination but did not check the box

27  for "retaliation" or indicate she was harassed. See ECF No. 134-2 at 2. The factual statement

28  accompanying Plaintiff's charge states:

1

2       I have been employed by SEIU Local 1107, since in or around April 2009, most recently
    as Lead Organizer. On or around October 16, 2017, I informed management regarding my
3   medical condition and need for a reasonable job accommodation. There is an
    accommodation that would allow me to perform the essential functions of the job.
4

5       I believe I was discriminated against because of my disability, in violation of the
    Americans with Disabilities Act of 1990, as amended.
6

7   Id. The factual statement is concise and does not actually indicate how Local 1107 discriminated

8   against Miller, though the implication of the charge is that Defendant did not provide the

9   reasonable accommodation as requested. The charge therefore makes clear Plaintiff exhausted her

10  disability discrimination claim (claim one), but the statement does not explicitly mention either

11  harassment or retaliation. Therefore, these allegations of discrimination are not included in

12  Plaintiff's administrative charge and the appropriate inquiry is whether the retaliation and

13  harassment claims (claims two and three) are "like or reasonably related" to the allegations as to

14  disability discrimination contained in the EEOC charge.

15      The Court considers the relevant factors identified by the Ninth Circuit in B.K.B. v. Maui

16  Police Dep't to determine whether Miller has exhausted allegations that she did not specify in her

17  administrative charge. First, the alleged basis of discrimination is disability discrimination for

18  failure to provide Plaintiff a reasonable accommodation to perform her job. The basis of the

19  discrimination does not include retaliation or harassment. Second, there is only one date specified

20  within the charge, October 16, 2017. The complaint indicates that Plaintiff had a meeting with

21  Local 1107 Deputy Trustee Martin Manteca, Organizing Coordinator Grace Vergara, Human

22  Resources manager Melody Rash, and her union Vice President, Susan Smith on October 17, 2017,

23  at which she presented doctors' notes and requested reasonable accommodations or a transfer to a

24  front desk position. ECF No. 27 at 7.  The Court infers this meeting was the event referenced in

25  the charge. Notably, Plaintiff indicated in the charge that October 16, 2017 (or thereabouts), was

26  the "latest" date the discrimination took place and did not characterize the discrimination as a

27  "continuing action," despite filing the charge on March 1, 2018, see ECF No. 134-2 at 2, well after

28  the events occurring after October 16, 2017, that form the basis of Plaintiff's ADA claims in the

1    complaint, see ECF No. 27 at 10.

2         Though it is a close question, construing the charge with the utmost liberality as required,

3    the Court finds that Plaintiff's retaliation and harassment claims fall within the scope of an EEOC

4    investigation which can reasonably be expected to grow out of the disability discrimination charge.

5    Though Plaintiff's factual statement only asserts she was denied a reasonable accommodation and

6    the charge on its face limits this denial to a single date suggesting only a single incident occurred,

7    a reasonable investigation of the failure to accommodate charge would necessarily investigate

8    what, if anything, Local 1107 did in response to Plaintiff's request. Such an investigation would

9    likely reveal, as Plaintiff alleges, that Local 1107 not only failed to accommodate the request but

10   changed the requirements for the front desk position and demoted Plaintiff. This alleged conduct

11   serves as the basis for Plaintiff's retaliation and harassment claims. Therefore, the retaliation and

12   harassment claims are "like or reasonably related to the allegations" contained in the EEOC charge,

13   thus Plaintiff has exhausted her administrative remedies for all of her ADA claims.

14        The Court therefore grants the Motion for Reconsideration as to Plaintiff Miller's ADA

15   claims, denies the Motions to Dismiss as to these claims, and reinstates claims one, two, and three.

16

17        **B.  Cabrera's ADA claim**

18        "In Title VII . . . cases, federal courts have found that so long as one plaintiff timely files

19   an administrative complaint, a class of similarly-situated plaintiffs may 'piggyback' on that

20   complaint, thereby satisfying the exhaustion requirement." Harris v. Cty. of Orange, 682 F.3d

21   1126, 1136 (9th Cir. 2012). Additionally, "an aggrieved employee who fails to file a timely charge

22   with the EEOC may still be able to pursue a claim under the piggyback or single-filing rule, in

23   which the employee 'piggyback[s]' onto the timely charge filed by another plaintiff for purposes

24   of exhausting administrative remedies." Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189,

25   1202 (9th Cir. 2016) (citing Harris, 682 F.3d at 1136).  "The piggyback rule is a judicially created

26   equitable tolling rule 'based on the observation that it would be duplicative and wasteful for

27   complainants with similar grievances to have to file identical notices of intent to sue with a

28   governmental agency.'" Id. While the Ninth Circuit has not elucidated an explicit standard by

which to determine whether a "similarly-situated" plaintiff may piggyback on another's administrative complaint, courts in this circuit have held that the rule may apply outside of the class action and collective action context so long as the relevant claim involves the "'same or similar discriminatory conduct, committed in the same period,' of which both the EEOC and the employer had notice.'" Martinez v. Victoria Partners, No. 2:12-CV-502-JAD-VCF, 2014 WL 1268705, at *6 (D. Nev. Mar. 27, 2014) (quoting Horton v. Jackson Cty. Bd. of Cty. Comm'rs., 343 F.3d 897, 899 (7th Cir. 2003)). "[A] single charge of discrimination may be sufficient to put an employer on notice that additional people may be subject to the same unlawful employment practices." Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189, 1203 (9th Cir. 2016), cert. denied sub nom. Geo Grp., Inc. v. EEOC, 137 S. Ct. 623 (2017).

In response to the Motion for Reconsideration, Defendant Local 1107 impliedly concedes that Miller has exhausted her administrative remedies, but asserts that the Amended Complaint "affirmatively alleges" that Plaintiff Cabrera failed to exhaust administrative remedies and that Fort Bend does not provide support for Cabrera's allegation that his ADA claims are "reasonably related" to Miller's ADA claims and therefore do not require exhaustion. ECF No. 140 at 3-4. Similarly, SEIU argues in response that Cabrera conceded in his response to the original Motion to Dismiss that he did not fulfill the charging requirements either of the ADA or of Nevada state law because he was confused. ECF No. 141 at 6-7 (citing ECF No. 47 at 17). Local 1107 further argues that Cabrera's claims fall within the NLRB's jurisdiction, as evidenced by the NLRB's conclusion in its decision that Cabrera was engaged in union activities when he advocated on behalf of staff members as President of the Staff Union. Id. at 4 (citing Serv. Employees Int'l Union Local 1107 Respondent & Javier Cabrera, an Individual Charging Party, No. 28-CA-209109, 2019 WL 3283303 (July 18, 2019), ECF No. 56-1).

Cabrera contends that his ADA claims are "like or reasonably related" to Miller's ADA claims, such that his failure to exhaust does not otherwise prove fatal to his ability to have his claims heard in federal court. Cabrera conflates two related yet distinct inquiries. The "like or reasonably related" standard applies when the inquiry is whether a plaintiff's civil claims are "like or reasonably related" to allegations in the administrative charge such that the *claims* are properly

13

1    before the court. This standard necessarily assumes an administrative charge was filed. By
2    contrast, the "piggyback" rule considers whether one plaintiff who has failed to independently
3    exhaust administrative remedies may rely on the administrative charge of a similarly-situated
4    plaintiff to satisfy exhaustion. The former inquiry concerns the appropriateness of *claims* before
5    the Court; the latter concerns whether a particular *plaintiff* has satisfied the mandatory claims-
6    processing rules and is properly before the Court. The latter inquiry necessarily comes first when,
7    as here, a plaintiff has failed to independently exhaust his administrative remedies. To conclude
8    otherwise would allow Cabrera to usurp the mandatory claims-processing rules simply because he
9    alleges his ADA *claim* is like or reasonably related to Miller's.

10            Thus, because it is evident from the face of the Amended Complaint that Cabrera failed to
11   exhaust his administrative remedies, the appropriate initial inquiry is whether he may "piggyback"
12   off Miller's administrative charge, such that he is relieved of the necessity of filing an
13   administrative claim. The Court finds that Cabrera is not similarly situated to Miller and may not
14   therefore piggyback off her administrative charge. As discussed *supra*, Miller's ADA claims arise
15   from Local 1107's alleged failure to accommodate her disability, and her retaliation and
16   harassment claims are necessarily tied to that alleged failure. By contrast, Cabrera does not claim
17   to suffer from a disability or that he sought a reasonable accommodation and was denied, rather
18   he claims that he was retaliated against in violation of the ADA for advocating on behalf of
19   Plaintiff Miller. Consequently, Miller and Cabrera did not suffer from the "same or similar
20   discriminatory conduct, committed in the same period." Horton, 343 F.3d at 899.  Further, nowhere
21   in Miller's charge is there *any* indication that Local 1107's alleged discriminatory conduct was
22   perpetrated against or affected anyone but Miller, and even if there were, such a charge would not
23   contemplate a plaintiff like Cabrera, whose own claim indicates he did not suffer from the kind of
24   discriminatory conduct alleged in the charge. Therefore, neither the EEOC nor Local 1107 would
25   have notice of the claim Cabrera now asserts. Consequently, the separate retaliation claims asserted
26   by Plaintiffs are alike in name only. Thus, even assuming, *arguendo*, that Cabrera's retaliation
27   claim is like or reasonably related to the allegations in Miller's administrative charge, this would
28   not otherwise relieve Cabrera of his obligation, as a plaintiff not similarly situated to Miller, to file

14

1    his own administrative charge. A mandatory claims-processing rule is just that—mandatory.

2    Cabrera admits he did not file an administrative charge and the Court finds he cannot piggyback

3    off Miller's. As such, the Court denies the Motion for Reconsideration as to Cabrera's ADA claim

4    and declines to reinstate the sixth claim for relief.

5

6            **C.  Nevada state law claims**

7            Defendants collectively assert that <u>Fort Bend</u> does not apply to Plaintiffs' disability

8    discrimination claims under Nevada state law and that Nevada law considers administrative

9    exhaustion requirements to be jurisdictional; as Plaintiffs failed to plead exhaustion of the Nevada

10   state law claims (claims ten, eleven, and twelve), these claims must be dismissed. Plaintiffs counter

11   that <u>Fort Bend</u> does apply because the Nevada Supreme Court has previously held that the Court

12   looks to federal courts for guidance in discrimination claims. ECF No. 144 at 10 (citing <u>Pope v.</u>

13   <u>Motel 6</u>, 114 P.3d 277, 280 (Nev. 2005)).

14           "Under NRS 613.330(1), it is an unlawful employment practice to discharge any individual

15   because of his or her race, color, sex, religion, sexual orientation, age, disability or national origin.

16   However, NRS 613.420 requires an employee alleging employment discrimination to exhaust her

17   administrative remedies by filing a complaint with [the Nevada Equal Rights Commission

18   ("NERC")] before filing a district court action." <u>Pope v. Motel 6</u>, 114 P.3d 277, 280 (Nev. 2005)

19   (citation omitted). The Nevada Supreme Court has held that "an employee claiming discrimination

20   under NRS 613.420 is obligated to file a claim with the NERC and to have that agency adjudicate

21   the claim before it can properly be brought in district court." <u>Palmer v. State</u>, 787 P.2d 803, 804

22   (Nev. 1990) (citing <u>Copeland v. Desert Inn Hotel</u>, 673 P.2d 490 (Nev. 1983)). In <u>Palmer v. State</u>,

23   the Nevada Supreme Court carved out a narrow exception to the exhaustion requirement, holding

24   that exhaustion is not required when "a complainant may face a statute of limitations deadline or

25   an irretrievable loss of evidence" because of prolonged inaction by the NERC on the administrative

26   claim. <u>Id.</u> at 805. Crucially however, the Court concluded: "Nevertheless, because the basic policy

27   of the statute favoring exhaustion of administrative remedies must be respected, it will always be

28   the complainant's burden to convincingly prove that his or her claim is realistically endangered by

15

1   any prolonged inaction by the NERC. Absent such evidence, the exhaustion doctrine will apply."

2       In <u>Allstate Ins. Co. v. Thorpe</u> the Nevada Supreme Court noted that it had previously

3   reasoned that a failure to exhaust deprives a district court of subject matter jurisdiction but

4   subsequently held that it renders a matter unripe for review. 170 P.3d 989, 993 (Nev. 2007). The

5   Court went on to state:

6

7       [W]hether couched in terms of subject-matter jurisdiction or ripeness, a person generally
        must exhaust all available administrative remedies before initiating a lawsuit, and failure

8       to do so renders the controversy nonjusticiable. The exhaustion doctrine gives
        administrative agencies an opportunity to correct mistakes and conserves judicial

9       resources, so its purpose is valuable; requiring exhaustion of administrative remedies often
        resolves disputes without the need for judicial involvement.

10

11

12   <u>Id.</u> at 993-94. The Court has subsequently reiterated this holding. <u>See, e.g.</u>,   <u>Mesagate</u>

13   <u>Homeowners' Ass'n v. City of Fernley</u>, 194 P.3d 1248, 1252 (Nev. 2008) (citing <u>Allstate</u>, 170 P.3d

14   at 993-94); <u>Miz Lola's Spirits & Gaming, LLC v. Cty. of Clark</u>, 129 Nev. 1139 (2013) (citing

15   <u>Mesagate</u>, 194 P.3d at 1252).

16       Thus, while it is clear that Plaintiffs are required to exhaust their administrative remedies

17   with the NERC before initiating suit in this Court, because the Nevada Supreme Court has not

18   indicated whether NRS 613.420 is a jurisdictional or mandatory claims-processing rule, it is not

19   clear whether Plaintiffs were required to *plead* exhaustion in order to seek relief for alleged

20   disability discrimination and retaliation under the state statute, or whether this burden fell upon

21   Defendants in the form of an affirmative defense. <u>Fort Bend</u> provides no guidance on this question

22   as the Supreme Court considered federal law in that case, and though the Nevada Supreme Court

23   has noted that it looks to federal law for guidance in discrimination claims, this Court is unwilling

24   to rely on that dicta to definitively decide the nature of exhaustion and its effect on state law

25   discrimination claims.

26       The Court need not decide this issue however, because Defendants SEIU and Henry

27   represented in their Motion to Dismiss that Nevada has a "work sharing agreement" with the

28   EEOC, such that "exhaustion of administrative remedies with either [the EEOC or NERC]

16

constitutes exhaustion with both entities." ECF No. 36 at 22 (quoting <u>Pulsipher v. Clark Cty.</u>, Case No. 208-cv-01374-RCJ-LRL, 2010 WL 3781809, at *5 n.5 (D. Nev. Sept. 20, 2010)). <u>See also Cooper v. Eighth Judicial Dist. Court in & for Cty. of Clark</u>, No. 74907, 2018 WL 3222743, at *2 (Nev. App. June 18, 2018) (citing <u>Narayanan v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ. ex rel. Univ. of Nev., Reno</u>, No. 3:11-CV-00744-LRH-VPC, 2013 WL 2394934, at *5 (D. Nev. May 30, 2013); <u>Pulsipher v. Clark Cty.</u>, No. 2:08-CV-01374-RCJ-LRL, 2010 WL 3781809, at *5 n.5 (D. Nev. Sept. 20, 2010); <u>Puryear v. Cty. of Roanoke</u>, 214 F.3d 514, 518 n.4 (4th Cir. 2000)) ("[F]ederal courts have held that filing with one entity constitutes filing with both entities, such that [Plaintiff] exhausted her administrative remedies by filing her claim with the EEOC."); <u>Fort Bend</u>, 139 S. Ct. at 1846 ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other."); <u>Nickler v. Clark Cty.</u>, No. 19-15761, 2020 WL 710229, at *1 (9th Cir. Feb. 12, 2020) (citing <u>Laquaglia v. Rio Hotel & Casino, Inc.</u>, 186 F.3d 1172, 1174-75 (9th Cir. 1999) ("On appeal, [Plaintiff] alleges that there is a worksharing agreement between the EEOC and the Nevada Equal Rights Commission that would render her claims timely. There are sufficient indicia in our caselaw that such an agreement exists and would be relevant to the timeliness of the claims."). Indeed, the EEOC charge attached to the Motion for Reconsideration states that by signing the document, Miller indicated "I want this charge filed with both the EEOC and the State or local Agency, if any . . . ." ECF No. 134-2 at 2. The attached letter from the EEOC indicates that once Miller's signed EEOC charge form was received, the EEOC would forward a copy to the NERC, which the EEOC advised would "investigate and resolve the charge under their statute" if the NERC "processes the charge." <u>Id.</u> at 3.

Additionally, the statute governing the NERC suggests that there is indeed some cooperation between that body and the EEOC. Nevada Revised Statutes § 233.160(1) states that a complaint alleging unlawful discrimination "is timely if it is filed with an appropriate federal agency within that period." Further, it states, "A complainant shall not file a complaint with the Commission if any other state or federal administrative body or officer which has comparable

jurisdiction to adjudicate complaints of discriminatory practices has made a decision upon a complaint based upon the same facts and legal theory." Nev. Rev. Stat. § 233.160(1).

Therefore, because the Court has found that Miller has exhausted her administrative remedies as to her ADA claims, this alone may be sufficient to satisfy exhaustion of her corresponding disability discrimination and retaliation state law claims. At the very least, the complaint contains sufficient facts for the Court to reasonably infer that Miller has stated plausible claims for relief on her state discrimination claims. The Court cautions that it does not conclude Miller has *proven* that she has exhausted her administrative remedies with the NERC. Rather, the Court has concluded that the complaint contains sufficient factual information to defeat a Motion to Dismiss based on failure to exhaust. Defendants are therefore free to re-assert the argument in a subsequent motion for summary judgment.

The same may not be said for Cabrera, however. As with his ADA claim, Cabrera alleges his state retaliation claim "is reasonably related to the allegations that were contained in Plaintiff Miller's EEOC charge . . . ." ECF No. 27 at 39. This assertion makes plain Cabrera did not exhaust his administrative remedies with the NERC and as discussed *supra*, it matters not whether *his* claim is "like or reasonably related" to Miller's for purposes of ascertaining whether *he* has adequately exhausted his administrative remedies. The Nevada Supreme Court has clearly held that exhaustion is required. Because Cabrera has failed in this regard, his state discrimination claim may not proceed.

The Court therefore grants the Motion for Reconsideration as to Miller's state law discrimination claims, denies the Motions to Dismiss as to these claims, and reinstates claims ten and eleven. The Court denies the Motion for Reconsideration as to Cabrera's state law discrimination claim and declines to reinstate claim twelve.

//

//

//

//

//

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Reconsideration (ECF No. 134) is GRANTED in part and DENIED in part as discussed in this order. Claims one, two, three, ten, and eleven are reinstated and may proceed. Claims six and twelve remain dismissed.

**IT IS FURTHER ORDERED** that the dispositive motions deadline is extended an additional sixty (60) days. The parties shall have until July 22, 2020 to file dispositive motions in this action.

DATED May 19, 2020.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**