1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Javier Cabrera et al., | Case No. 2:18-cv-00304-RFB-DJA |
| Plaintiffs, | **ORDER** |
| v. | |
| Service Employees International Union et al, | |
| Defendants. | |

## I.      INTRODUCTION

Before the Court is Defendants' Blue, Clark County Public Employees Association, and Manteca's Motion for Sanctions (ECF No. 40). The Court grants the motion.

## II.      PROCEDURAL BACKGROUND

Defendants removed this case from state court on February 16, 2018.  ECF No. 1.

Plaintiffs filed a Motion for Summary Judgment on March 5, 2018.  ECF No. 6. Defendants responded on March 26, 2018.  ECF No. 10. Plaintiffs replied on April 9, 2018.  ECF No. 11.

Defendants Blue, Clark County Public Employees Assoc., and Manteca filed a Notice of Related Cases on March 14, 2019. ECF No. 8.

Defendants filed a Motion to Dismiss on April 20, 2018.  ECF No. 12. Plaintiffs responded on May 4, 2018.  ECF No. 13. Defendants replied on May 11, 2018.  ECF No. 14.

Plaintiffs filed a Motion to Amend/Correct Petition for Removal on June 11, 2018.  ECF No. 17.

Discovery was stayed on August 6, 2018.  ECF No. 23.

The Court held a hearing on February 22, 2019 during which it granted the Motion to

1    Amend the Complaint and denied as moot the Motion for Summary Judgment and Motion to

2    Dismiss in light of the allowance of amendment. ECF No. 25. The Court further lifted the stay on

3    discovery. Id.

4           Plaintiffs filed the amended complaint on March 8, 2019. ECF No. 27.

5           On May 10, 2019, Defendants Mary K. Henry and SEIU filed a Motion to Dismiss. ECF

6    No. 36.  Plaintiff Mancini responded on May 24, 2019. ECF No. 47. Defendants replied on June

7    7, 2019. ECF No. 59.

8           That same day, Defendants Henry and SEIU filed a Motion to Sever the Thirteenth,

9    Fourteenth, and Fifteenth Claims for Relief and Consolidate those Claims with Pending Actions

10   before Judge Gordon. ECF No. 37. Defendants Blue, Clark County Public Employees Association,

11   and Manteca joined on May 14, 2019. ECF No. 42. Plaintiff Cabrera responded on May 24, 2019.

12   ECF No. 51. Defendants replied on June 7, 2019. ECF No. 59.

13          That say dame, Defendants Blue, Clark County Public Employees Assoc., and Manteca

14   filed a Motion to Dismiss. ECF No. 38.  Plaintiff Cabrera responded on May 24, 2019. ECF No.

15   48. Defendants replied on June 7, 2019. ECF No. 61. On July 22, 2019, Plaintiff Cabrera filed a

16   Request for Judicial Notice asking the Court to take notice of the NLRB's decision regarding

17   Cabrera's unfair labor practice claim. ECF No. 65. Defendants responded on August 1, 2019. ECF

18   No. 66. Defendants Blue, Clark County Public Employees Assoc, and Manteca joined the response

19   on August 3, 2019, ECF No. 67, and filed a response on the same day, ECF No. 68.  Plaintiff

20   replied to both responses on August 9, 2019. ECF No. 70.

21          On May 10, 2019, Defendants Blue, Clark County Public Employees Assoc., and Manteca

22   filed a Motion to Strike the Amended Complaint. ECF No. 39. Defendants Henry and SEIU joined

23   the motion on May 10, 2019. ECF No. 41. Plaintiff Cabrera responded on May 24, 2019. ECF No.

24   49. Defendants replied on June 7, 2019. ECF No. 62.

25          On May 10, 2019, Defendants Blue, Clark County Public Employees Assoc., and Manteca

26   filed the instant Motion for Sanctions. ECF No. 40. Defendants Henry and SEIU joined the motion

27   on May 14, 2019. ECF No. 41. Plaintiff Cabrera responded on May 24, 2019. ECF No. 50.

28   Defendants replied on June 7, 2019. ECF No. 63.

1    A hearing on the Motion to Dismiss (ECF No. 36), Motion to Sever and Consolidate (ECF
2   No. 37), Motion to Dismiss (ECF no. 38), Motion to Strike (ECF No. 39) and the instant Motion
3   for Sanctions (ECF No. 40) was held on March 11, 2020. The Court granted the Motions to Dismiss
4   in part, dismissing claims one, two, three, four, six, nine, ten, eleven, twelve, thirteen, fourteen,
5   and fifteen, and allowing claims five, seven, and eight to proceed. ECF No. 131. The Motion to
6   Sever and Consolidate and Motion to Strike were denied as moot. Id. Subsequently, the Court
7   granted in part Plaintiffs' Motion for Reconsideration (ECF No. 134) and reinstated claims one,
8   two, three, ten, and eleven. ECF No. 152.

9    At the hearing, the Court took the instant motion under submission. This order follows.

10

11   **III.    FACTUAL BACKGROUND**

12    Three cases arising from events stemming from the imposition by Service Employees
13   International Union ("SEIU") of an emergency trusteeship over Local 1107 have been filed in this
14   District. In addition to this case, two additional consolidated cases were before the Honorable
15   Judge Gordon. See 2:17-cv-01340-APG-NJK. The cases before Judge Gordon focused on events
16   stemming from the trusteeship itself, while the instant action concerns claims of disability
17   discrimination and breach of the collective bargaining agreement.

18    At the hearing before this Court on February 22, 2019, during which the Court granted
19   Plaintiffs leave to amend the complaint to add relevant claims, the parties discussed the distinction
20   between the unfair labor practices claim that was at the time before the National Labor Relations
21   Board, and the proposed breach of contract claim relating to the collective bargaining agreement
22   that Plaintiff sought to include in the proposed amended complaint. See Tr. at 3-26, ECF No. 28.
23   The parties also discussed the possibility of claim and issue preclusion in the instant case as an
24   effect of Judge Gordon's rulings in the related case. Id. at 28-36. In particular, the parties discussed
25   the possibility of issue and claim preclusion regarding Plaintiff Mancini's claims, and the viability
26   of potentially severing those claims from the instant action and bringing them before Judge
27   Gordon, or vice versa. Id. at 27, 35, 42. Ultimately, the Court decided that Plaintiff' Mancini's
28   claims should remain before Judge Gordon, and that the pending Motion for Summary Judgment

3

1    and Motion for Reconsideration before Judge Gordon should be decided before the Court would

2    consider allowing the claims to be transferred to the instant action. Id. at 64-65, 66-68. The Court

3    permitted Plaintiff Mancini to amend her claims as discussed, so long as they did not contain

4    claims before Judge Gordon. Id. at 65.

5         The Court specifically admonished Plaintiffs' counsel not to include claims that would

6    implicate issues currently pending before Judge Gordon. Specifically, the Court stated, *inter alia*:

8         So it sounds like to me the issue is that any findings about the motivation of the
          different individuals who are at issue in his case, that -- that set of findings could

9         be related to the validity of the trusteeship because if they're engaged in improper
          discipline action as part of a larger pattern, that would include subsequent use for

10        the justification of the trusteeship. That would involve us both making
          determinations about witnesses and their motivations, would it not?

12        . . .

13        No, it's not a question of the issues. It's a question of if I have to make a ruling or
          if there are issues or findings that have to be made about motivations of individuals

14        and a larger pattern of conduct. I'm not going to do that if that's going to implicate

15        what happens in front of Judge Gordon, and it sounds to me like that's exactly what
          may be an implication. And so for now what we'll do is this. For now, I will let

16        Judge Gordon decide the motion for reconsideration, decide what he wants to do.
          What you can let Judge Gordon know is if he thinks after looking at my case that

17        those cases should properly be brought before me, I'm willing to accept them if he
          thinks they should be brought before me. So, in other words, if in looking at that he

18        thinks that it's appropriate for that claim from an efficiency standpoint to be brought
          before me, I will allow it and I will communicate that to him as well. But it doesn't

19        seem to me, Mr. Mcavoyamaya, that they are as unrelated as you are saying they

20        are because it involves a determination about the motivations and conduct of
          individuals who are involved with all of the conduct. And if that's the case, I don't

21        want to be doing that.

23        . . .

24        I don't want us to be in a situation where we have different findings about conduct
          that may not be sort of directly related, but it's sufficiently related that we would

25        use it as part of a basis for our findings about how individuals behave. If that is the
          case, then I want to avoid that, right, because it seems to me that -- and I want you

26        to be clear about that because that also has to deal with some of the retaliation

27        claims you're suggesting for Mr. Cabrera, too. I just want to be clear, you can't bring
          claims where you're going to say –

28

4

. . .

If you're going to say that they did this in preparation for the trusteeship, one, if you're going to say this is a part of a practice that also involves them related to the trusteeship, that's also not going to be permitted. If the claim is in any way dependent upon me finding a course or pattern of conduct that is related to the trusteeship and how it was imposed, that claim -- I just want to be very clear. If I make that determination, you understand . . . that claim will be dismissed.

. . .

The defendants will be able to argue to me in this case because of the limitations I'm placing on the claim that this particular claim is dependent upon certain aspects related to the trusteeship. If I make that determination, right, I'm going to exclude whatever aspect of the claim that depends upon that. And if I find that the claim can't validly proceed without a finding on that, the claim will be dismissed. Do you understand that?

Id. at 59-62. When asked if he understood the Court's order, Plaintiffs' attorney responded, "Absolutely." Id. at 62.

Defendants filed the instant motion arguing, *inter alia*, that Plaintiffs defied the Court's order issued at the hearing by including claims that implicate issues then-pending before Judge Gordon in the Amended Complaint. ECF No. 40 at 3-5.

## IV.    LEGAL STANDARD

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Local Rule IA 11-8 governs sanctions and states that the Court may, after notice and an opportunity to be heard, impose sanctions on an attorney or party who, *inter alia*, fails to comply with a court order.

Under the "American rule," attorney's fees may not be awarded absent statutory or contractual authorization, or a finding of bad faith. Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 257 (1975). "[F]ederal courts, in the exercise of their equitable powers, may award

5

1    attorneys' fees when the interests of justice so require." <u>Hall v. Cole</u>, 412 U.S. 1, 4-5 (1973)

2    (citations omitted). "Thus, it is unquestioned that a federal court may award counsel fees to a

3    successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for

4    oppressive reasons.' In this class of cases, the underlying rationale of 'fee shifting' is, of course,

5    punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad

6    faith' on the part of the unsuccessful litigant." <u>Id.</u> at 5 (citations omitted). "The imposition of

7    sanctions in this instance transcends a court's equitable power concerning relations between the

8    parties and reaches a court's inherent power to police itself, thus serving the dual purpose of

9    'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt

10   of court and mak[ing] the prevailing party whole for expenses caused by his opponent's

11   obstinacy.'" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46 (1991) (citations omitted).

12          "A court must, of course, exercise caution in invoking its inherent power, and it must

13   comply with the mandates of due process, both in determining that the requisite bad faith exists

14   and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that

15   could be adequately sanctioned under the [Federal Rules of Civil Procedure], the court ordinarily

16   should rely on the Rules rather than the inherent power. But if in the informed discretion of the

17   court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent

18   power." <u>Id.</u> at 50.

19

20          **V.     DISCUSSION**

21          In its ruling from the bench at the recent hearing on the various motions held on March 11,

22   2020, the Court dismissed, *inter alia*, the thirteenth, fourteenth, and fifteenth claims from the

23   Amended Complaint as duplicative of the action then-pending before Judge Gordon. This ruling

24   necessarily indicates that Plaintiffs defied this Court's order not to include claims that implicate

25   the consolidated case before Judge Gordon.

26          To determine whether a suit is duplicative, the test for claim preclusion is applied. <u>Adams</u>

27   <u>v. California Dep't of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007), <u>overruled on other grounds</u>

28   <u>by</u> <u>Taylor v. Sturgell</u>, 553 U.S. 880, 904 (2008). "Thus, in assessing whether the second action is

duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." Id. at 689 (citing The Haytian Republic, 154 U.S. 118, 124 (1894)). To determine whether successive causes of action are the same, the transaction test is employed. Id. "'Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.'" Id. (quoting Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992)). The transaction test considers four criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts . . . . The last of these criteria is the most important." Id. (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).

To state a claim for defamation under Nevada law, Plaintiff must allege: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. Chowdhry v. NLVH, Inc., 851 P.2d 459, 462 (Nev. 1993).

Regarding the thirteenth claim, a review of Mancini's complaint for injunctive relief before Judge Gordon, and Mancini's Motion for Reconsideration of Judge Gordon's order dismissing part of her claim, obviously indicates these claims arise out of the same transactional nucleus of facts. They both concern Mancini's removal as president of Local 1107 and allege procedural deficiencies in the hearing she received that ultimately resulted in a denial of her rights. Compare ECF No. 27 at 39-44 with ECF No. 37-2 at 1-18. Furthermore, since the filing of the instant motion as well as others, Judge Gordon has ruled on Plaintiff's Motion for Reconsideration as well as Defendants' Motion for Summary Judgment in that case, and held that Mancini failed to point to any evidence to suggest she did not receive a full and fair hearing. Garcia v. Serv. Employees Int'l Union, No. 217CV01340APGNJK, 2019 WL 4279024, at *3-4 (D. Nev. Sept. 10, 2019). Additionally, Judge Gordon held that "Although it appears the charges against Mancini did not exactly follow the procedural steps Henderson advised Mancini to take when filing charges against

1   others, Mancini has not raised a genuine dispute that she was denied a full and fair hearing as a

2   result." Id. at *7.

3          It is evident from this ruling that Plaintiff's thirteenth claim is duplicative. As an initial

4   matter, the parties are the same. Second, it is clear that an application of the transaction test

5   indicates the causes of action and relief sought are also the same.

6          This ruling clearly considers and rules upon the same allegations made in the thirteenth

7   claim, which states, inter alia, that Defendants breached the SEIU International and Local 1107

8   constitutions resulting in "an unlawful and unfair disciplinary process" culminating with Mancini's

9   removal "based on knowingly procedurally defective charges . . . ." ECF No. 27 at 43.

10  Furthermore, the thirteenth claim states that the charges against Mancini were procedurally

11  defective and did not comply with the Local 1107 or SEIU International constitutions, yet the

12  members who made the charges were "exempt[ed]" from the procedural requirements for filing

13  charges while Defendants "strictly enforced" the constitutional requirements as to other charging

14  parties. Id. at 42-3. This is essentially another way of saying Mancini was treated differently than

15  others, which is exactly what Plaintiff stated in her Motion for Reconsideration before Judge

16  Gordon, see ECF No. 37-5 at 4-20, and precisely the argument he considered and rejected. In order

17  to resolve Plaintiff's Motions for Reconsideration and Defendants' Motion for Summary

18  Judgment, Judge Gordon considered the procedural deficiency allegations made by Plaintiff,

19  specifically how she was held to a stricter standard than those who made the charges against her,

20  to conclude that these deficiencies did not ultimately affect her ability to receive a full and fair

21  hearing. Judge Gordon therefore had to consider the very same transactional nucleus of facts

22  regarding the procedural deficiencies that this Court must consider in determining whether

23  Defendants breached the collective bargaining agreement and contract between unions by failing

24  to apply the procedural requirements expounded in the Local 1107 and SEIU constitutions equally,

25  thereby depriving Plaintiff Mancini of her rights under the constitutions.

26         Regarding the other prongs of the transaction test, it is clear Defendants' rights would be

27  impaired by prosecution of this claim in this action, as Judge Gordon granted their Motion for

28  Summary Judgment and explicitly stated that Mancini provided no evidence she was denied a full

1    and fair hearing despite the procedural deficiencies. In order to rule on Plaintiff's claim, this Court

2    would have to consider the same procedural deficiencies to determine if they amounted to a breach

3    of the SEIU International and Local 1107 constitutions, resulting in harm to Plaintiff. But Judge

4    Gordon has already examined these same facts and concluded that Plaintiff received a full and fair

5    hearing. Therefore, if it has already been determined Plaintiff received a full and fair hearing, this

6    Court cannot then conclude that Defendants' alleged breach of the procedural requirements

7    expounded in their respective constitutions caused Plaintiff harm, since Plaintiff's harm stems

8    from having been disciplined, and another Court has concluded that discipline was valid. Allowing

9    this claim to proceed would effectively allow Plaintiff a second bite at the apple.

10           Additionally, because the two claims arise out of the same transactional nucleus of facts,

11   the evidence presented on this claim and considered by Judge Gordon would necessarily be

12   substantially the same, if not essentially identical.

13           Finally, though Plaintiff couched her cause of action arising out of these facts before Judge

14   Gordon initially as "improper notice of specific charges" in violation of LMRDA and subsequently

15   attempted in the First Amended Complaint to characterize it as "denial of a full and fair disciplinary

16   hearing" in violation of the LMRDA, and in this action identifies her cause of action as a breach

17   of the collective bargaining agreement and contract between unions, the allegations amount to

18   infringement of the same right. Essentially, Plaintiff alleges in the thirteenth claim that Defendants'

19   alleged refusal to comply with the constitutional provisions governing the process applied to her

20   disciplinary hearing constituted a breach that "resulted in an unlawful and unfair disciplinary

21   process," resulting in her removal as Local 1107 President and suspension of her membership,

22   causing her "significant economic loss and financial harm." ECF No. 27 at 43-44.  This was

23   precisely the claim considered and rejected by Judge Gordon—denial of a full and fair disciplinary

24   hearing. That Plaintiff seeks economic damages here makes no difference. A federal court has

25   already concluded she received a full and fair disciplinary hearing. Therefore, she has no damages.

26   Thus, simply because Plaintiff has styled the thirteenth claim differently, does not change the fact

27   that its substance remains the same as claims fully litigated previously.

28           The Court therefore finds that the thirteenth claim is duplicative.

1    Regarding the fourteenth claim, the Court also finds it to be duplicative. The parties are the

2    same, and an application of the transaction test indicates the cause of action and relief sought are

3    also the same.

4    Starting again with the "most important" criteria to consider in the transaction test, it is

5    again clear that this claim arises out of the same transactional nucleus of facts as Mancini's claim

6    before Judge Gordon that she was disciplined for engaging in protected speech in violation of the

7    LMRDA. Judge Gordon found that there was no genuine dispute that the union's decision to

8    discipline Mancini was reasonably related to protecting the union, Garcia, 2019 WL 4279024, at

9    *10, and that Mancini "publicly accused the bargaining committee of malfeasance," id. Thus,

10   Judge Gordon necessarily considered the same statements in the Internal Charges Report and

11   Recommendation authored by Defendant Nieters as those at issue here, and implicitly ruled on

12   their veracity. Thus, the fourteenth claim arises out of the same transactional nucleus of facts.

13   Considering the other three criteria of the transaction test, the rights or interest of

14   Defendants would be substantially impaired by prosecution of the defamation claim. As discussed

15   *supra*, Judge Gordon held that Mancini received a full and fair hearing, and in doing so necessarily

16   considered the evidence at issue. Plaintiff seeks here to contend that the Internal Charges Report

17   and Recommendation resulting from the hearing included "numerous false and defamatory

18   statements;" if this Court were to find that evidence in the form of statements supporting the

19   Report's findings was illegitimate, it would necessarily undermine the finding that Plaintiff

20   received a full and fair hearing, thereby forcing Defendants to essentially relitigate the prior claim.

21   Regarding the evidence presented in the two actions, this too would be substantially the

22   same. In order to determine whether the alleged statements were false and defamatory, the Court

23   would have to consider the evidence considered at Plaintiff's disciplinary hearing and evaluated

24   by Judge Gordon.

25   Finally, Plaintiff styled her argument before Judge Gordon as not having received a full

26   and fair hearing due to procedural deficiencies and that she was engaged in protected speech, and

27   here alleges defamation, and the Court therefore finds that the two suits do not involve

28   infringement of the same right. While Defendants argue the right to due process in an internal

10

1    union hearing and the right not to be subject to dishonest statements regarding Plaintiff's fitness

2    as a union officer are substantially the same right, the Court finds they are related but distinct.

3    Defamation concerns attacks to reputation, which may still occur even if Plaintiff was said to

4    receive, on balance, a full and fair hearing. However, this factor is not enough to overcome the

5    balance of the transaction test, which clearly supports a finding that Plaintiff's defamation claim

6    is duplicative.

7         Finally, the fifteenth claim too is duplicative. In fact, Plaintiff moved in the consolidated

8    action before Judge Gordon to bring precisely the same claim. Compare 2:17-cv-01340-APG-NJK,

9    ECF No. 266-2 at 39-44 with ECF No. 27 at 46-51. Judge Gordon denied the Motion for

10   Reconsideration which sought to amend the complaint by adding these claims. Garcia, 2019 WL

11   4279024, at *1. The Court notes that the Motion for Reconsideration was filed in the consolidated

12   action on January 28, 2019, while the Amended Complaint in this action was filed on March 8,

13   2019. Moreover, this Court admonished Plaintiff that it would not consider claims that were before

14   Judge Gordon at the previous hearing and wanted to wait for Judge Gordon's ruling on the Motion

15   for Reconsideration as well as the Motion for Summary Judgment. See ECF No. 28 at 60-62. While

16   the Court specifically referred to the Mancini claims, it follows that the Court absolutely would

17   not entertain proposed claims raised in the Motion for Reconsideration that are nearly identical to

18   claims raised in the Amended Complaint in this action, before Judge Gordon had ruled on those

19   claims. Plaintiffs' conduct amounts to outright forum-shopping. The Court dismissed this claim

20   because it will not encourage or condone this behavior by permitting Plaintiff to proceed on a

21   claim previously dismissed by Judge Gordon.

22        The above discussion makes plain that Plaintiffs defied this Court's order to exclude issues

23   pending before Judge Gordon and went further, as the fifteenth claim is nearly identical to a claim

24   raised in what was then a pending Motion for Reconsideration before Judge Gordon, which was

25   filed on January 28, 2019, over one month before the Amended Complaint containing the same

26   claim was filed in this action, and one month before the initial hearing in this case. Any excuses

27   Plaintiffs may have as to failing to adequately understand the Court's order as it pertained to the

28   thirteenth and fourteenth claims cannot extend to the fifteenth, which constitutes inexcusable

1  forum shopping that has resulted in the costly expense not only of opposing counsel's time and

2  resources, but of this Court's as well.

3       The Court therefore grants the Motion for Sanctions pursuant to Local Rule IA 11-8, and

4  imposes sanctions on Plaintiffs in the form of attorneys' fees.

5

6      **VI.**    **CONCLUSION**

7      **IT IS THEREFORE ORDERED** that Defendants' Blue, Clark County Public Employees

8  Association, and Manteca's Motion for Sanctions (ECF No. 40) is GRANTED. Defendants shall

9  submit a supplement with a proposed sanctions amount with supporting underlying documentation

10  by June 15, 2020. Plaintiffs may file a response by June 22, 2020. Defendants may then file a

11  reply, if any, by June 29, 2020.

12

13      DATED: May 28, 2020.

14

15  _____

16      **RICHARD F. BOULWARE, II**

    **UNITED STATES DISTRICT JUDGE**

17

18

19

20

21

22

23

24

25

26

27

28