UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAVIER CABRERA, et al., | Case No. 2:18-cv-00304-RFB-DJA |
| Plaintiff, | |
| v. | **ORDER** |
| SERVICE EMPLOYEES INTERNATIONAL UNION et al., | |
| Defendants. | |

**I.      INTRODUCTION**

Before the Court are Plaintiffs' Objection/Appeal to Magistrate Order, Motion for Reconsideration, Motions for Summary Judgment, Counter Motion to Strike Answer and Defendants' Motions for Summary Judgment. ECF Nos. 137, 155, 167, 168, 171, 172, 185. For the following reasons, the Court denies Plaintiffs' motions and denies in part Defendants' motions.

**II.     PROCEDURAL BACKGROUND**

On February 16, 2019, Defendants removed this case from the Eighth Judicial District Court. ECF No. 1. On February 22, 2019, this Court held a hearing granting Plaintiffs' motion to amend their complaint. ECF No. 26. On March 8, 2019, Plaintiffs filed an amended complaint against Defendants. ECF No. 27. On May 10, 2019, Defendants filed a motion for sanctions regarding Plaintiffs' amended complaint which this Court granted. ECF Nos. 40, 153. On February 26, 2020, Plaintiffs' counsel failed to appear in a hearing in front of Magistrate Judge Albregts. ECF No. 126. On March 20, 2020, Judge Albregts held a hearing regarding Plaintiff's failure to appear and awarded Defendants' fees and costs in the amount of $2,102.95. ECF Nos. 127,132. On April 3, 2020, Plaintiff filed an objection/ appeal to Judge Albregts order. ECF No. 137. On

April 9, 2020, Defendants filed a response. ECF No. 138. On July 22, 2020 Defendant Service Employees International Union ("SEIU") filed a motion for summary judgment. ECF No. 167. On September 2, 2010, Plaintiff filed a response and on September 16, 2020, Defendant SEIU filed a reply. ECF Nos. 199, 200, 205. On July 22, 2020, Defendants Luisa Blue, Clark County Public Employees Association, & Martin Manteca filed a motion for summary judgment. ECF No.168. On September 2, 2020, Plaintiffs filed responses and Defendants filed a reply on September 16, 2020. ECF Nos. 196, 198, 203. On July 22, 2020, Plaintiffs filed a partial motion for summary. ECF No. 172. Defendants responded on September 2, 2020 and Plaintiffs replied on September 16, 2020. ECF Nos. 192, 193, 209. On July 22, 2020 Plaintiff Debbie Miller filed a motion for summary judgment which was fully briefed. ECF Nos. 171, 180, 183. On August 19, 2020, Plaintiff filed a motion to strike answer to the amended complaint which was fully briefed on September 1, 2020. ECF Nos. 185, 188, 189, 190.

### III.  FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.

#### a. Undisputed facts

The Clark County Public Employees Association ("Local 1107") entered into a valid and binding collective bargaining agreement ("CBA") with Nevada Service Employees Union Staff Union ("NSEUSU"). On April 28, 2017, SEIU President Mary Henry was placed in Local 1107 under emergency trusteeship. Henry appointed Luisa Blue and Martin Manteca as Trustee and Deputy Trustee. These appointees took over duties of the former officers and handled day to day affairs of Local 1107.

Plaintiff Deborah Miller was an organizer employed by Local 1107 from 2009 until her separation from Local 1107 in January 2018. Miller was, at all times relevant herein, a staff employee covered by the CBA between Local 1107 and NSEUSU. On September 13, 2017, after a rally at Rancho High School that was part of the Trustees new program, Miller collapsed in the parking lot at work while getting out of her car because of her diabetes. Miller had severe

burning and stabbing pains in her legs after this fall. On October 11, 2017, Miller informed the Trustees over Local 1107 of her medical condition and requested that she be given an accommodation. Miller also provided a doctor's note, which stated that there was "0% disability." However, it also stated that Miller was recommended to perform desk work and implement a set schedule for works and breaks due to her history of diabetes and high blood sugar. On October 17, 2017, local SEIU sent Miller a letter confirming she requested to meet to discuss a request for reasonable accommodations under the American with Disabilities Act ("ADA") and for Miller to be transferred from her fieldwork position to a desk job. The SEIU denied the request because it was "unclear what qualifying disability [she had] that would warrant reasonable accommodation." On October 26, 2017, the Trustees over Local 1107 sent Miller a letter acknowledging she has been diagnosed diabetic; however, Miller had not sufficiently explained how her impairment prevented her from working her current fieldwork job and how a desk job would enable her to better manage her diabetes. Therefore, SEIU denied the transfer but SEIU "granted reasonable accommodation to take reasonable breaks during her shift to manage her blood glucose levels…[and] to take breaks as needed to take medication…[and] to eat during your shift to manage diabetes…"

      On October 29, 2017, the NSEUSU filed a grievance against the SEIU Trustees and SEIU alleging a violation of the CBA Article 2 "Non-Discrimination." Specifically, the grievance alleged that Local 1107 breached Article 2 of the CBA because the Spanish speaking "criteria" [for the secretary position] is non-existent in that previous employees in this position did not speak Spanish and were not required to do so," and reclassifying the position in response to a request for accommodations for her physical disability constituted discrimination under the CBA. A Step 1 meeting (part of the multi-step grievance) was scheduled for December 15, 2017 however it was cancelled because Miller appeared with counsel. On January 3, 2017, Trustee Luisa Blue wrote a letter to Miller through counsel asserting that after reviewing the grievance, it was not cognizable because it asserted matters that are not subject to grievance and arbitration under the CBA. Luisa Blue also noted that there is no jurisdiction under the CBA to grieve

matters subject to management rights because management rights are expressly not subject to grievance under Article 8 of the CBA.

Javier Cabrera is a fifteen year employee of Local 1107, and now the former President of the NSEUSU. Cabrera filed grievances regarding workplace issues against Deputy Trustee Manteca with Local 1107. On October 30, 2017, Cabrera received a notice of termination. Cabrera went through with the formal grievance steps. Cabrera failed to attend the Step 2 meeting; therefore, Luisa Blue denied the grievance and made a request for arbitration. NSEUSU did not advance an arbitration case. On November 1, 2017, Cabrera filed an unfair labor practice charge against Local 1107 with the National Labor Relations Board ("NLRB") and the general counsel of NLRB issued a complaint against Local 1107. The NLRB administrative judge found that Local 1107 had engaged in certain unfair labor practices under the NLRA and issued an order of full reinstatement of back pay. Cabrera was reinstated with Local 1107 on October 21, 2019.

### b. Disputed Facts

The parties whether Plaintiff Miller was disabled under the ADA. Parties also dispute the legal effect of the facts.

### IV.   LEGAL STANDARDS

#### A.  Objection/ Appeal to Magistrate Judge Order

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).  A party may file specific written objections to the findings and recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Local Rule IB 3-2(a).  When written objections have been filed, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Local Rule IB 3-2(b).

### B. Motion for Reconsideration

The Court has discretion to grant or deny a motion for reconsideration. Navajo Nation v. Norris, 331 F.3d 1041, 1046 (9th Cir. 2003). Absent highly unusual circumstances, the court should grant a motion for reconsideration only where: (1) it is presented with newly discovered evidence; (2) it has committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2004); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona, 229 F.3d at 890; Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citation and quotation marks omitted. "A party seeking reconsideration . . . must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity." L.R. 59-1.

### C. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility

determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.     DISCUSSION

### a. Objection/Appeal of Magistrate Judge Albregts' Order

Plaintiffs do not dispute that Defendants are entitled to reimbursement; instead, Plaintiffs argue that Judge Albregts committed clear error when he awarded Defendants fees and costs for traveling to the hearing in the amount of $2,643.95. This Court disagrees. The Court finds that Defendants submitted adequate proof of traveling fees. The Court finds no error by Judge Albregts in his order. The Court therefore denies Plaintiff's objection/appeal of Magistrate Judge Albregts' Order.

### b. Motion for Reconsideration of the Court Granting Sanctions

The Court incorporates by reference the findings of fact in its Order on Defendants' Motion to Dismiss and Motion for Sanctions.

Plaintiff argues that this Court made clear errors in the application of facts and law. This Court disagrees. In its ruling from the bench at the March 11, 2020 hearing on the various motions, the Court dismissed, Plaintiffs' thirteenth, fourteenth, and fifteenth claims from the Amended Complaint as duplicative of the action then-pending before Judge Gordon. To determine whether a suit is duplicative, the test for claim preclusion is applied. Adams v. California Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007), overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880, 904 (2008). "Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. Id. at 689 (citing The Haytian Republic, 154 U.S. 118, 124 (1894)). As this Court explaining in it Order, Plaintiffs' claims were indeed duplicative despite this Court explicitly ordering Plaintiff to not include claims that implicate the consolidated case before Judge Gordon. Plaintiffs ignored this Court's Order to not include duplicative claims. Plaintiffs fail to show that

this Court made a clear error and therefore, this Court denies Plaintiffs' Motion for Reconsideration.

### c. Motion to Strike

This Court denies Plaintiffs' Motion to Strike Defendants' Answer. Plaintiffs had 21 days after being served the Answer to file a response. FRCP 12(f)(2). Defendant Local 1107 filed its Answer to the Amended Complaint on July 23, 2020, so Plaintiff could have filed a motion to strike within 21 days but failed to do so. Plaintiffs waited over one year later until August 19, 2021 to file the motion to strike. Therefore, the Court denies Plaintiffs' Motion to Strike.

### d. Motions for Summary Judgement

#### i. SEIU Liability

Defendants argue that SEIU cannot be liable for any of Plaintiffs' claims because Plaintiffs were employed by the Local 1107, not SEIU. Plaintiffs argue that SEIU is an "alter ego" of Local 1107 and therefore can be held liable. The Ninth Circuit applies the alter ego test to determine liability of allegedly related entities under Section 301, the ADA and Nevada law. To determine whether two employing agencies are "alter egos" the court considers (1) inter-relation of operations; (2) common management;(3) centralized control of labor relations; (4) common ownership or financial control. Herman v. United Bhd. of Carpenters and Joiners of Am., Local Union No. 971, 60 F.3d 1375, 1383 (9th Cir. 1995).

Here, Luisa Blue and Martin Manteca were appointed by the SEIU to the control the Local 1107's operations. Blue and Manteca made all the decision s related to the claims in the complaint: Miller's accommodation request, Cabrera's termination, and dealings with local union grievances. Although there is no direct evidence in the record that Blue and Manteca consulted with SEIU about any issue while operating the Local 1107, Blue remained a member of the SEIU executive board. Because the record does not provide the full extent of Blue's specific responsibilities and actions while serving on the SEIU executive board, this Court finds that there are material disputed facts and inferences that must be resolved by a factfinder and not this Court at summary judgment. The record suggests that Blue, by virtue of her high-level position within SEIU, may have had

sufficient and continuous contact with SEIU to an extent that could support an alter ego finding. The Court therefore denies summary judgment on this claim.

### ii. Miller's Discrimination and Reasonable Accommodation

Defendants argue that Miller did not suffer adverse action and does not qualify as an individual with disability. Plaintiffs argues that L1107 not only denied that Miller had a disability, but also never negotiated the reasonable accommodations with Miller, instead opting to dispute that she was disabled and present her with a take it or leave it ultimatum. The ADA defines a "qualified individual" as an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

Here, there is a genuine dispute of material facts regarding whether Miller had a disability and Defendants offered a reasonable accommodation. The record reflects that Miller diligently requested reasonable accommodations for her diabetes and provided a doctors' note. However, at least one doctors' note appears to have conflicting information; for example, one note stated that Miller had "0% disability," but requested that her employer provide specified accommodations for her diabetes. Because the Court finds there to be disputed material questions of fact regarding Miller's disability and Defendants reasonable accommodations, the Court denies Plaintiffs' and Defendants' summary judgment arguments.

### iii. Miller's Section 301 Claim

Defendants argue that Miller's Section 301 claim fails as a matter of law because the CBA expressly excludes a grievance that contains matters subject to EEOC or Nevada Equal Rights Commission (NERC) jurisdiction. This Court agrees. The CBA limits actionable Section 301 claims and grievances. See Vaca v. Sipes, 386 U.S. 171, 184 (1967). Here, Article 11 of the CBA states in part: "A grievance shall not be defined to include any matter or action taken by the Employer or its representatives for which the Equal Employment Opportunity Commission (EEOC), or Nevada Equal Rights Commission (NERC), has jurisdiction or any matter specifically excluded from grievance and arbitration by other provisions of this Agreement." It is apparent the

Plaintiff Miller's grievance concerned matters for which the EEOC or NERC would have jurisdiction. And although Plaintiff Miller did not file a complaint with either entity, that does not affect Miller's ADA grievance being under EEOC or NERC jurisdiction. Therefore, the Court finds that part of Plaintiff Miller's Fifth Claim fails as a matter of law.

Defendants also argue that Plaintiff cannot proceed under Section 301 for CBA breaches for which Miller never filed a grievance and because Miller only grieved violation of Article 1 and 2 of the CBA, she cannot allege breached of Article 8, 22, and 24. Plaintiffs do not contest this point and instead argue that they were excused from exhausting remedies under the CBA. This Court disagrees and finds that Plaintiff Miller cannot proceed under Section 301 for alleged breaches of Article 8, 22, and 24.

### iv. Cabrera's Claims

Defendants argue that Plaintiff Cabrera already achieved a full remedy through his NLRB proceeding and therefore his claims are moot. This Court disagrees. "The general rule is that punitive damages are not allowed in actions for breach of contract brought pursuant to Section 301." Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry & Tile Contractors Ass'n, No. CV-LV-81-726 RDF, 1990 WL 270784, at *22 (D. Nev. July 2, 1990) citing Hotel and Rest. Emp., Etc. v. Michelson's Food Serv., 545 F.2d 1248, 1254 (9th Cir. 1976). However, there are instances in which the general rule does not apply. Id. (the court "express[ed] no opinion as to what the arbitrator's powers would be ..." in a 301 case in which punitive damages were timely raised). The Ninth Circuit in Hotel and Rest. stated that punitive damages or extraordinary remedies "are not usually appropriate in breach of contract cases ... (emphasis added)," not that such damages are never appropriate. Id. Some attempts by courts to fashion remedies in section 301 actions will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456–457 (1957).

Here Plaintiff Cabrera's claim involve an alleged breach of the CBA involving flagrant violations of duties created by such agreement which result in a serious undermining and violation

of the national labor policy. Specifically, Plaintiff Cabrera alleges that SEIU Trustees over Local 1107 engaged in willful, flagrant breaches of the SNEUSU CBA and duties and therefore Defendants' conduct constitutes oppression, fraud, and malice. The Court finds that Plaintiff Cabrera's allegations do not foreclose punitive damages; however, there remains a dispute of material questions of fact regarding the alleged breach that must be resolved by a factfinder. Therefore, the Court denies both parties' motions with respect to Cabrera's claim.

## VI.     CONCLUSION

**IT IS ORDERED** that Plaintiffs' Objection/Appeal to Magistrate Judge Albregts' Order (ECF No. 137), Motion for Reconsideration (ECF No. 155), Motions for Summary Judgment (ECF Nos. 172, 171), Motion to Strike (ECF 185) are DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment (ECF Nos. 167, 168) are DENIED in part. The Court grants Defendants' motion for summary judgement with respect to Plaintiff Miller' Section 301 Claim and Claim regarding CBA violation of Article 8, 22, and 24.

**IT IS FURTHER ORDERED** that parties shall submit a joint pretrial order with trial dates in July or August, 2021 by April 14, 2021.

**DATED**: March 31, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**