1  **ROTHNER, SEGALL & GREENSTONE**
   GLENN ROTHNER (*pro hac vice*)
2  JONATHAN COHEN (10551)
   ELI NADURIS-WEISSMAN (*pro hac vice*)
3  CARLOS COYE (*pro hac vice*)
   510 South Marengo Avenue
4  Pasadena, California  91101-3115
   Telephone:  (626) 796-7555
5  Fax:           (626) 577-0124
   E-mail:  grothner@rsglabor.com; jcohen@rsglabor.com
6              enaduris-weissman@rsglabor.com; ccoye@rsglabor.com

7  **CHRISTENSEN JAMES & MARTIN**
   EVAN L. JAMES (7760)
8  DARYL E. MARTIN (6735)
   7440 West Sahara Avenue
9  Las Vegas, Nevada  89117
   Telephone:  (702) 255-1718
10 Fax:           (702) 255-0871
   Email:  elj@cjmlv.com; dem@cjmlv.com

Attorneys for Service Employees International Union

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAVIER CABRERA, an individual; DEBORAH MILLER, an individual, CHERIE MANCINI, an individual, NEVADA SERVICE EMPLOYEES UNION STAFF UNION ("NSEUSU"), an unincorporated association,<br><br>Plaintiffs,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION. a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as Trustee of Local 1107; MARTIN MANTECA, in his official capacity as Deputy Trustee of Local 1107; MARY K. HENRY, in her official capacity as Union President; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka SEIU 1107, a non-profit cooperative corporation; DOES 1-20; and  ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | Case No.: 2:18-CV-00304-RFB-DJA<br><br>**DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION'S MOTION FOR RECONSIDERATION AND CLARIFICATION OF SUMMARY JUDGMENT ORDER (ECF No. 224)** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED** that Defendant Service Employees International Union ("SEIU") hereby moves for reconsideration of the Court's ruling denying in part summary judgment to Defendants, with respect to the Court's rulings on certain of the remaining claims asserted in the First Amended Complaint—the Second, Third, Seventh, Eighth, and Eleventh claims—and with respect to its ruling regarding SEIU's potential liability as an alter-ego/single employer with SEIU Local 1107.  This motion is based on the existing pleadings on file.

DATED:  April 7, 2021

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN
ELI NADURIS-WEISSMAN (*pro hac vice*)
CARLOS COYE (*pro hac vice*)

By   */s/Eli Naduris-Weissman*
ELI NADURIS-WEISSMAN
510 South Marengo Avenue,
Pasadena, CA  91101-3115
Tel: (626) 796-7555 Fax: (626) 577-0124
*Attorneys for SEIU*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

On March 31, 2021, this Court ruled on pending motions for summary judgment filed by Defendants Service Employees International Union ("SEIU") [ECF No. 167] and SEIU Local 1107 ("Local 1107") [ECF No. 168], as well as motions by Plaintiffs [ECF Nos. 171 & 172].

SEIU respectfully files the instant motion to seek clarification and/or reconsideration of the Court's ruling.  In particular, SEIU requests the Court to rule on a number of issues raised by SEIU's motion for summary judgment which could be dispositive of claims against it, but for which the Court's order did not provide a ruling.  Because SEIU should not be required to proceed to trial on claims which may be resolved by summary judgment, but have not been ruled on, SEIU respectfully seeks clarification and/or reconsideration of the Court's order.  SEIU also seeks reconsideration of the Court's alter-ego/single employer ruling.

### II.  Standard of Review

The Court has discretion to grant or deny a motion for reconsideration. *Navajo Nation v.*

1

*Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003). Absent highly unusual circumstances, the court should grant a motion for reconsideration only where: (1) it is presented with newly discovered evidence; (2) it has committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A party seeking reconsideration . . . must state with particularity the points of law or fact that the court has overlooked or misunderstood." L.R. 59-1.

**III.   Discussion**

    **A.   The Court's Order Does Not Address Certain Claims in SEIU's Motion that Would be Dispositive of the Second, Third, Seventh, Eighth, and Eleventh Causes of Action in Plaintiffs' First Amended Complaint.**

        1.   <u>Seventh Claim: Because Neither Cabrera Nor His Union Exhausted Contractual Grievances of the Grievance Underlying this Section 301 Claim, Further Relief is Barred.</u>

The Seventh Cause of Action, brought by Plaintiff Javier Cabrera under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (hereafter "Section 301"), alleges that Cabrera's termination violated the collective bargaining agreement ("CBA") between Local 1107 and Plaintiff Nevada Service Employees Union Staff Union ("NSEUSU"). *See* ECF No. 27 (First Amended Complaint ["FAC"]), ¶¶ 164–66.

Although the Court ruled that Plaintiffs' claim is not moot from a damages perspective, it did not rule on SEIU's separate argument, brought under separate heading, that Cabrera failed to exhaust mandatory contractual remedies by proceeding to arbitration under the CBA, thus barring his suit. *See* ECF No. 167 at 43-44 (Section III.F, titled "The Seventh Claim: Even if the Claim Were Not Moot, Cabrera's Failure to Exhaust His Contractual Remedies Bars Further Relief"). Notably, <u>the factual bases of SEIU's argument are undisputed</u>: it is clear that the CBA's "grievance and arbitration" article requires arbitration, and it is undisputed that Plaintiffs did *not* pursue arbitration of the contractual claim. Instead, Cabrera argues that he should be excused from this mandatory requirement because of alterations to the grievance procedure during the trusteeship. But in its recent summary judgment order the Court rejected this precise

1  "excuse from exhaustion" claim in ruling on the same argument Plaintiffs made with respect to
2  Plaintiff Debbie Miller's Section 301 claims.  *See* ECF No. 224 at 9.  As the facts on this
3  argument are undisputed, this presents a purely legal issue for the Court decide.  Because
4  summary judgment in favor of Defendants on the Seventh Claim would dispose completely of
5  Cabrera's remaining claims—thus simplifying trial—SEIU seeks the Court's clarification
6  regarding its ruling on SEIU's exhaustion argument.

7        As recited in SEIU's summary judgment brief, "[i]t is axiomatic that an aggrieved
8  employee must exhaust any exclusive grievance and arbitration procedure created in a collective
9  bargaining agreement prior to bringing a . . . suit against the employer." *Stupy v. U.S. Postal*
10 *Serv.*, 951 F.2d 1079, 1082 (9th Cir. 1991) (citation omitted), cited in ECF No. 167 at 38; *see*
11 *also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("As a general rule in cases to
12 which federal law applies, federal labor policy requires that individual employees wishing to
13 assert contract grievances must attempt use of the contract grievance procedure agreed upon by
14 employer and union as the mode of redress.").  It is undisputed that Article 11 of the CBA
15 includes a mandatory arbitration procedure, *see* ECF No. 167-18 at 16-17,[1] and that Cabrera's

---

[1] Article 11 sets out a three-step grievance and arbitration procedure, culminating in "Step 3 – Arbitration," which states in relevant part:

> 1. If the Step 2 decision is deemed unacceptable, the Union, on behalf of an employee, may make a written request for arbitration within five (5) working days of receipt of the Step 2 decision. Both parties shall jointly request the Federal Mediation and Conciliation Service (FMCS) and/or the American Arbitration Association (AAA) to furnish a panel of seven (7) arbitrators from which the arbitrator shall be selected.
> Failure on the part of the Union or employee to submit a request to either FMCS or AAA within 30 calendar days of the Step 2 hearing decision will result in the grievance being abandoned and the Step 2 hearing decision will prevail. Such selection shall be accomplished by the NSEUSU and the SEIU 1107 Local President or designee by striking one (1) name from the list (on a rotational basis per request for arbitration) in turn, until only one (1) name remains.
> 2. The arbitrator's decision shall be final and binding on all parties to this Agreement as long as the arbitrator does not exceed his/her authority as set forth below and as long as the arbitrator performs his/her functions in accordance with the case law regarding labor arbitration, the provisions of the U.S. Uniform Arbitration Act, and where applicable, NRS.
> . . . .
> 5. The arbitrator shall not have the authority to excuse a failure by the employee, the Union, or the Employer to comply with the time limitations set forth above unless mutually agreed by both parties.

ECF No. 167-18 at 17.

1   union failed to advance the grievance related to his termination to arbitration.

2     As explained in SEIU's motion, after Cabrera's counsel was informed of the failure to
3   timely complete the arbitration request process, *see* ECF No. 167-26, no further steps were taken
4   to advance the case to the required final step of arbitration under the CBA.  *See* ECF No. 167 at
5   43 (citing March 5, 2018 letter from Local 1107 counsel to Cabrera).  SEIU's motion also cited
6   undisputed statements by Cabrera's counsel explaining Plaintiffs' decision not to pursue
7   arbitration—which were based on cost, preference for the courts, distrust of the Federal
8   Mediation and Conciliation Service arbitration process, and concern about ability to recover fees
9   in arbitration.  *See* ECF No. 167 at 21 & 24 (citing ECF No. 167-9 at 3-4, 31, 33).

10    In response, Plaintiffs did not dispute that they did not exhaust contractual remedies;
11  instead, they argued that they were excused from doing so based on the argument that Local
12  1107 had repudiated the grievance procedure.  *See* ECF No. 197 at 23-25.  But it is undisputable
13  that it was *Plaintiffs* who repudiated the grievance procedure—in a theme now familiar to this
14  Court, Plaintiffs engaged in brazen forum-shopping by bypassing the binding arbitration
15  procedure in the CBA in search of a more favorable forum, one where they believed they could
16  recover attorneys' fees.  Indeed, SEIU rebutted Plaintiffs' argument in its reply, pointing out that
17  any modification to steps 1 and 2 of the grievance procedure during the trusteeship complied
18  with the CBA, and that any complaints Plaintiffs had about those preliminary steps—in which
19  they participated—could not excuse Plaintiffs' further decision to avoid resort to the final step
20  set forth in the contract: a hearing before a neutral arbitrator. *See* ECF No. 205 at 27-30 (SEIU
21  reply brief citing *Sidhu v. Flecto Co., Inc.*, 279 F.3d 896, 899 (9th Cir. 2002) & *Debeikes v.*
22  *Hawaiian Airlines, Inc.*, 141 F. Supp. 3d 1075, 1093 (D. Haw. 2015), regarding the limited and
23  inapplicable bases of the repudiation exception to exhaustion requirement).[2]

---

[2] The reply also pointed to further correspondence between Local 1107 and Cabrera's counsel, in which Local 1107 indicated *it would waive the staff union's failure to comply with the CBA's timelines and agreed to arbitrate his contract claim*, followed by Cabrera's counsel's April 13, 2018 email refusing to proceed to arbitration for the previously-cited reasons. *See* ECF No. 205 at 29 (citing ECF No. 203-1 at 24-26).  In that e-mail, Cabrera's counsel explained;
> [W]e prefer to litigate those violations in a tribunal that is 1) less expensive to my clients because they can addressed together in a single action, and 2) the decision be subject to review by a higher court if we believe the decision is wrong. I see no benefit to my client

In its recent order, the Court dismissed the same repudiation argument that Plaintiffs made with respect to Miller's claims in the Fifth Cause of Action. *See* ECF No. 224 at 9 ("Plaintiffs do not contest this point and instead argue that they were excused from exhausting remedies under the CBA. This Court disagrees and finds that Plaintiff Miller cannot proceed under Section 301 for alleged breaches of Article 8, 22, and 24."). The argument posed by Cabrera is almost identical, word-for-word, to the argument the Court rejected in the context of the Miller claim. Indeed, as Plaintiffs filed separate response briefs for each individual plaintiff, the Court may observe that identical text was used in both. *Compare* ECF No. 199 at 29-31 (Plaintiff Miller's opposition regarding repudiation and excuse from exhaustion) *with* ECF No. 197 at 23-25 (identical argument made on Cabrera's behalf). Therefore, the Court's conclusion applies equally to Cabrera's claims: Plaintiffs' volitional choice to avoid arbitration—despite its availability and mandatory nature under the CBA—in favor of federal court litigation, compels the conclusion that Plaintiffs did not exhaust contractual remedies for Cabrera's claims and therefore cannot pursue their Section 301 claim.

Because this ground of SEIU's argument was overlooked, and would be dispositive, SEIU respectfully requests that the Court clarify and/or reconsider its order and grant summary judgment to Defendants as to the Seventh Claim in the FAC.

        2.    <u>Eighth Claim: NSEUSU Failed To Exhaust Contractual Remedies on its Claimed CBA Breaches, which Are Moot in Any Event.</u>

The Eighth Cause of Action of the FAC is the only one brought exclusively by NSEUSU, and alleges a medley of CBA violations under Section 301. SEIU's motion discussed these allegations paragraph by paragraph, *see* ECF No. 167 at 23-24 (description of claims), and made specific arguments why each part of the claim should be dismissed, for failure to exhaust contractual remedies, mootness, and on the merits as a matter of law. *Id.* at 44-47.[3]

---

    to submit to arbitration before an arbitrator who is subject to no checks and balances by the FMCS regarding their engaging in conflicts of interest, whose decision will be final even if wrong so long as they follow a few arbitrary procedural rules, because of a misguided deference to arbitration decisions that is contrary to the LMRA itself, which we are also challenging in the aforementioned litigation."
ECF No. 203-1 at 24.

[3] SEIU made four specific arguments: (1) NSEUSU failed to exhaust contractual remedies as to

5

1          NSEUSU's opposition did not respond in any detail to these arguments, or in support of
2   the specific claims in the eighth claim for relief, but instead vaguely argued that "[t]he Eighth
3   Claim for Relief relates to the harm Defendants have cause [*sic*] to the NSEUSU via their
4   systematic elimination of the NSEUSU staff while implementing SEIU's trusteeship program to
5   eliminate staff quickly." ECF No. 200 at 24.  As SEIU pointed out in its reply, this claim
6   regarding "systematic elimination" of staff was new, not part of the pleadings in this case, and
7   thus cannot be used to defend against summary judgment.  *See Wasco Prods., Inc. v. Southwall*
8   *Techs., Inc*., 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second
9   chance to flesh out inadequate pleadings."), *cited in* ECF No. 205 at 36.

10         The Court's prior ruling with respect to Plaintiff Miller's Section 301 claims is on all
11  fours with NSEUSU's claims.  Just as Miller was not "excused from exhausting remedies under
12  the CBA" and thus "cannot proceed under Section 301 for alleged breaches of Article 8, 22, and
13  24," ECF No. 224 at 9, NSEUSU also cannot pursue violations of the same, ungrieved articles (8
14  and 24), nor a claim related to signing of policies for which no grievance was ever filed (FAC ¶¶
15  176-77).  This disposes of paragraphs 176, 177, and 178 of this cause of action.

16         The remaining allegations in the eighth claim are that Defendants breached Article 11 of
17  the CBA in two respects: when the Trustees altered the grievance procedure (FAC, ¶ 179), and
18  similarly, by not following the grievance procedure for a "working conditions" grievance filed in
19  February 2017 (FAC, ¶ 180).  As recounted in SEIU's motion, these claims fail for two reasons.

20         First, just as with Cabrera's claim above, it is undisputed that Plaintiffs did not attempt to

---

certain of the claims because it is undisputed it did not file any grievances concerning many of the claimed CBA violations (e.g., violations of Articles 8 and 24 of the CBA, and the allegation regarding the signing of policies), FAC ¶¶ 176-77, 179; (2) Plaintiffs failed to exhaust contractual remedies because it did not seek arbitration of the grievances that were filed, i.e., those at issue in paragraphs 179 and 180 of the FAC; (3) these same grievances, which allege violation of Article 11, are moot because the grievance procedure set out in that article is now being followed and the remedy sought in the grievance has thus been achieved, and the underlying grievance regarding working conditions (FAC ¶ 180) is moot on its merits as well; and (4) the Article 11 grievance lacks merit on its face because, as a legal and factual matter, the Trustees had the authority to administer the step 1 and step 2 procedure because they had the powers of Local 1107's former President and Executive Board.  These arguments are spelled out in detail in SEIU's opening and reply briefs.  *See* ECF No. 167 at 44-47; ECF No. 205 at 35-36.

1  exhaust the contractual grievance procedure by bringing these claims to arbitration.  Plaintiffs
2  engaged in forum-shopping to bring these claims to Court instead.  For the same reasons
3  discussed above, Plaintiffs' identical "excuse from exhaustion" provision must fail: Local 1107
4  was willing and able to arbitrate these claims but as SEIU demonstrated in its brief, Plaintiffs did
5  not attempt to do so.  *See* ECF No. 167 at 46 n.28 (citing ECF No. 167-16 & ECF No. 167-29).
6  The contractual bargain between Local 1107 and NSEUSU was for an arbitrator to resolve these
7  claims, not a federal court.

8        Second, the claims are moot, on two levels.  The claimed Article 11 violation is moot
9  because post-trusteeship, it is undisputed that the grievance steps are functioning exactly as
10 written, and critically, Plaintiff NSEUSU, in Rule 30(b)(6) deposition testimony, *admitted* that
11 the step 1 and step 2 grievance meetings are processed in accordance with the CBA.  *See* ECF
12 No. 167-5 at 19 (Tr. 143:8-24); *see also id.* at 22 (Tr. 151:3-7 ["Q. So what you're requesting in
13 this grievance, it's no longer something that you need; is that right? Because now you have a
14 grievance process that you have all the steps, they are met; is that correct? A. According with
15 this, yes."].).  Moreover, as SEIU also showed based on the NSEUSU 30(b)(6) deposition
16 testimony, the underlying "working conditions" grievance—for which paragraph 180 alleges the
17 grievance steps were not followed—is also moot as to its merits, because the working conditions
18 complained of are no longer in effect.  *See* ECF No. 167 at 46 n.28.

19       Finally, the claimed violation of Article 11 fails as a matter of law because both under the
20 SEIU Constitution, and as NSEUSU admitted, the Trustees had the authority of the Local 1107's
21 former President and Executive Board and thus could administer steps 1 and 2 of the grievance
22 procedure in their stead.  *See* ECF No. 167 at 46 n.27; ECF No. 205 at 20-21; *see also Campbell*
23 *v. Int'l Bhd. of Teamsters*, 69 F. Supp. 2d 380, 385 (E.D.N.Y. 1999) ("A trustee assumes the
24 duties of the local union officer he replaces and is obligated to carry out the interests of the local
25 union and not the appointing entity."); *Dillard v. United Food & Commercial Workers Union*
26 *Local 1657*, No. CV 11-J-0400-S, 2012 WL 12951189, at *9 (N.D. Ala. Feb. 9, 2012) ("As a
27 matter of law, a trustee steps into the shoes of the local union's officers, assumes their rights and
28 obligations, and acts on behalf of the local union."), *aff'd*, 487 F. App'x 508 (11th Cir. 2012).

SEIU respectfully requests that the Court grant summary judgment as to the Eighth claim.

        3.     <u>Second, Third, And Eleventh Claims: Miller Did Not Point to Evidence Showing Retaliation or Harassment Due to Disability.</u>

Though the Court found that disputed facts exist with respect to whether Miller had a disability and whether Defendants granted reasonable accommodations—the First and Tenth Claims regarding discrimination under the ADA and Nevada law respectively—it did not rule on SEIU's motion with respect to Miller's separate legal claims for retaliation and harassment (the Second, Third, and Eleventh Claims). These claims were based on the distinct factual assertions that Miller was demoted, her organizing territory was changed, and Local 1107 changed the requirements of the front desk position to require Spanish after Miller requested an accommodation. *See* FAC, ¶¶ 66, 68, 76-77, 77, 208-209, 211.[4]

As SEIU pointed out in its opening and reply briefs, as well as its opposition to Plaintiffs' own summary judgment motion (*see* ECF No. 191 at 27-28), Miller did not point to any evidence supporting the harassment and retaliation theories. *See* ECF No. 167 at 17-18, 30; ECF No. 205 at 25. Instead, SEIU showed that: (1) there is no evidence Miller was demoted; this was only a question she asked (*see* ECF No. 167 at 30 [citing uncontested deposition testimony, ECF No. 167-3, Tr. 61-62, 221]); (2) her organizing territory was not changed (*id.* Tr. 56-58, 62-63, 69, 71-72, 14), and instead she was specifically told she could resume her duties as an organizer (*id.*, Tr. 247, 249, 251); and (3) the changes to the qualifications of the front-desk position—even if that could be a viable retaliation theory, which SEIU denies—occurred prior to Miller's accommodation request, and thus could not constitute retaliation. *See* ECF No. 191 at 27-28.

To narrow issues at trial, SEIU respectfully requests that the Court provide a clear ruling

---

[4] The legal elements of the retaliation and harassment claims are also distinct from the discrimination claim on which the Court ruled. *See Pardi v. Kaiser Found. Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) ("To establish a prima facie case of retaliation under the ADA, an employee must show that (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two."); *Denning v. Washoe Cty.*, No. 3:17-cv-00463-MMD-WGC, 2018 WL 4286185, at *5 (D. Nev. Sept. 7, 2018) ("To sufficiently allege a claim for hostile work environment a plaintiff must show that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.").

as to these claims for relief, on which SEIU sought summary judgment.

### B. The Court's Alter-Ego/Single Employer Ruling was Clearly Erroneous.

In its order, the Court denied SEIU's argument that it was entitled to summary judgment because there were no disputed material facts providing genuine issues for trial as to Plaintiffs' claim that SEIU is liable as an alter ego or "single employer" of Local 1107. *See* ECF No. 224 at 7-8. In pertinent part, the Court ruled as follows:

> Although there is no direct evidence in the record that Blue and Manteca consulted with SEIU about any issue while operating the Local 1107, Blue remained a member of the SEIU executive board. Because the record does not provide the full extent of Blue's specific responsibilities and actions while serving on the SEIU executive board, this Court finds that there are material disputed facts and inferences that must be resolved by a factfinder and not this Court at summary judgment. The record suggests that Blue, by virtue of her high-level position within SEIU, may have had sufficient and continuous contact with SEIU to an extent that could support an alter ego finding.

*Id.*

SEIU respectfully seeks reconsideration of this conclusion as erroneous, for two separate reasons: (1) to the extent Cabrera's Section 301 claim survives, a finding of alter-ego requires a second showing in addition to the "single employer" showing—i.e., that the second firm is being used fraudulently or in a sham effort to avoid bargaining obligations—which Plaintiffs have not made; (2) as to the single employer question on its own terms, there is insufficient evidence to create a triable issue of fact regarding whether SEIU and Local 1107 are a single employer.

### 1. The Standard for "Alter Ego" Liability Under Section 301 is Different than the "Single Employer" Standard Under Title VII and the ADA.

Under Section 301, establishing "single employer" is merely half of the required showing for alter-ego liability. *See UA Local 343 of the United Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470 (9th Cir. 1995) ("*Nor-Cal*") ("To prevail on the 'alter ego' theory, appellees were required not only to make the threshold showing that the two firms were a single employer, but also to prove that North Bay was being used in a sham effort to avoid collective bargaining obligations . . . .") (quotations omitted); *A. Dariano & Sons, Inc. v. Dist. Council of Painters No. 33*, 869 F.2d 514, 519 (9th Cir. 1989) ("In all alter ego determinations an element of fraud or misrepresentation also exists."); *Slack v. Int'l Union of Operating Engineers*, 83 F. Supp. 3d 890, 900 (N.D. Cal. 2015) ("The problem for Plaintiffs is

9

1  that, although they have alleged enough to meet the single employer threshold, the alter ego test
2  demands more (at least under Ninth Circuit law).").
3     SEIU's motion and reply brief both addressed this point without rebuttal from Plaintiffs.
4  *See* ECF No. 167 at 29; ECF No. 205 at 2 n.1.  Indeed, Judge Gordon's decision regarding the
5  underlying trusteeship—recently affirmed on appeal—made clear that the requisite illicit motive
6  is absent.  *See Garcia v. Serv. Employees Int'l Union*, No. 2:17-CV-01340-APG-NJK, 2019 WL
7  4279024, at *13 (D. Nev. Sept. 10, 2019) ("The plaintiffs have failed to demonstrate that Henry
8  lacked a proper purpose in imposing the trusteeship or that she imposed it in bad faith."), *aff'd in*
9  *relevant part*, __ F.3d __, 2021 WL 1255615 (9th Cir. Apr. 5, 2021).
10    Because Plaintiffs have not pointed to any evidence supporting the second element, SEIU
11 respectfully requests that it be granted summary judgment as to any extent Section 301 claims.
12             2.   <u>Based on Record Evidence and Applicable Law, Plaintiffs Do Not Meet
                    Their Burden to Avoid Summary Judgment on the Single Employer
13                  Claim.</u>
14    Because it is Plaintiffs' ultimate burden at trial to establish SEIU's liability as an alter
15 ego or single employer, SEIU can succeed in its motion by showing the non-moving party's
16 evidence is insufficient to establish a material element of its case. *Celotex Corp. v. Catrett*, 477
17 U.S. 317, 324 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,
18 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either
19 produce evidence negating an essential element of the nonmoving party's claim or defense or
20 show that the nonmoving party does not have enough evidence of an essential element to carry
21 its ultimate burden of persuasion at trial.").  Because there is no material evidence based on
22 Trustee Blue's role that creates a genuine dispute as to SEIU's status as a single employer with
23 Local 1107, under the applicable legal standard summary judgment should be granted to SEIU.
24             a.   *Record evidence regarding Luisa Blue's role vis-à-vis SEIU*
25    With respect to Ms. Blue's role as trustee over Local 1107, the declaration she submitted
26 with SEIU's summary judgment motion establishes that in her role as trustee, she "took over the
27 duties of the former officers and Executive Board members of Local 1107 and [was] thereafter
28 responsible for the day-to-day affairs of Local 1107," ECF No. 167-16:25-27.  The concurrently-

filed declaration of SEIU Chief of Staff Deirdre Fitzpatrick further established that:

> The role of the SEIU in administering a trusteed local is limited. SEIU assists with the initial imposition of the trusteeship; pays for some of the costs the local must incur related to the trusteeship, which can include trustee salaries; and assists in the process of taking the local out of trusteeship and returning to self-governance under elected leadership.

ECF No. 167-11 at 3:19-22. As explained by Ms. Fitzpatrick, "the trustee is in control and assumes all duties of the local union officers he or she replaces. In doing so, the trustee 'stands in the shoes' of the local union and exercises discretion in doing so." *Id.* at 3:25-27. Finally, as Ms. Fitzpatrick affirmed: "Neither SEIU's leadership nor its human resources department were involved in decisions related to Debbie Miller's request for a reasonable accommodation at Local 1107; Javier Cabrera's employment and termination; or the handling of grievances, grievance meetings, or other labor relations matters with NSEUSU." *Id.* at 5:22 – 6:2.

The Court's opinion focuses on the potential role Trustee Blue had on the SEIU executive board and whether she had "sufficient and continuous contact with SEIU to an extent that could support an alter ego finding." ECF No. 224 at 8. The record contains two further pieces of evidence on this score. First, in her second declaration submitted in opposition to Plaintiffs' summary judgment motion, Blue explained that from May 2016 to August 2020, she was one of seven Executive Vice Presidents and served on an SEIU Executive Board composed of over 70 members. *See* ECF No. 191-5 at 2:9-14. The other evidence, derived from the deposition that Plaintiffs took of Ms. Blue, concerns what contacts she had with SEIU as the trustee. In a long series of questioning, Blue explained the limited type of reporting she made to SEIU regarding the trusteeship, which consisted of oral reports focusing on the status of bargaining with employers whose employees Local 1107 represented (i.e., union member contracts):

> Q Did you provide any written reports about the trusteeship to Dee Dee Fitzpatrick or Mary Kay Henry?
> A No.
> Q How many times per month while you were trustee of Local 1107 did you report to Mary Kay Henry?
> A Maybe once a month.
> Q And what would be the subject matter of that report?
> A Just the status of the situation at Local 1107.
> Q Okay. So a little more elaboration on that. What would typically -- how would the report process work?
> A To Mary Kay Henry?

11

> Q Yes.
> A Status of bargaining.
> . . . .
> Q So the first report that you gave after what is discussed in this e-mail, what did you tell Mary Kay Henry?
> A I gave her the status of bargaining.
> Q What was the status of bargaining?
> A Not very good.
> Q. Could you elaborate on what "not very good" means. I don't understand what that means.
> A We had contracts that had to be settled, and they weren't settled. And we had till the end of June to settle them.
> Q Do you recall what contracts they were?
> A The Clark County contract, the Convention Center contract, the Renown contract, the Housing Authority contract or the Regional Health Center contract. It was one of those two.

ECF No. 201-6 at 42-43 (Blue Depo Tr. 24:3-20 & 25:7-22). Later in the colloquy, Plaintiffs' counsel sought to get more specificity on the contents of Trustee Blue's reports:

> Q That's what I'm trying to figure out. What would you actually report to Mary Kay Henry? So you said status of bargaining?
> A Status of bargaining.
> Q What else?
> A At that time, status of bargaining.
> Q That was it?
> A Yeah.

*Id.* at 27 (Blue Depo Tr. 27:5-15).

      b.  *Absence of genuine issue of material fact*

As the Court is aware, the Ninth Circuit has made clear that "[t]he most important single factor [in the alter ego analysis] is centralized control of labor relations." *Nor-Cal*, 48 F.3d at 1470 (citing *J.M. Tanaka Constr. Inc. v. NLRB*, 675 F.2d 1029, 1033-34 (9th Cir. 1982)). As argued in SEIU's motion and acknowledged at oral argument, there is *no* evidence that SEIU itself was directly involved in the decisions related to Plaintiffs or had "centralized control" over Local 1107's labor relations. *See* ECF No. 167 at 27-29; ECF No. 205 at 12-13, 16-17; ECF No. 191 at 5-8 (Section I.B: "Plaintiffs Fail to Establish the Most Important 'Single Employer' Factor: Centralized Control of Labor Relations").

As the Ninth Circuit and courts in this district have held, to establish this factor requires some specific showing that a common manager had a dominant role in both entities, which is absent here. *Haley & Haley, Inc. v. NLRB*, 880 F.2d 1147, 1150 (9th Cir. 1989) (one individual played "dominant role" in management of both companies); *NLRB v. O'Neill*, 965 F.2d 1522,

1529–30 (9th Cir. 1992) (after considering fact that there was some common management, concluding: "[a]lthough this seems to constitute some evidence that O'Neill was at least involved with the management of plant operations, it does not seem to rise to the level of substantial evidence of control of the daily operations of the plant.").

Indeed, in a recent decision from this district that is also relevant, the court granted summary judgment to defendants on single employer claims under the ADA because Plaintiffs failed to produce sufficient evidence in response to defendants' motion. In *Buchanan v Watkins & Letosky, LLP*, Case No.: 2:19-cv-00226-GMN-VCF, 2021 WL 1214781 (D. Nev. Mar. 29, 2021), despite finding evidence of common management, as to the "single most important factor" of centralized control of labor relations, the court found in relevant part:

> However, Plaintiff neglects to point to any evidence supporting these assertions. Providing mere conclusory allegations without factual data, as Plaintiff has done here, is not enough to survive summary judgment. *See Taylor [v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)*]*. Because of this lack of evidence, the third factor does not weigh in Plaintiff's favor to establish that W&L and W&L California are an integrated enterprise.

*Id.* at *4. Accordingly, the court concluded that "Plaintiff has failed to provide enough evidence for the Court to conclude that W&L and W&L California operate as an integrated enterprise, or that a genuine issue of material fact exists on the matter." *Id.* at *5.

So, too, here. Any lack of evidence regarding Blue's role at SEIU favors *SEIU*, not Plaintiffs. The record evidence shows that SEIU itself was not involved in employment decisions related to Plaintiffs, and that Blue's role over Local 1107 was limited to her role as trustee.[5] There is no evidence that Blue "consulted" with SEIU over such decisions; to the contrary, the evidence Plaintiffs developed shows only that Blue made limited reports on the trusteeship to SEIU, none of which concerned Plaintiffs. Thus, SEIU has sufficiently established an absence of evidence as to an essential element of Plaintiffs' alter-ego/single employer claim, and the mere fact of Blue's separate role at SEIU is insufficient to create a genuine issue of material fact on the matter.

---

[5] That Blue's role as trustee was separate from her role on the SEIU executive board is further buttressed by persuasive case law establishing that the trustee acts on behalf of the local, not international union. *See Campbell*, 69 F. Supp. 2d at 385; *Dillard*, 2012 WL 12951189 at *9.

13

### IV. Conclusion

For these reasons, SEIU respectfully requests that the Court grant this motion for reconsideration, and rule as follows:

- The Seventh Cause of Action is dismissed because, based on undisputed evidence, Plaintiffs did not exhaust contractual remedies on the claim under Section 301 that Cabrera's termination violated the CBA;

- The Eighth Cause of Action is dismissed because, based on undisputed evidence, NSEUSU failed to exhaust contractual remedies on its claimed CBA breaches, and the underlying claims are moot;

- The Second and Eleventh Causes of Action, alleging claims by Plaintiff Miller for retaliation based on a disability under federal and state law, are dismissed because, based on undisputed evidence, Miller did not suffer any adverse action;

- The Third Cause of Action, alleging that Plaintiff Miller suffered harassment in violation of the ADA, is dismissed because, based on undisputed evidence, Miller did not suffer any adverse action;

- Summary judgment is granted to SEIU on the Fifth Cause of Action, because Plaintiffs have not established any genuine issue of material fact as to the required second factor for "alter ego" liability under Section 301; and

- Summary judgment is granted to SEIU on all claims because SEIU has shown that Plaintiffs do not have enough evidence to carry their ultimate burden of persuasion at trial that SEIU and Local 1107 are a single employer under federal law.

DATED: April 7, 2021

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN
ELI NADURIS-WEISSMAN (*pro hac vice*)
CARLOS COYE (*pro hac vice*)

By  */s/Eli Naduris-Weissman*
    ELI NADURIS-WEISSMAN
510 South Marengo Avenue,
Pasadena, CA  91101-3115
Tel: (626) 796-7555 Fax: (626) 577-0124
*Attorneys for SEIU*

**CERTIFICATE OF SERVICE**

I am a member of Rothner, Segall & Greenstone. On this 7th day of April, 2021, I caused a true and correct copy of the foregoing **DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION'S MOTION FOR RECONSIDERATION AND CLARIFICATION OF SUMMARY JUDGMENT ORDER (ECF No. 224)** to be served in the following manner:

✓     ELECTRONIC SERVICE: Pursuant to LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served through the Notice of Electronic Filing automatically generated by the Court.

                           ROTHNER, SEGALL & GREENSTONE

                           By    */s/ Eli Naduris-Weissman*
                                   ELI NADURIS-WEISSMAN