1  **ROTHNER, SEGALL & GREENSTONE**
   GLENN ROTHNER (*pro hac vice*)
2  JONATHAN COHEN (10551)
   ELI NADURIS-WEISSMAN (*pro hac vice*)
3  CARLOS COYE (*pro hac vice*)
   510 South Marengo Avenue
4  Pasadena, California  91101-3115
   Telephone:  (626) 796-7555
5  Fax:        (626) 577-0124
   E-mail:  grothner@rsglabor.com; jcohen@rsglabor.com
6           enaduris-weissman@rsglabor.com; ccoye@rsglabor.com

7  **CHRISTENSEN JAMES & MARTIN**
   EVAN L. JAMES (7760)
8  DARYL E. MARTIN (6735)
   7440 West Sahara Avenue
9  Las Vegas, Nevada  89117
   Telephone:  (702) 255-1718
10 Fax:        (702) 255-0871
   Email:  elj@cjmlv.com; dem@cjmlv.com
11
   Attorneys for Service Employees International Union
12

13                 UNITED STATES DISTRICT COURT

14                      DISTRICT OF NEVADA

15

16 | JAVIER CABRERA, an individual; | Case No.: 2:18-CV-00304-RFB-DJA |

JAVIER CABRERA, an individual;
DEBORAH MILLER, an individual,
CHERIE MANCINI, an individual,
NEVADA SERVICE EMPLOYEES UNION
STAFF UNION ("NSEUSU"),
an unincorporated association,

            Plaintiffs,

vs.

SERVICE EMPLOYEES INTERNATIONAL
UNION. a nonprofit cooperative corporation;
LUISA BLUE, in her official capacity as
Trustee of Local 1107; MARTIN MANTECA,
in his official capacity as Deputy Trustee of
Local 1107; MARY K. HENRY, in her official
capacity as Union President; CLARK COUNTY
PUBLIC EMPLOYEES ASSOCIATION dba
NEVADA SERVICE EMPLOYEES UNION
aka SEIU 1107, a non-profit cooperative
corporation; DOES 1-20; and  ROE
CORPORATIONS 1-20, inclusive,

            Defendants.

Case No.: 2:18-CV-00304-RFB-DJA

**DEFENDANT SERVICE EMPLOYEES
INTERNATIONAL UNION'S REPLY IN
SUPPORT OF MOTION FOR
RECONSIDERATION AND
CLARIFICATION OF SUMMARY
JUDGMENT ORDER (ECF No. 224)**

I.      **Introduction**

Defendant Service Employees International Union ("SEIU") seeks clarification and/or reconsideration of the Court's ruling on summary judgment motions filed by the parties.  As the opening brief made clear, the basis for this motion is twofold: as to Plaintiffs' Second, Third, Seventh, Eighth, and Eleventh Causes of Action, SEIU seeks clarification because the Court did not rule on arguments made by SEIU that would be dispositive of those claims.  As to the Court's alter/ego single employer ruling, SEIU seeks reconsideration because there is insufficient evidence to create a triable issue of fact regarding whether SEIU may be liable for Local 1107's acts.[1]  SEIU will respond to Plaintiffs' counter-motion for reconsideration in a separate brief.

II.     **Seventh Claim: Cabrera's Claim is Barred Because Plaintiffs Did Not Exhaust the Contractual Arbitration Procedure, Despite Local 1107's Willingness to Arbitrate.**

A.      **Undisputed Facts Show Local 1107 Sought Compliance With Article 11.**

SEIU seeks a ruling whether Plaintiffs may pursue the Seventh Claim, under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), despite their failure to exhaust the contractual arbitration procedures on their grievance that Cabrera's termination violated the collective bargaining agreement ("CBA") between Local 1107 and Plaintiff Nevada Service Employees Union Staff Union ("NSEUSU").  Though a central argument in SEIU's summary judgment motion and a dispositive one, the Court did not rule on the issue.

As indicated in SEIU's motion, the facts underlying whether Cabrera exhausted arbitration procedures are undisputed: (1) NSEUSU filed a grievance alleging that Cabrera's termination violated the just cause and related provisions in the CBA, (2) the "grievance and arbitration" article of the CBA (Article 11) applies to grievances relating to discipline and culminates in a third step of arbitration, and (3) NSEUSU did not advance Cabrera's claim to

---

[1]  Plaintiffs' objection that SEIU fails to argue any applicable basis for reconsideration [ECF No. 230 at 3-4] misses the mark.  SEIU's motion explained that it should not be required to proceed to trial on claims that may be resolved by summary judgment but have not been ruled on [ECF No. 225 at 2].  Indeed, it would be manifestly unjust if SEIU were required to proceed to trial on claims that would have been dismissed.  *See* L.R. 59-1 ("Reconsideration also may be appropriate if . . . the initial decision was manifestly unjust . . . .").  SEIU also argued that the Court's "alter ego/single employer ruling was clearly erroneous." *See* ECF No. 225 at 10:2.
Similarly misplaced is Plaintiffs' complaint that SEIU has repeated arguments already presented to this Court, as the purpose of the motion was to call attention to previously-made arguments that were not ruled on.

1

1    arbitration, even after Local 1107 waived NSEUSU's failure to comply with applicable time

2    limits.  *See* ECF No. 225 at 5 n.2 (citing letter from Local 1107 waiving timeliness defect).

3        *The only issue is a legal one*: whether Cabrera can meet the requirement, under Section

4    301, of exhausting the grievance and arbitration procedure prior to bringing suit, or establishing

5    an exception to the requirement.  *See Stupy v. U.S. Postal Serv.*, 951 F.2d 1079, 1082 (9th Cir.

6    1991) ("It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and

7    arbitration procedure created in a collective bargaining agreement prior to bringing a . . . suit

8    against the employer.") (citation omitted).  Cabrera argues that he should be excused from

9    exhaustion because, he alleges, Local 1107 repudiated the grievance and arbitration procedure.

10        However, the evidence shows that Local 1107 did no such thing: at all times it sought

11   compliance with Article 11 of the CBA—the grievance and arbitration provision—and never

12   disavowed the contractual remedy of arbitration nor suggested it would not comply with an

13   arbitrator's award.  *Cf. Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir. 1981)

14   (finding repudiation of contractual remedy where union attempted to negotiate a settlement with

15   employer's attorney, but "[t]he attorney denied that [the employer] was bound by the collective

16   bargaining agreement, or that it had any duty toward the drivers").

17        Rather, it was *Plaintiffs who repudiated the grievance and arbitration procedure*,

18   preferring to litigate their claims in court, and making clear that this was the true reason they

19   abandoned the grievances without attempting to exhaust that process through arbitration.  *See*

20   ECF No. 167-9 at 3–4, 31, 33 (Cabrera's counsel's statements to NLRB regarding why Plaintiffs

21   did not wish to arbitrate his claims: cost, preference for courts, distrust of the Federal Mediation

22   and Conciliation Service [FMCS] arbitration process, and concern about ability to recover fees in

23   arbitration).[2]  After denying the grievance at step 2, Local 1107 invited Plaintiffs to submit the

24

---

25   [2]  Conveniently, Plaintiffs claim the NLRB position statement in which Cabrera expressed
     disdain for arbitration "is irrelevant to this case," ECF No. 230 at 9:15, despite the document's
26   contemporaneous expression of the reasons—which Plaintiff do not dispute—they did not pursue
     arbitration. Tellingly, the position statement *did not make the repudiation argument Plaintiffs
27   make to this Court*. As the undisputed document exchange detailed below shows, Local 1107
     never repudiated arbitration and insisted on compliance with the CBA at every stage.
28       Though claiming the statements are irrelevant, Plaintiffs later argue waiver because Local
     1107 allegedly "failed to object to [Cabrera's] claim being removed from NLRB's arbitration

1    dispute to arbitration by letter on January 29, 2018.  *See* ECF No, 167-25 at 5 ("In accordance

2    with Article 11, Step 3 of the Staff Union CBA, the Staff Union, on behalf of Mr. Cabrera, may

3    make a written request for arbitration within five (5) working days of receipt of this Step 2

4    decision.").  As cited in SEIU's motion, on March 5, 2018, Local 1107 sent a letter to Cabrera's

5    Counsel regarding a demand for arbitration NSEUSU made on January 29, 2018.  *See* ECF No.

6    167-26.  The letter affirmed Local 1107's adherence to the CBA, stating: "<u>As we have advised,</u>

7    <u>Local 1107 would proceed forward with the arbitration process in accordance with the provisions</u>

8    <u>of the Staff Union CBA</u>."  *Id.* at 2 (emphasis added).  But Plaintiffs failed to comply with Article

9    11's requirement that they submit a request for arbitration to the FMCS or AAA (the American

10   Arbitration Association).  *See id.* As cited in Local 1107's March 5, 2018 letter, Article 11 states

11   that "Failure on the part of the Union or employee to submit a request to either FMCS or AAA

12   within 30 calendar days of the Step 2 hearing decision will result in the grievance being

13   abandoned and the Step 2 hearing decision will prevail."  *See* ECF No. 167-18 at 17.

14        Nevertheless, despite Plaintiffs' failure to comply with Article 11's clear terms, Local

15   1107 soon after waived the timeliness defect.  By e-mail on April 6, 2018, Local 1107's counsel

16   Sean McDonald wrote to Cabrera's counsel: "<u>After consulting with my client, despite the</u>

17   <u>grievance concerning Mr. Cabrera being rendered untimely because the Staff Union's FMCS</u>

18   <u>panel request was out of time, Local 1107 is willing to submit the issue of Mr. Cabrera's</u>

19   <u>termination to arbitration</u>." ECF No. 203-1 at 25 (emphasis added).  Cabrera's counsel then

20   repudiated the process another time, responding in relevant part:

21        [W]e prefer to litigate those violations in a tribunal that is 1) less expensive to my clients
         because they can be addressed together in a single action, and 2) the decision be subject
22       to review by a higher court if we believe the decision is wrong. I see no benefit to my
         client to submit to arbitration before an arbitrator who is subject to no checks and
23       balances by the FMCS regarding their engaging in conflicts of interest, whose decision

24   ─────────────────────────────
     program." *Id.* at 10. But deferral of Cabrera's unfair labor practice charge (ULP) to arbitration
25   has nothing to do with Cabrera's obligation to exhaust contractual remedies under Section 301.
     Whether the NLRB would defer its own processing of the ULP to the parties' arbitration process
26   is completely separate from Plaintiffs' pursuit of this lawsuit, which is governed by the CBA,
     and not the NLRA. *See Hammontree v. NLRB*, 925 F.2d 1486, 1494 (D.C. Cir. 1991) ("[T]he
27   CBA and the Act are independent sources of law governing the workplace. . . . If a party could
     unilaterally release itself from a contractual pledge to submit complaints to arbitration simply
28   because it had a parallel claim under the statute, then the pro-private dispute resolution policies
     of § 203(d) would be substantially abrogated.") (footnotes omitted).

will be final even if wrong so long as they follow a few arbitrary procedural rules, because of a misguided deference to arbitration decisions that is contrary to the LMRA itself, which we are also challenging in the aforementioned litigation.

ECF No. 203-1 at 24.

**B.    As a Matter of Law, Local 1107 Did Not "Repudiate" Contractual Remedies, and Thus Plaintiffs Were Not Excused From the Exhaustion Requirement.**

Despite these undisputed facts, Plaintiffs contend that *they* should be excused from exhausting the arbitration provision due to *Local 1107's* conduct. The conduct cited is that the step 2 grievance meeting was held before Trustee Blue, as it could not be held before a panel of the Local 1107 Executive Board that was lawfully disbanded by the trusteeship it requested.[3]

But critically, despite the accommodation Local 1107 made in order to comply with the grievance procedure, Plaintiffs did not attempt to fully *exhaust* that procedure by proceeding to the next and final step: arbitration.  And, based on binding Supreme Court and Ninth Circuit caselaw, Local 1107's acts do not constitute repudiation, as a matter of law.

As the Supreme Court explained in *Vaca v. Sipes*, 386 U.S. 171 (1967), the repudiation exception to the exhaustion requirement under Section 301 is akin to estoppel, where, due to conduct that "amounts to a repudiation of those contractual procedures . . .  the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* at 185.  And as elaborated in *Drake Bakeries, Inc. v. American Bakery & Confectionary Workers International*, on which *Vaca* relied, "in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important." 370 U.S. 254, 262-63 (1962).  Based on these precedents, the Ninth Circuit has explained that

the effect of a repudiation upon the repudiator's right to arbitration is contingent on the character of the alleged repudiation and the reasons offered in justification:

---

[3] As Defendants have previously briefed: (1) the Trustee had this authority because under the SEIU Constitution and applicable law, the trustee assumes all powers of the former elected officers, and thus correctly designated alternative step 1 and step 2 grievance process to ensure the grievance machinery operated during the trusteeship [ECF No. 225 at 8:19-28]; (2) NSEUSU, the relevant party to the CBA, admitted the Trustees had such authority [ECF No. 167-5 at 10 (Depo. Tr. 45:17–24)]; and (3) Plaintiffs' grievance requesting the step 2 meeting be heard by *former* Local 1107 Executive Board members makes no sense, as the CBA states the step 2 appeal goes to the "Local 1107 Executive Board *as representative of the Employer*" (i.e. Local 1107), and former board members do not represent Local 1107.  ECF No. 167 at 46 n.27.

4

> One who flatly repudiates the provision for arbitration itself should have no right to the stay of a court action brought by the other party. But mere nonperformance, even though unjustified, is not per se a 'repudiation.' One who asserts in good faith that the facts justify him in refusing performance of other provisions in the contract should not thereby lose his right to arbitration that he would otherwise have had. There is no inconsistency in his demanding arbitration at the same time that he asserts his legal privilege not to proceed with performance.

*Drake Bakeries*, [*supra*, 370 U.S. at 263 n.10] (quoting 6 Corbin, Contracts § 1443, at 192-93 n.34 (1961 Supp.)) Thus, a determination on the issue of repudiation will often entail an examination of the repudiator's manifest intent to preserve a pre-existing contractual right to arbitrate as an alternative to contractual repudiation.

*California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers, Local 70,* 679 F.2d 1275, 1283-84 (9th Cir. 1982).

Clearly in this case, where Local 1107 sought to preserve the contractual right to arbitration—inviting NSEUSU to submit the dispute to arbitration, insisting NSEUSU comply with Article 11, and then waiving Plaintiffs' untimeliness and allowing the grievance to proceed to arbitration at Plaintiffs' option—it did not repudiate the arbitration provision.  *See also Sidhu v. Flecto Co., Inc.*, 279 F.3d 896, 898-99 (9th Cir. 2002) ("We will not find repudiation simply because the employer refused to follow one or more of the substantive terms of the CBA.").[4]  In the words of the Ninth Circuit, despite the unavoidable changes to step 1 and step 2, Local 1107 clearly manifested an "intent to preserve a pre-existing contractual right to arbitrate as an alternative to contractual repudiation."  *California Trucking Ass'n,* 679 F.2d at 1284.  As such, the repudiation exception does not apply and Local 1107 should not be "estopped" from insisting on exhaustion of contractual remedies.  *See also Drake Bakeries*, 370 U.S. at 263 ("In passing § 301, Congress was interested in the enforcement of collective bargaining contracts, since it would 'promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace.' It was particularly interested in placing 'sanctions behind agreements to arbitrate grievance disputes' The preferred method for settling disputes was

---

[4] What's more, in each of the three Ninth Circuit cases cited, repudiation was only found because a party *completely denied the application of the contract or access to the grievance procedure*. *See Sidhu*, 279 F.3d at 899 (in response to union's request for arbitration and request to select arbitrators, employer responded that "the Company will not do so"); *California Trucking Ass'n*, 679 F. 2d at 1284 ("In this case, Local 70 answered the employer's complaint with the affirmative defense that it was not bound by the 1967-1970 collective bargaining agreement, the same agreement it now points to as expressing its right to insist upon arbitration."); *Crown Zellerbach*, 643 F.2d at 1366 (repudiation where "[t]he attorney denied that [the employer] was bound by the collective bargaining agreement, or that it had any duty toward the drivers").

1    declared by Congress to be "[f]inal adjustment by a method agreed upon by the parties" (§

2    203(d) of the Act, 29 U.S.C. § 173(d))." (some citations omitted).

3          Finally, in the Ninth Circuit, "[i]t is well-settled law that the question whether repudiation

4    has occurred must normally be submitted to the arbitrator," not the Court.  *Loc. Union No. 370 of*

5    *Int'l Union of Operating Engineers v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir.

6    1986); *accord California Trucking Ass'n*, 679 F.2d at 1282.  Here, prior to filing suit, Plaintiffs

7    filed a grievance alleging that steps 1 and 2 of the grievance procedure were violated, *see* ECF

8    No. 167-5 at 41—conceding that the issue arises under the CBA and could be submitted to an

9    arbitrator. But like all other grievances filed, they did not attempt to arbitrate that grievance.

10         This is another reason the Court should reject Plaintiffs' half-hearted repudiation

11   argument, reach the un-ruled upon issue and grant Defendants' summary judgment by dismissing

12   Plaintiffs' Seventh Cause of Action for failure to exhaust mandatory contractual remedies.

13   **III.    Eighth Claim: For Myriad Reasons, NSEUSU Has Not Shown Any Triable Issues of**
     **Fact That Would Entitle it To Relief on This Vague Claim.**

14         In a pattern repeated at every stage of briefing, Plaintiffs make no attempt to respond to

15   SEIU's arguments regarding whether Plaintiffs can establish a genuine issue of material fact on

16   the Eighth Cause of Action brought by NESUSU.  As indicated in the opening brief, SEIU

17   previously made four specific arguments as to these claims, i.e., that: (1) NSEUSU failed to

18   exhaust contractual remedies because it is undisputed it did not file any grievances concerning

19   violations of Articles 8 and 24 of the CBA, or the allegation regarding the signing of policies;

20   (2) Plaintiffs failed to exhaust contractual remedies because it did not seek arbitration of the

21   grievances that were filed; (3) the grievances alleging violation of Article 11 is moot because the

22   grievance procedure set out in that article is now being followed and the remedy sought in the

23   grievance has thus been achieved, and the underlying grievance regarding working conditions

24   (FAC ¶ 180) is moot on its merits as well; and (4) the grievances fail on the merits: the Article

25   11 grievance because, as a legal and factual matter, the Trustees had the authority to administer

26   the step 1 and step 2 procedure as they had the powers of Local 1107's former President and

27   Executive Board.  These arguments are spelled out in detail in SEIU's summary judgment

28

1    motion and reply.  *See* ECF No. 167 at 44–47 & 39–40 n.20; ECF No. 205 at 35-36.[5]

2         The Court has not ruled on these arguments, and Plaintiffs have never responded to them,

3    nor shown evidence supporting their claims. Instead, Plaintiffs rest on the Court's finding that

4    the claims were "adequately plead" at an earlier stage, when ruling on motions to dismiss. But

5    this is not enough at the summary judgment stage. *Endy v. County of Los Angeles*, 975 F.3d 757,

6    763 (9th Cir. 2020) ("The party opposing the motion 'may not rest upon the mere allegations or

7    denials of his pleading.") (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

8         What does the Eighth claim consist of?  Plaintiffs' response does not elucidate.  Instead,

9    Plaintiffs make two points, both of which distort the law and facts of this case.

10        **A.    NSEUSU Is Not Excused From Arbitrating Their Claimed CBA Breach.**

11        First, they argue that "the disputes arising out of Articles 8 and 22 of the CBA were

12   excluded from the grievance and arbitration procedures," ECF No. 230 at 12, and thus Plaintiffs

13   could sue directly in this Court for their violation.  First of all, ***the Eighth claim does not allege***

14   ***a violation of Article 22 of the CBA***.  *See* ECF No. 27 (FAC), §§ 174–184.  As to Article 8, the

15   Eighth claim alleges Defendants violated that provision "by hiring a temporary employee to fill a

16   vacant permanent front desk position covered by the CBA for the sole purpose of displacing a

17   bargaining unit employee."  *Id.*, § 174.  Notably, this is the exact same claim made by Plaintiff

18   Debbie Miller, and in relation to the same grievance *that did not cite Article 22* as a provision

19   violated.  As the opening brief pointed out, the Court already found that Miller failed to exhaust

20   contractual remedies on this claim, a ruling which applies directly to NSEUSU's identical claim.

21   *See* ECF No. 224 at 9 (Plaintiffs were not "excused from exhausting remedies under the CBA"

22   and thus "cannot proceed under Section 301 for alleged breaches of Article 8, 22, and 24").

23        Plaintiffs' new argument that they can shoot straight to Court without grieving Article 8

24   also fails. Article 8 in relevant part states that Local 1107 shall have the unilateral right "[t]o hire

25   temporary employees, subcontract any of the work or services *unless it is for the sole purpose of*

---

26   [5] SEIU also showed why Article 8 and Article 24 were not violated.  *See* ECF No. 167 at 39–40
27   n.20 (evidence shows hiring of temporary front desk employee was not "for the purpose of
     displacing a bargaining unit member," because it occurred long before Miller's request for the
     front desk position, as indicated by undisputed evidence including the grievance itself and
28   Miller's deposition testimony, citing ECF No. 167-5 at 37; ECF No. 167-2 at 51, Tr. 177:11–18).

*displacing bargaining unit employees*." ECF No. 167-18 at 13 (emphasis added). While Article 8, Section 3, states that "the reserved rights of [Local 1107] shall not be subject to the grievance and arbitration provisions of this Agreement," the assertion in NSEUSU's claim is that the front desk person was hired "for the sole purpose of displacing a bargaining unit employee," ECF No. 27, § 174.  If Plaintiffs are correct, such an act *would not* be within Local 1107's reserved rights, and *would be* subject to arbitration. Thus, this is a run-of-the-mill contract dispute an arbitrator would decide: whether Local 1107 was within its rights or whether its acts were for a purpose forbidden by the contract.  But Plaintiffs intentionally avoided bringing the case to an arbitrator.

Indeed, the Supreme Court case Plaintiffs reference, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) (*cited at* ECF No. 230 at 5), is on point, making clear a similar dispute over the application of a management right's clause to subcontract *is subject to the presumption or arbitrability*, despite the CBA's statement that "matters which are strictly a function of management shall not be subject to arbitration under this section." *Id.* at 576.  The Supreme Court rejected the employer's defense—there seeking to avoid a petition to compel arbitration—that this provision exempted its subcontracting decision from the union's attempt to arbitrate a claimed breach of the CBA.  Because the matter was ambiguous, the Court found the presumption of arbitrability must apply.  *See id.* at 584–84 ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.").[6]

---

[6] SEIU also rejects Plaintiffs' new argument that they need not even attempt to arbitrate claims arguably excluded from the grievance and arbitration provision.  For that proposition, they rely on out-of-circuit authority addressing, for the most part, whether to grant motions to compel arbitration *rather than* the distinct question of whether a plaintiff should be excused from the exhaustion requirement before filing a Section 301 claim in federal court. The Ninth Circuit allows for only two exceptions to exhaustion under Section 301—repudiation or wrongful refusal

1

**B.      The Eighth Claim Does Not Allege a System Reduction of Employees.**

2      Plaintiffs again seek to distort the Eighth Claim as concerning "the systematic

3   elimination" of staff.  ECF No. 230 at 12.  Paragraph 174 of the complaint, already cited, alleges

4   the displacement of *one* bargaining unit employee—Miller—using a singular noun "a bargaining

5   unit employee," not multiple employees.  The fact that paragraph 182 refers to unspecified "lost

6   dues revenue from the termination and/or loss of NSEUSU bargaining unit employees" does not

7   transform the actual claim of breach alleged.  At most, this prayer for relief paragraph covers the

8   two employees referenced in the complaint writ large: Cabrera and Miller.

9      But the claim should be dismissed. The Court has not, to date, ruled on any of

10   Defendants' arguments regarding the Eighth Cause of Action.  For the reasons expressed in its

11   summary judgment motion and reiterated in this motion for clarification and/or reconsideration,

12   SEIU respectfully requests the Court dismiss the vague and ever-shifting Eighth claim for relief.

13   **IV.    Second, Third, and Eleventh Claims: Plaintiffs Have Not Pointed to Any Evidence
        of Retaliation or Harassment.**

14      Because the Court did not rule on SEIU's arguments regarding Plaintiff Miller's

15   discrimination harassment and retaliation theories, SEIU sought clarification of the Court's

16   order.  As SEIU established, there was no evidence of a demotion, a change in organizing

17   territory, or changes to qualifications for the front-desk position in response to Miller's

18   accommodation request, as Plaintiffs had alleged.  ECF No. 225 at 9.

19      In opposition, Plaintiffs claim they presented a "wealth of evidence," but nothing cited

20   would create a material issue of fact supporting their harassment or retaliation claims.  The

21   closest they get is the claim that after requesting accommodations, Grace Vergara transferred

22   Miller "to work the County bargaining unit."  ECF No. 230 at 13.  But they point to *no evidence*

23   *of this. The actual evidence, cited by SEIU, shows the contrary:* that on Miller's one day return to

24   work after being out, she was asked *for the day* to drop off flyers at two locations, was never told

25   it was a reassignment, and based on her concern regarding walking distance was not made to do

26   either. ECF No. 172-8 (Miller Depo), Tr. 56–58; 62–63; 69:8–13; 71–72; 163:14–16.  And her

27

28   by a union to process a grievance— not arguable exclusion from the grievance procedure.  *See
    Zellerbach*, 643 F.2d at 1366 (citing *Vaca v. Sipes*, 360 U.S. 171).

testimony shows <u>she was not in fact transferred</u>. Miller testified that later the day of her return, she was informed she would have "set assignments," Tr. 249:4–8, and *would resume her duties as organizer. See id.*, Tr. 247 ("I was told in terms of the breaks, whenever you need to take them, but you can do your duties as an organizer. You will resume your duties as an organizer."); *id.*, Tr. 251:11–12 ("It was, like, you are going to do your normal duties as an organizer.").

For reasons detailed in SEIU's prior briefing, nothing else cited by Plaintiffs establishes evidence creating a triable issue of fact that could support Plaintiffs' retaliation or harassment theories.[7]  As such, SEIU is entitled to summary judgment on these claims.

## V.   The Court's Single Employer/Alter Ego Ruling Was Clearly Erroneous.

### A.   There is No Evidence that Trustee Blue Managed SEIU and Local 1107 in a Way That Rendered the Two a "Single Employer."

In its motion, SEIU pointed out that Plaintiffs failed to show any evidence that Trustee Luisa Blue's role at SEIU, and her limited reporting on the trusteeship to SEIU, could lead a trier of fact to conclude her SEIU role transformed Local 1107 and SEIU into a common enterprise through the "single employer" doctrine.  In response, Plaintiffs do not hone in on Trustee Blue at all, but instead cite unrelated evidence. Based on the applicable standard, the mere fact that the record *lacks* evidence concerning Blue's role at SEIU is insufficient to defeat SEIU's motion, where SEIU's burden is to show the non-moving party's evidence is insufficient to establish a material element of alter-ego liability. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

### B.   Plaintiffs Failed to Establish Liability for SEIU Based on the Ninth Circuit's *Distinct* Alter-Ego or Single Employer Standards under Section 301.

In its motion for reconsideration, SEIU pointed out that Plaintiffs failed to establish a

---

[7] As SEIU has detailed elsewhere [ECF No. 191 at 27–30]: (1) because the temporary employee Nilda Mason was hired for the front-desk position *prior to* Miller's request for that position, Local 1107 had no duty to relinquish the job to Miller, and thus whether or not the job required Spanish—the evidence shows Deputy Trustee Manteca had *previously* decided the occupant must be bilingual (ECF No. 172-6, Tr. 178:14–20; 179:9–16)—could not show retaliation; (2) there is no evidence Miller was actually demoted as alleged; as she testified in her deposition, it was only a question she asked, not something she was told (ECF No. 172-8, Tr. 61:25 – 62:62:2 ["Q. So at this point, you don't know if you've been demoted; correct? A. I do not know, no."]; *id.* Tr. 221:19–24); (3) whatever happened to Lanita Troyana is not evidence of what happened to Miller; and (4) the testimony of Barry Roberts—who left Local 1107 in October, 2017 (*see* ECF No. 201 at 41–42, Tr. 38–39), prior to Miller's claimed retaliation and harassment—has no bearing on whether Miller was harassed or retaliated against based on a disability.

1    genuine issue of material fact regarding the second element of the two-part test for imposing

2    alter-ego liability under Section 301.  *See* ECF No. 225 at 10–11.  Under Section 301, the Ninth

3    Circuit's alter-ego test requires that Plaintiffs show *both* that SEIU and Local 1107 were a single

4    employer, *and* that SEIU engaged in some related act of fraud or misrepresentation.  *See UA*

5    *Local 343 of the United Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing, Inc.*, 48 F.3d

6    1465, 1470 (9th Cir. 1995) ("*Nor–Cal*"); *A. Dariano & Sons, Inc. v. Dist. Council of Painters*

7    *No. 33*, 869 F.2d 514, 519 (9th Cir. 1989). But Plaintiffs do not point to any evidence regarding

8    the second alter-ego factor.  Instead—implicitly conceding they lack evidence related to this

9    second factor—Plaintiffs argue they may impose liability against SEIU under Section 301 solely

10   on the basis of its alleged single employer status with Local 1107. *See* ECF 230 at 15.

11   <u>Single employer status, however—as defined by the four-factor test under Title VII—is</u>

12   <u>not a sufficient basis to impose liability under Section 301</u>. Instead, to impose liability for a

13   contract breach to a non-signatory under Section 301 using the "single employer" test (as distinct

14   from the alter-ego theory), the Ninth Circuit adds an additional requirement: "the employees of

15   both companies must be shown to constitute a single bargaining unit." *Carpenters Local Union*

16   *No. 1478 v. Stevens*, 743 F.2d 1271, 1276 (9th Cir. 1984) ("Under the single employer doctrine,

17   two companies may be bound by a union contract signed by one of them if they are a 'single

18   employer' *and* the employees of each constitute a single bargaining unit." (emphasis in

19   original)).  <u>*But Plaintiffs have made no such showing, and thus cannot proceed on this theory.*</u>

20           The tests differ because Plaintiffs seek to hold SEIU liable under a theory of contract, but

21   SEIU is not a party to the CBA with NSEUSU.  *See Loss v. Blankenship,* 673 F.2d 942, 946 (7th

22   Cir.1982) ("§ 301(a) does not provide the basis for an LMRA claim against a nonparty to the

23   underlying collective bargaining agreement."); *Accord Ramsey v. Signal Delivery Serv., Inc.*, 631

24   F.2d 1210, 1212 (5th Cir. 1980) (citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238 (1962)).

25   Thus, to hold a non-party liable in contract under the single employer doctrine, the Ninth Circuit

26   requires that the "employees of each business entity must constitute an appropriate bargaining

27   unit" together.  *NLRB v. Big Bear Supermarkets No. 3*, 640 F.2d 924, 931 n.7 (9th Cir. 1980).

28   *See also NLRB v. Don Burgess Const. Corp.*, 596 F.2d 378, 386 (9th Cir. 1979) ("The fact that

11

1   two companies have been designated a single employer for purposes of the Act is not

2   determinative as to whether both are bound by a union contract signed by one of them. This

3   requires that the employees of each constitute a single bargaining unit.").[8]

4          And importantly, whether employees of two entities constitute an appropriate bargaining

5   unit is subject to the primary jurisdiction of the National Labor Relations Board.[9]  *See Nor–Cal*,

6   48 F.3d 1470 ("Under the 'single employer' theory, the district court must defer to the NLRB,

7   which has primary jurisdiction to determine whether the employees of both the union and non-

8   union firms constitute an appropriate bargaining unit.").  That is true even under actions like this

9   one brought pursuant to Section 301.  *See Bhd. of Teamsters, Local No. 70 v. Cal. Consolidators,*

10  *Inc.*, 693 F.3d 81, 83 (9th Cir. 1982) ("While § 301 grants the district court jurisdiction to decide

11  whether employers constitute a single employer, we conclude that it does not extend to the

12  determination of the second part of the issue, the appropriateness of the bargaining unit.").  The

13  Ninth Circuit's decision in *Nor–Cal* made that point crystal-clear:

14          [I]f appellees had relied solely on the "single employer" theory, appellants would have
           prevailed on their primary jurisdiction argument.  *The district court could not have*
15         *extended the collective bargaining agreement to North Bay without a prior determination*
           *by the NLRB that the employees and North Bay and Nor–Cal constituted a single*
16         *bargaining unit.*

17  *NorCal*, 48 F.3d at 1470 (emphasis added).

18         Plaintiffs' opposition brief glosses over this point, *see* ECF No. 230 at 10–11, and they

19  have not made the required showing.  Their failure to even address it is tantamount to a

20  concession that their argument fails.  Because Plaintiffs cannot show that employees of SEIU

21  and Local 1107 constitute an appropriate bargaining unit—a determination subject to the primary

22  jurisdiction of the NLRB—their single employer claim under Section 301 fails as a matter of

23  law.  *See Nor–Cal*, 48 F.3d at 1470.

24  _____
    [8]  The fact that these cases often arise in the "double-breasting" context does not undermine their
25  applicability to Plaintiffs' claims, which similarly allege violations of the CBA between a union
    (NSEUSU) and employer (Local 1107) under Section 301.  The Ninth Circuit's standards are
26  clear. Plaintiffs' reliance on *Slack v. Int'l Union of Operating Engineers*, 83 F. Supp. 3d 890
    (N.D. Cal. 2015) is also misplaced, as they concede the case only concerns the "alter-ego" theory
    and not the Section 301 "single employer" analysis discussed above.
27  [9]  "This bargaining unit issue, which is a representational question, must be decided by the
    NLRB in the first instance."  *Nor–Cal*, 48 F.3d at 1470 (citing 29 U.S.C. § 159(b)); *S. Prairie*
28  *Const. Co. v. Loc. No. 627, Int'l Union of Operating Engineers*, 425 U.S. 800, 804–06 (1976).

**VI.    Conclusion**

For these reasons, SEIU respectfully requests that the Court grant its motion for reconsideration, and enter an order dismissing Plaintiffs' claims subject to this motion.

DATED:  April 28, 2021

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN
ELI NADURIS-WEISSMAN (*pro hac vice*)
CARLOS COYE (*pro hac vice*)

By   */s/Eli Naduris-Weissman*
ELI NADURIS-WEISSMAN
510 South Marengo Avenue,
Pasadena, CA  91101-3115
Tel: (626) 796-7555 Fax: (626) 577-0124
*Attorneys for SEIU*

1

## CERTIFICATE OF SERVICE

2          I am a member of Rothner, Segall & Greenstone.  On this 28th day of April, 2021, I caused

3   a true and correct copy of the foregoing **DEFENDANT SERVICE EMPLOYEES**

4   **INTERNATIONAL UNION'S REPLY IN SUPPORT OF MOTION FOR**

5   **RECONSIDERATION AND CLARIFICATION OF SUMMARY JUDGMENT ORDER**

6   **(ECF No. 224)** to be served in the following manner:

7   ✓          ELECTRONIC SERVICE:  Pursuant to LR IC 4-1 of the United States District Court for

8   the District of Nevada, the above-referenced document was electronically filed and served

9   through the Notice of Electronic Filing automatically generated by the Court.

10                                              ROTHNER, SEGALL & GREENSTONE

11

12                                              By ____/s/ Eli Naduris-Weissman_____
                                                      ELI NADURIS-WEISSMAN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28