1

**ROTHNER, SEGALL & GREENSTONE**
GLENN ROTHNER (*pro hac vice*)

2

JONATHAN COHEN (10551)
ELI NADURIS-WEISSMAN (*pro hac vice*)

3

CARLOS COYE (*pro hac vice*)
510 South Marengo Avenue

4

Pasadena, California  91101-3115
Telephone:  (626) 796-7555

5

Fax:          (626) 577-0124
E-mail:  grothner@rsglabor.com; jcohen@rsglabor.com

6

          enaduris-weissman@rsglabor.com; ccoye@rsglabor.com

7

**CHRISTENSEN JAMES & MARTIN**
EVAN L. JAMES (7760)

8

DARYL E. MARTIN (6735)
7440 West Sahara Avenue

9

Las Vegas, Nevada  89117
Telephone:  (702) 255-1718

10

Fax:          (702) 255-0871
Email:  elj@cjmlv.com; dem@cjmlv.com

11

12

Attorneys for Service Employees International Union

13

UNITED STATES DISTRICT COURT

14

DISTRICT OF NEVADA

15

16

JAVIER CABRERA, an individual;
DEBORAH MILLER, an individual,

17

CHERIE MANCINI, an individual,
NEVADA SERVICE EMPLOYEES UNION

18

STAFF UNION ("NSEUSU"),
an unincorporated association,

19

            Plaintiffs,

20

vs.

21

SERVICE EMPLOYEES INTERNATIONAL

22

UNION. a nonprofit cooperative corporation;
LUISA BLUE, in her official capacity as

23

Trustee of Local 1107; MARTIN MANTECA,
in his official capacity as Deputy Trustee of

24

Local 1107; MARY K. HENRY, in her official
capacity as Union President; CLARK COUNTY

25

PUBLIC EMPLOYEES ASSOCIATION dba
NEVADA SERVICE EMPLOYEES UNION

26

aka SEIU 1107, a non-profit cooperative
corporation; DOES 1-20; and  ROE

27

CORPORATIONS 1-20, inclusive,

28

            Defendants.

Case No.: 2:18-CV-00304-RFB-DJA

**DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION'S OPPOSITION TO PLAINTIFFS' COUNTERMOTION TO RECONSIDER PLAINTIFF MILLER'S § 301 LMRA CLAIM**

1   **I.   Introduction**

2       Unions usually like to arbitrate, having extracted the commitment to do so from

3   employers and reduced that commitment to writing in binding collective bargaining agreements

4   ("CBAs").  Indeed, the Supreme Court has acknowledged and approved of the special role for

5   labor arbitrators, as opposed to courts, in interpreting CBAs.[1]  In this case, however, Plaintiff

6   Nevada Service Employees Union Staff Union ("NSEUSU") and co-Plaintiffs Debbie Miller and

7   Javier Cabrera have done everything possible to avoid arbitration of their CBA-based claims.

8       In response to Defendant Service Employees International Union's ("SEIU") motion for

9   clarification/reconsideration of the Court's summary judgment ruling, Plaintiffs filed a counter-

10  motion seeking reconsideration of the Court's dismissal of Miller's claim for breach of the CBA

11  between Local 1107 and NSEUSU under section 301 of the Labor Management Relations Act,

12  29 U.S.C. § 185 ("Section 301").  In that decision, the Court ruled that Miller could not pursue

13  claims under Section 301 "for CBA breaches for which Miller never filed a grievance,"

14  including alleged breaches of Articles 8, 22, and 24, because she "only grieved violation of

15  Article 1 and 2." ECF No 224 at 9.  As the Court noted, "Plaintiffs do not contest this point and

16  instead argue that they were excused from exhausting remedies under the CBA." *Id.*  Because

17  Plaintiffs never filed a grievance alleging violation of these articles, they could not pursue a

18  Section 301 claim alleging their breach.

19      Based on arguments it could have, but never previously made, Plaintiffs now assert that

20  they *should* be able to bring Section 301 claims for violations of Articles 8 and 22 (but not 24) of

21  _____

22  [1]  The Supreme Court has acknowledged the special and exclusive role of the arbitrator—rather
    than the courts—in interpreting collective bargaining agreements in its "Steelworkers Trilogy."

23  *See United Steelworkers v. Warrior v. Amer. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("Whether the
    moving party is right or wrong is a question of contract interpretation for the arbitrator. In these

24  circumstances the moving party should not be deprived of the arbitrator's judgment, when it was
    his judgment and all that it connotes that was bargained for."); *United Steelworkers v. Warrior &*

25  *Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) ("The labor arbitrator performs functions which are not
    normal to the courts; the considerations which help him fashion judgments may indeed by

26  foreign to the competence of courts."); *United Steelworkers v. Enterprise Wheel & Car Corp.*,
    363 U.S. 593, 596 (1960) ("[A]rbitrators under these collective agreements are indispensable

27  agencies in a continuous collective bargaining process. They sit to settle disputes at the plant
    level disputes that require for their solution knowledge of the custom and practices of a particular

28  factory or of a particular industry as reflected in particular agreements.").

1   the CBA, arguing that claims for violations of these sections were expressly excluded from the

2   grievance and arbitration procedure. However, as shown here, this is not the case: whether or not

3   Plaintiffs' claims would be subject to arbitration is ambiguous, and based on binding Supreme

4   Court and Ninth Circuit authority, in the face of any uncertainty the presumption in favor of

5   arbitrability prevails. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at

6   582–85; *Desert Coca Cola Bottling Co. v. Gen. Sales Drivers, Delivery Drivers & Helpers, Loc.*

7   *14*, 335 F.2d 198, 201 (9th Cir. 1964). Moreover, in this case the negotiating parties expressly

8   agreed that any disputes over arbitrability would be decided by a labor arbitrator, not a Court.

9   As such, Miller's failure to even *attempt* to file grievances over these later-added claims cannot

10  be excused, and her Section 301 claims for such alleged breaches cannot proceed in this Court.

11        For these, and the additional reasons herein, the Court's ruling as to the Fifth Cause of

12  Action was correct, and Plaintiffs' countermotion for reconsideration should be denied.

13  **II.   *Precautionary Note*: Plaintiffs Are Not Entitled to Use Their Reply Brief in Support of Their Countermotion as a Surreply to SEIU's Original Motion for**
14  **Reconsideration/Clarification.**

15        While Plaintiffs have a right to submit a reply brief in support of their countermotion to

16  which this brief responds, Plaintiffs may not use the upcoming reply brief as a surreply to

17  SEIU's own motion for reconsideration, which has now been completely briefed. *See* ECF No.

18  225 (SEIU's motion); ECF No. 230 & 231(Plaintiffs' opposition briefs); ECF No. 233 (SEIU's

19  reply in support of motion).

20        ***Nevertheless, Plaintiffs have already improperly done this, by filing a "reply" brief in***

21  ***support of their countermotion (ECF No. 236) in response to Local 1107's opposition to their***

22  ***countermotion (ECF No. 235)***.  Plaintiffs' countermotion concerns one claim: whether the Court

23  should reconsider its ruling on the Fifth Cause of Action brought by Plaintiff Miller under

24  Section 301. *See* ECF No. 232 at 5–8 (pages in Plaintiffs' response brief/countermotion devoted

25  to countermotion). Their new "reply" brief goes beyond the issues addressed in Plaintiffs'

26  countermotion, and instead seeks to address—one more time—the issues raised by SEIU and

27  Local 1107 in their motions or reply briefs. *See* ECF No. 236, passim. Indeed, this purported

28  "reply" brief spends only two out of thirteen pages addressing the arguments in Plaintiffs'

1    countermotion.  See id. at 8–10.  ***Rather, the "reply" is almost entirely devoted to responding to***

2    ***Local 1107 and SEIU's reply briefs in support of their motions for reconsideration.***

3           ***In other words, it is a surreply.***  The Court's Local Rules are clear: "***Surreplies are not***

4    ***permitted without leave of court; motions for leave to file a surreply are discouraged.***" **Local**

5    **Rule 7-2(b).**  As such, SEIU respectfully requests that Plaintiffs' improper arguments submitted

6    on surreply not be considered.

7

8    **III.   Plaintiffs' Motion Should Be Denied For Raising Arguments that Could Have Been
             Raised Earlier.**

9           In its motion for summary judgment, SEIU spent multiple pages detailing its argument

10   that Miller could not pursue claims of CBA breaches that were never grieved, *see* ECF No. 167

11   at 38–39, and repeated the argument with respect to the other Plaintiffs.  *See id.* at 43 & 44.

12   Plaintiffs did not respond to this argument.  The new arguments raised are not based on any

13   intervening case law, or new issue raised by the manner in which the Court ruled.  Rather, these

14   new arguments could have, and should have, been brought in response to SEIU's motion.

15          It is well-settled that a motion for reconsideration "may not be used to raise arguments or

16   present evidence for the first time when they could reasonably have been raised earlier in the

17   litigation." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) (emphasis in original,

18   citation and internal quotations omitted); *see also Nasby v. McDaniel*, 2016 WL 9223826, at *1

19   (D. Nev. 2016) ("A motion for reconsideration should not be used to make new arguments or ask

20   the Court to rethink its analysis.") (*citing N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841

21   F.2d 918, 925–26 (9th Cir. 1988)).

22          Plaintiffs' countermotion should be denied on this basis alone.

23   **IV.   Plaintiffs Were Not Excused from Attempting to Exhaust Miller's 301 Claims.**

24          Plaintiffs' argument on reconsideration is that Miller should be able to bring claims for

25   breach of Article 8 and 22 of the CBA because of language in the CBA excluding aspects of

26   those articles from the grievance procedure in certain situations.  However, this is not a valid

27   excuse for *not even attempting* to bring such claims to an arbitrator, and the language of the

28   / / /

                                          3

provisions cited makes clear that whether or not the breaches alleged would be considered

excluded is ambiguous—and thus a decision for an arbitrator, and not a court, to make.

### A. Contrary to Plaintiffs' Argument, it is Not Clear that Their Claimed CBA Breaches Would Be Excluded from the Arbitration Procedure, and In Any Case It Is For the Arbitrator to Decide If So.

Citing out-of-circuit authority, Plaintiffs argue that they did not even need to attempt to

arbitrate claims arguably excluded from the grievance and arbitration provision.  ECF No. 232 at

5–8. Even if this were the law in the Ninth Circuit, a close look at the two provisions for which

they claim breach shows that it would be up to *an arbitrator* to determine whether a violation

could be stated, or whether such a matter would be excluded from the arbitration provision.

**Critically, under the CBA, the parties *agreed* that any disputes over arbitrability** **would be decided by an arbitrator, not the courts.  Under "Step 3" of Article 11, the CBA** **states**: "*If the parties disagree about the arbitrability of a grievance, the arbitrator shall decide* *this issue prior to hearing the merits of the case*."  *See* ECF 167-18 at 18 (emphasis added).  In

*AT&T Technologies, Inc. v. Communications Workers of America,* the Supreme Court explained

that when parties clearly agree that questions of substantive arbitrability should be decided by the

arbitrator, it is for the arbitrator and not the courts to decide.  475 U.S. 643, 649 (1986).  Article

11 clearly and unmistakably so provides.  As such, Plaintiffs could not avoid bringing their

asserted breaches of Articles 8 and 22 to the arbitrator, who was empowered by the parties to

either decide the merits of the grievances, or—if the parties disputed whether such claims were

arbitrable—to decide the question of arbitrability first. *See Stupy v. U.S. Postal Serv.*, 951 F.2d

1079, 1082 (9th Cir. 1991) ("It is axiomatic that an aggrieved employee must exhaust any

exclusive grievance and arbitration procedure created in a collective bargaining agreement prior

to bringing a . . . suit against the employer.") (citation omitted).  Plaintiffs cannot leapfrog over

this requirement, and this contractual provision should be the end of the inquiry on exhaustion.

Whether or not the claimed breaches would be arbitrable depends on the specific

language of the two provisions, and also requires some review of the merits of the potential

claims themselves.  Article 8 in relevant part states that Local 1107 shall have the unilateral

right: "To hire temporary employees, subcontract any of the work or services *unless it is for the*

4

1   *sole purpose of displacing bargaining unit employees*." ECF No. 167-18 at 13 (emphasis added).

2   While Article 8, Section 3, states that "the reserved rights of [Local 1107] shall not be subject to

3   the grievance and arbitration provisions of this Agreement," NSEUSU claims that the front desk

4   person was hired "for the sole purpose of displacing a bargaining unit employee," ECF No. 27, §

5   174.  If Plaintiffs are correct, such an act *would not* be within Local 1107's reserved rights, and

6   *would be* subject to arbitration.  Thus, this is a run-of-the-mill contract dispute an arbitrator would

7   decide: whether Local 1107 was within its rights or whether its acts were for a purpose forbidden

8   by the contract.

9          Because it is thus ambiguous whether or not such a grievance would be subject to

10   arbitration, the presumption of arbitrability would apply and if there were a doubt the matter

11   would be deemed to be arbitrable.  *See Desert Coca Cola Bottling Co. v. Gen. Sales Drivers,*

12   *Delivery Drivers & Helpers, Loc. 14*, 335 F.2d 198, 201 (9th Cir. 1964) ("We cannot hold that

13   the term is 'clear and unambiguous', or say 'with positive assurance that the arbitration clause is

14   not susceptible of an interpretation that covers the asserted dispute.'") (quoting *United*

15   *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–85) (footnote omitted).[2]  And

16   determining arbitrability here necessarily requires a review of the merits, a role consigned to the

17   arbitrator.  *See Warrior & Gulf Navigation Co.*, 363 U.S. at 585 ("Since any attempt by a court

18   to infer such a purpose necessarily comprehends the merits, the court should view with suspicion

19   an attempt to persuade it to become entangled in the construction of the substantive provisions of

20   a labor agreement, even through the back door of interpreting the arbitration clause, when the

21   _____

[2] As cited in SEIU's reply brief in support of its motion for reconsideration/clarification, the

22   Supreme Court's decision in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S.

23   574, dealt with a similar dispute over the application of a management right's clause to contract

     out.  There, in the context of a petition to compel arbitration—where, more typically, it was the

24   *employer* and not the union seeking to avoid arbitration—the Court held that the claim at issue *is*

     *subject to the presumption or arbitrability*, despite the CBA's statement that "matters which are

25   strictly a function of management shall not be subject to arbitration under this section." *Id.* at

26   576.  The Court rejected the employer's defense that this provision exempted its subcontracting

     decision from the union's attempt to arbitrate a claimed breach of the CBA.  Because the matter

27   was ambiguous, the presumption of arbitrability applied. *See id.* at 584–85 ("In the absence of

     any express provision excluding a particular grievance from arbitration, we think only the most

28   forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly

     where, as here, the exclusion clause is vague and the arbitration clause quite broad.").

5

1    alternative is to utilize the services of an arbitrator.").  In any event, this is the test the

2    arbitrator—who the parties agreed would hear such disputes—would apply to determine whether

3    the matter were arbitrable.  Plaintiffs cannot avoid the exhaustion requirement through clever

4    pleading.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("A rule that permitted

5    an individual to sidestep available grievance procedures would cause arbitration to lose most of

6    its effectiveness, as well as eviscerate a central tenet of federal labor contract law under § 301

7    that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in

8    the first instance.") (citation omitted).

9    　　　Nor is it clear whether Plaintiffs' claimed breach of Article 22—though likely to fail on

10   its merits—would be arbitrable.  Entitled "Bilingual Pay" Article 22 provides, in its entirety:

11   　　　A. Upon approval of the Local President, an employee will be eligible to receive
     　　　Bilingual Pay in the amount of $75.00 (seventy five) per pay period.

12
     　　　B. The eligible employee must have sufficient proficiency in the second language and
13   　　　must communicate in a second language for a sufficient amount of time to warrant the
     　　　bilingual pay award. Award of bilingual pay to an employee will not occur simply
14   　　　because the employee is bilingual and occasionally uses bilingual skills in the course of
     　　　their work.
15
     　　　C. The President has the right to determine whether or not an employee meets the criteria
16   　　　that are necessary to receive Bilingual Pay and/or whether or not the employee's work
     　　　duties necessitate a second language. While Bilingual Pay will not be arbitrarily denied or
17   　　　withdrawn, the President's determination is final and shall not be subject to the grievance
     　　　and arbitration procedure.
18   ECF No. 167-18 at 30.

19   　　　Plaintiffs' complaint makes two allegations regarding Article 22.  In paragraph 108, they

20   state Defendants "breached Articles 1, 2, 8, 22 and 24 of the NSEUSU CBA by discriminating

21   against Mrs. Miller because of her physical disability when changing the 'necessary

22   qualifications' of the front desk position upon her request for reasonable accommodations,

23   without authority and in violation of the succession clause, to requiring Spanish speaking

24   bilingualism to circumvent the NSEUSU as the exclusive bargaining representative for full-time

25   administrative staff, and to displace a bargaining unit employee."  ECF No. 27 at 20.  In

26   paragraph 110, they further state that Defendants "breached Article 22 and 24 of the NSEUSU

27   CBA by determining the front desk position's "necessary qualifications" included a second

28   / / /

1   language when only the Local 1107 President was authorized to make that determination, the

2   position had never previously required bilingualism . . . ."  *Id.* at 20–21.

3        Upon review of Article 22, it is immediately clear that the right the article concerns is

4   that *of an employee who claims entitlement to bilingual pay*, not a general right on behalf of the

5   staff union to contest the circumstances in which speaking a different language is determined to

6   be a requirement of the job.  That authority belongs to Local 1107 under the management rights

7   clause.[3]  In any event, to the extent Plaintiffs wish to pursue a claim that it violated the CBA for

8   the Trustee to determine that the front-desk receptionist should speak Spanish, *the staff union*

9   *could have brought such a grievance, and could have sought for such a grievance to be*

10  *arbitrated.*  Though a losing claim, *see infra*, it arguably would *not* be subject to the exclusion

11  stated in the final sentence of Article 22(C).  That exclusion states: "While Bilingual Pay will not

12  be arbitrarily denied or withdrawn, the President's determination is final and shall not be subject

13  to the grievance and arbitration procedure."  In other words, the determination that shall not be

14  subject to the grievance and arbitration procedure is *the President's determination about whether*

15  *an employee is entitled to bilingual pay, which may not be "arbitrarily denied" or "withdrawn."*

16  Not a freestanding determination about whether to require a job position be bilingual.

17       Therefore, because it is at least ambiguous whether Plaintiffs' claimed violation of

18  Article 22 would be subject to arbitration, and such a grievance—if it had been filed—otherwise

19  would meet the criteria for a grievance, the presumption of arbitrability would apply and it

20  cannot be said "with positive assurance that the arbitration clause is not susceptible of an

21  interpretation that covers the asserted dispute."  *Desert Coca Cola Bottling Co.*, 335 F.2d at 201.

22       The Ninth Circuit's decision in *Desert Coca Cola Bottling Company* is instructive.  That

23  case concerned a claim that certain driver-salesman were entitled to overtime, and despite the

24  _____

[3] Article 8 of the CBA, "Management Rights," states that

25       Nothing in this agreement shall be construed to limit or impair the right of SEIU Local
         1107 to exercise its discretion in determining whom to employ, and nothing in this

26       Agreement shall be interpreted as interfering in any way with SEIU Local 1107's right to
         determine and *direct the policies, modes and methods of providing service to the*

27       *members* . . . .

28  ECF No. 167-18 at 13.  Clearly, whether Local 1107 wished to provide services to its Spanish
    speaking workers in their own language was committed to its discretion as an employer.

CBA including a conventional grievance and arbitration clause, the article also stated: "It is understood that the above shall not apply in any way concerning wages." *Id.* at 200. The Court found it was not clear whether the exclusion would apply to the claim, because the term "wages" may or may not apply to overtime. *See id.* ("Where shall one look for evidence as to whether or not the parties intended to so agree? If the language of the entire arbitration provision, including the last sentence, were perfectly clear and could bear only one meaning, we would look no further, and adopt that plain meaning. But it is a common experience to find that language which, read in isolation, seems to have only one possible meaning was, in its context in a larger writing and in the circumstances in which it was written, intended to mean something quite different."). The exclusions at issue here are similarly vague as to their application to Plaintiffs' specific claims, and should not be read in the isolated manner Plaintiffs propose.

As such, because neither of the claimed breaches are clearly and unmistakably excluded from the CBA's arbitration procedure, Plaintiffs' argument is based on a flawed premise.

### B. The Ninth Circuit Does Not Excuse A Failure to Exhaust Contractual Remedies in These Circumstances.

Notwithstanding the uncertainty regarding whether such grievances could have been arbitrated, the Ninth Circuit does not provide an excuse from the exhaustion requirement on that basis. Plaintiffs' reliance on out-of-circuit authority addressing, for the most part, whether to grant motions to compel arbitration *rather than* the distinct question of whether a plaintiff should be excused from the exhaustion requirement before filing a Section 301 claim in federal court, is thus misplaced. The Ninth Circuit allows for only two exceptions to exhaustion under Section 301: repudiation or wrongful refusal by the employee's union to process a grievance. *See Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir. 1981) (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). Nothing excused Plaintiffs' failure to even *attempt* to utilize the grievance and arbitration procedure for these claimed breaches. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.").

**C.    The February 13, 2018 Letter Cited By Plaintiffs Is a Red Herring and Does Not Concern Miller's Claim (the Fifth Cause of Action).**

In their countermotion, Plaintiffs cite as evidence a letter sent from Local 1107 to NSEUSU on February 13, 2018.  *See* ECF No. 232 at 8:14–22 & ECF No. 232-4.  This letter is a red herring.  First, it does not concern the Fifth Cause of Action (Miller's Section 301 claim), which is the focus of Plaintiffs' countermotion.  Rather, it concerns the "working conditions" grievance that was filed by NSEUSU, and is not clearly a part of this lawsuit.

Second, as Defendants have pointed out in prior briefing, three days later the letter was rescinded by Local 1107 as mistakenly sent, and in that clarifying letter Local 1107 sought to meet over the grievance.  *See* ECF No. 205 at 36 n. 33 (explaining and citing to follow-up February 16, 2018 letter, ECF No. 167-29).  However, NSEUSU failed to meet at the scheduled grievance meeting, and thus abandoned the grievance. *See* ECF No. 167-16, ¶ 7.

As such, Plaintiffs cannot rely on the rescinded February 13, 2018 letter as the basis for refusing to attempt to arbitrate their claims.

**V.    Even if Not Waived, Miller's Section 301 Claims Would Fail on Their Merits.**

The Court correctly ruled that Plaintiffs may not pursue, under Section 301, their claimed CBA breaches if no prior grievances were filed.  But even if the claimed breaches of Articles 8 and 22 were properly before the Court, they would fail on the merits, as SEIU has previously argued.  *See* ECF No. 167 at 39–40 n. 20 (SEIU's motion for summary judgment explaining why claims fail on the merits).

As for the claimed violation of Article 8, again that provision states in relevant part that Local 1107 shall have the unilateral right "[t]o hire temporary employees, subcontract any of the work or services *unless it is for the sole purpose of displacing bargaining unit employees*." ECF No. 167-18 at 13 (emphasis added).  But it is undisputed that the temporary employee hired in this case was in place long before Miller sought the front desk position.  It is also undisputed that Deputy Trustee Martin Manteca introduced a requirement that the front-desk person be bilingual in either Spanish or Tagalog, in order to better serve the union's diverse membership, at the

/ / /

9

1    beginning of the trusteeship in April 2017. *See* ECF No. 172-6, Manteca Depo Tr. 178:14–20;

2    179:9–16.  No contrary evidence was offered regarding the timing of either act.[4]

3            It is thus undisputed that the front desk position was filled, and the bilingual requirement

4    added, long before Miller made any request for the front-desk position sometime in October

5    2017.  *See* ECF No. 27 at 7:7–20 (alleging that on October 17, 2017, Miller met with Local 1107

6    trustees and, "[d]uring this meeting . . . requested that she be transferred to a front desk

7    administrative position within the bargaining unit that was filled by a temporary employment

8    agency employee.").  It is also undisputed that the temporary employee was in the position

9    *before* Miller made the request.  *See* ECF No. 167-5 at 37 (Miller's grievance form, which states:

10   "Debbie Miller has requested the front desk position *that is presently being occupied by a*

11   *temporary agency employee*.") (emphasis added); ECF No. 167-2 at 51, Tr. 177:11–18 (Miller's

12   confirming deposition testimony).

13           As such, even if they had not waived the claim, Plaintiffs cannot prevail on their theory

14   that Local 1107's refusal to fire an already-hired temporary worker in order to give her position

15   to Miller violated Article 8 of the CBA, which gave Local 1107 the unilateral right to hire

16   temporary employees *except* if it were to do so to displace a bargaining unit employee.  As there

17   is no evidence that a bargaining unit employee—much less Miller—was displaced by the

18   previous *hiring* of a temporary worker, Plaintiffs' claim fails on the merits and Defendants are

19   entitled to summary judgment on that basis.

20           The same goes for the claimed violation of Article 22.  As recited above, Article 22

21   concerns when an employee may receive bilingual pay.  The operative complaint alleges that

22   Defendants violated this article "by discriminating against Mrs. Miller because of her physical

23   disability when changing the 'necessary qualifications' of the front desk position upon her

24   request for reasonable accommodations . . . to requiring Spanish speaking bilingualism" and "by

25   determining the front desk position's 'necessary qualifications' included a second language when

26

27   _____

     [4]  Though not clear as to timing, Davere Godfrey consistently testified that another employee,
28   Melody Rash, was moved from the front desk receptionist position to a different position
     because she did not speak Spanish. ECF No. 201-5 at 219, Tr. 90:17-25.

1    only the Local 1107 President was authorized to make that determination . . . ."  ECF No. 27 at

2    20, ¶¶ 108 & 110).  Again, the theory is that the violation was taking an action *in response* to

3    Miller's claim.  But the undisputed evidence shows the bilingual requirement was introduced

4    beforehand.

5           Moreover, to the extent the claim is that Article 22 was violated because someone other

6    than Local 1107's President made the change to require the front-desk occupant speak Spanish,

7    this claim fails for three reasons.  First, Article 22 prescribes the circumstances in which

8    employees may receive a benefit—bilingual pay—and does not concern or restrict the separate

9    circumstances under which Local 1107 may set job requirements, which it has the right to do

10   under the CBA's management rights' clause.  This is clear from Article 22(C), which makes

11   clear that the President's authority regarding whether an employee's work "necessitates a second

12   language" is tied to the overall determination of whether or not that employee "meets the

13   criteria" to receive Bilingual Pay. *See* ECF No. 167-18 at 30.

14          Second, putting aside the overall object of the article, nothing in Article 22 says that *only*

15   the President has the right to make this determination outside of the context of whether to grant

16   bilingual pay to an employee who makes the request.  *See id.*  Finally, as a matter of law and

17   under the SEIU Constitution—and as NSEUSU admitted in a 30(b)(6) deposition, ECF No. 167-

18   5 at 10 (Depo. Tr. 45:17–24)— the Trustees had the authority of the Local 1107's former

19   President under the CBA, and thus could make whatever determination she had the power to

20   make.  *See* ECF No. 167 at 46 n.27 (SEIU's summary judgment motion making this argument);

21   ECF No. 205 at 20–21 (SEIU's reply); *see also Campbell v. Int'l Bhd. of Teamsters*, 69 F. Supp.

22   2d 380, 385 (E.D.N.Y. 1999) ("A trustee assumes the duties of the local union officer he replaces

23   and is obligated to carry out the interests of the local union and not the appointing entity.");

24   *Dillard v. United Food & Commercial Workers Union Local 1657*, No. CV 11-J-0400-S, 2012

25   WL 12951189, at *9 (N.D. Ala. Feb. 9, 2012) ("As a matter of law, a trustee steps into the shoes

26   of the local union's officers, assumes their rights and obligations, and acts on behalf of the local

27   union."), *aff'd*, 487 F. App'x 508 (11th Cir. 2012).

28   / / /

11

1    The unrelated Article 22, concerning bilingual pay rather than Miller's real claim of

2    discrimination, was not violated.

3    **VI.    Conclusion**

4    For these reasons, SEIU respectfully requests that the Court deny Plaintiffs'

5    countermotion for reconsideration of the Court's summary judgment order.

6

7    DATED:  May 5, 2021                    ROTHNER, SEGALL & GREENSTONE
                                            GLENN ROTHNER (*pro hac vice*)
8                                           JONATHAN COHEN
                                            ELI NADURIS-WEISSMAN (*pro hac vice*)
9                                           CARLOS COYE (*pro hac vice*)

10                                          By   */s/Eli Naduris-Weissman*
11                                              ELI NADURIS-WEISSMAN
                                            510 South Marengo Avenue,
12                                          Pasadena, CA  91101-3115
                                            Tel: (626) 796-7555 Fax: (626) 577-0124
13                                          *Attorneys for Service Employees International*
                                            *Union*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

    I am a member of Rothner, Segall & Greenstone.  On this 5th day of May, 2021, I caused a true and correct copy of the foregoing **DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION'S OPPOSITION TO PLAINTIFFS' COUNTERMOTION TO RECONSIDER PLAINTIFF MILLER'S § 301 LMRA CLAIM** to be served in the following manner:

✓        <u>ELECTRONIC SERVICE</u>:  Pursuant to LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served through the Notice of Electronic Filing automatically generated by the Court.

                        ROTHNER, SEGALL & GREENSTONE


                        By     /s/ Eli Naduris-Weissman
                              ELI NADURIS-WEISSMAN