# Exhibit 1

CMM000184   CMM000184   CMM000184



SERVICE EMPLOYEES
INTERNATIONAL UNION
LOCAL 1107, CTW CLC

2250 S. Rancho Drive
Suite #165
Las Vegas, NV 89102

PHONE 702-386-8849
FAX 702-386-4883

www.seiunv.org

January 3, 2018

Mr. Michael Mcavoyamaya
4549 Paseo Del Ray
Las Vegas, NV 89121
mmcavoyamayalaw@gmail.com

**SENT VIA EMAIL AND CERTIFIED US MAIL**

RE: Debbie Miller Grievance dated October 29, 2017

Dear Mr. Mcavoyamaya:

This letter regards a meeting that was scheduled to be conducted on December 15, 2017, regarding the grievance filed on October 29, 2017, concerning Debbie Miller.

Before the meeting was to begin, you appeared at Local 1107's Union Hall and demanded admittance to the grievance meeting. That you had been retained to represent NSEUSU and Ms. Miller was a fact that was not made apparent to Local 1107 personnel in advance of the Step 2 meeting. Additionally, in light of the fact that counsel was apparently retained for the Staff Union and Ms. Miller, and because Local 1107 was blindsided by this development and its counsel was not readily available, we announced that we would not meet without Local 1107 counsel present, and that the meeting would need to be rescheduled. I am informed counsel for Local 1107 communicated that fact to you by letter dated December 21, 2017. We undertook this course of action to allow us time to consult with counsel, particularly because we were aware at that time that you were retained by others who have legal actions pending against Local 1107 and others. We now understand, by your written confirmation to our counsel, that you have been retained to represent Nevada Service Employees Union Staff Union (NSEUSU or Staff Union) and Ms. Miller, in an individual capacity, for the purpose of her October 29, 2017 grievance, among other matters involving others.

As we have previously advised the Staff Union in writing, because of the imposition of a trusteeship over Local 1107 by the Service Employees International Union, the grievance framework outlined under Article 11 of the CBA is now legally impossible to adhere to. Therefore, as a means of adhering to the multi-step grievance process as closely as possible, as a general matter, grievances that are first heard at Step 1 will be heard by Martin Manteca, Deputy Trustee. Grievances not involving discipline, however, begin at Step 2 of the grievance process, and Step 2 meetings will be conducted by myself, the Trustee of Local 1107. The purported grievance filed in this matter does not assert any disciplinary action, so it would be treated at Step 2. For that reason, I am making findings and conclusions on the basis of the October 29, 2017 grievance as filed.

CMM000184   CMM000184   CMM000184

CMM000185                    CMM000185                    CMM000185

As noted above, the parties have not yet met on the grievance, but were to meet on December 15, before being blindsided by your unannounced appearance. In the meantime, I have had an opportunity to review the grievance that was filed. After considering the grievance and the collective bargaining agreement between the Staff Union and Local 1107, for the reasons expressed more fully below, I find the grievance is not cognizable under the Staff Union CBA, and therefore the grievance will not be processed. Local 1107 will neither arbitrate nor agree to arbitrate the grievance as filed.

The grievance as filed is not cognizable because it asserts matters that are expressly not subject to grievance and arbitration under the CBA. There is no jurisdiction to grieve ADA claims under the CBA. ADA claims are expressly excluded from the defined scope of a "grievance" under the CBA. Article 11 defines a "grievance" as "a filed dispute between the Union, on behalf of an employee(s), and the Employer over the interpretation and/or application of the express terms of this Agreement. . . ." However, the CBA then limits the definition by expressly removing disputes that arise under discrimination laws, such as the ADA, from the jurisdiction of the grievance process. "A grievance shall not be defined to include any matter or action taken by the Employer or its representatives for which the Equal Employment Opportunity Commission (EEOC), or Nevada Equal Rights Commission (NERC), has jurisdiction."

This grievance arises out of the granting in part and denial in part of requests for accommodations under the Americans with Disabilities Act (ADA), which have been previously communicated to Ms. Miller in writing. Given the confidential nature of this communication, I will not detail the underlying conditions for which Ms. Miller sought an accommodation, though I suspect Ms. Miller has already shared her information with the Staff Union and you, as its and her attorney.

A claim for failure to provide reasonable accommodations states a claim under the ADA. The ADA requires exhaustion of administrative remedies by filing a charge with the EEOC. Because the grievance challenges the propriety of the Employer's acts or omissions under the ADA, the grievance is not arbitrable under Article 11.

Without waiving the non-arbitrability of the of this grievance, and merely as a courtesy to the Staff Union to more fully explain Local 1107's position, even if the grievance were arbitrable, the grievance would be denied on the merits for the reasons previously communicated in writing to Ms. Miller in granting in part and denying in part her requests for accommodations under the ADA.

Under the ADA, an employer is required to grant only reasonable accommodations for identified and supported impairments that amount to qualifying disabilities. The employer has the discretion to choose accommodations as long as they are reasonable and will be effective, in the good faith belief of the employer. The employer has no obligation to give an employee the employee's preferred accommodation.

Here, Ms. Miller adequately supported accommodations to sit/stand, take breaks to manage her condition and to eat, and to eat during her shift, all to help her manager her documented conditions. Ms. Miller's requested accommodations to be transferred to a desk position and for a permanent, fixed schedule are not reasonable because those accommodations would eliminate essential functions of her job as an organizer. The organizer position requires significant field work and the ability to work a flexible schedule in a dynamic environment. Additionally, when granting reasonable accommodations, the employer need not create new positions, displace other employees, or take any other action that would constitute an undue hardship on the employer.

CMM000185                    CMM000185                    CMM000185

CMM000186                                    CMM000186                                    CMM000186

However, the merits of the dispute are not relevant to the processing of this grievance because it concerns subject matter that is expressly excluded from coverage as a grievance under the Staff Union CBA. Because the merits are now the subject of an active EEOC charge, we decline to address the particulars of Ms. Miller's claims further. But because claims arising under the ADA are not cognizable as grievances under the CBA, the grievance as filed will not be processed.

In addition to there being no jurisdiction for ADA claims under the CBA, there is no jurisdiction to grieve matters subject to management rights because management rights are expressly not subject to grievance and arbitration under the CBA.

Article 8 of the CBA contains an expansively broad management rights clause. Section 1 of the management rights clause permits Local 1107 "discretion in determining whom to employ," "to employ temporary employees," "to determine and re-determine job assignments," and "to establish and alter working schedules at any time," among other management rights. In expanding an already broad management rights clause, Section 2 provides that Local 1107 has the "unilateral right[]," among other things, to "determine the services to be performed[ and] the methods of service," to "select, hire, train, transfer employees," to "direct and manage the work force," and to "adopt, add to, amend, change or rescind any reasonable work rule." Finally, Section 3 expressly excludes management rights from grievance and arbitration and from bargaining. "The reserved rights of SEIU Local 1107 shall not be subject to the grievance and arbitration provisions of this Agreement nor shall SEIU Local 1107 be required to bargain with the Staff Union about exercising any of its reserved rights during the term of this Agreement."

Read as a whole, Local 1107 has exclusive and sole discretion to set job descriptions for bargaining unit work. The requirement for a bilingual front desk receptionist, even if it constitutes a change in job descriptions or departs from the practices of the qualifications of those who previously held the position, does not displace the position from the bargaining unit, and thus has no effect on the unit or the Staff Union's representation of the unit, obviating any need for effects bargaining, to the extent required (though Local 1107 disputes effects bargaining would be required given the broad management rights clause).

Local 1107 has a significant population of bargaining unit members who speak Spanish as their first (or only) language. To effectively discharge our duties as exclusive bargaining representative, it is imperative that we be able to communicate effectively with members. This is an operational necessity of Local 1107.

To the extent the grievance challenges the Employer's right to set job descriptions, to set qualifications for positions within the bargaining unit, and to hire and fire employees for bargaining unit positions, the grievance as filed is not cognizable because it concerns subject matter that is not arbitrable under management rights.

Without waiving the non-arbitrability of the grievance and, again, as a courtesy to the Staff Union, on the merits, to the extent not within the scope of the broad management rights clause, the CBA is silent on promotion, demotion, transfer of work, filling vacancies, or the method for conducting the same. Thus, these matters remain within management's discretion, and thus the grievance fails to state a claim for violation of a stated contractual term or provision.

To the extent the grievance as filed asserts a violation of the non-discrimination clause in Article 2 of the CBA, the grievance is not cognizable under the CBA because discrimination claims arising under the ADA are expressly excluded from grievance and arbitration. As explained

CMM000187                    CMM000187                    CMM000187

2 of the CBA, the grievance is not cognizable under the CBA because discrimination claims arising under the ADA are expressly excluded from grievance and arbitration. As explained above, matters that fall within the jurisdiction of the EEOC or NERC are expressly not subject to grievance and arbitration under Article 11 of the CBA. Thus, the grievance is not arbitrable.

Without waiving the non-arbitrability of this grievance, the grievance identifies no adverse employment action that has been taken against Ms. Miller. This is not a cognizable discipline grievance, as no discipline has been issued related to this grievance. Local 1107's decision-making of whether to grant a reasonable accommodation is committed by law to the employer, and Article 2 of the Staff Union CBA cannot be used to backdoor into the grievance process subject matter that is expressly excluded from the grievance and arbitration provisions of the CBA.

In sum, because the grievance asserts matters that are expressly not subject to grievance and arbitration under the CBA, the grievance is not cognizable as filed. Therefore, for the reasons expressed above, I find the grievance as filed is not cognizable under the CBA, it does not present a valid grievance, and, therefore, Local 1107 will not process it and will not consent to arbitrate it.

Ms. Miller has been on an unpaid administrative leave status pending resolution of this matter. Because the grievance filed is not cognizable as such, and because we consider the matter concluded, Ms. Miller is expected to report to work to resume her duties on Monday, January 8, 2018. She should report to Grace Vergara.

Sincerely,

*Luisa Blue*

Luisa Blue
Trustee, SEIU Local 1107

cc:    Susan Smith, NSEUSU
       Debbie Miller, Grievant
       Martin Manteca, Deputy Trustee, SEIU Local 1107
       Michael A. Urban, Esq.
       Sean W. McDonald, Esq.

CMM000187                    CMM000187                    CMM000187