**MCAVOY AMAYA & REVERO ATTORNEYS**
MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
1100 E. Bridger Ave.
Las Vegas, Nevada 89101
Telephone:     (702) 299-5083
mike@mrlawlv.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \* \*

| | |
|---|---|
| JAVIER CABRERA, an individual; DEBORAH MILLER, an individual; CHERIE MANCINI, an individual; and the NEVADA SERVICE EMPLOYEES UNION STAFF UNION ("NSEUSU"), an unincorporated association,<br><br>Plaintiff,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION ("SEIU"), a nonprofit corporation; *et al.*<br><br>Defendants. | CASE NO.: 2:18-cv-304-RFB-DJA<br><br><br>**MOTION IN LIMINE TO EXCLUDE DEFENDANT'S UNTIMELY VOCATIONAL REHABILITATION EXPERT TESTIMONY AND LIMIT EXPERT TESTIMONY TO REBUTTAL**<br><br>**(HEARING REQUESTED)** |

Plaintiffs, by and through their attorneys of record, MICHAEL J. MCAVOYAMAYA ESQ., hereby submit Plaintiffs' *Motion in Limine to Exclude Defendant's Untimely Vocational Rehabilitation Expert Testimony and Limit Expert Testimony to Rebuttal*.

This Motion is based upon the pleadings and papers on file in this action, the Points and Authorities set forth herein and argument to be made by counsel at the time of the hearing.

Dated the 15th day of September, 2021.

/s/ Michael J. Mcavoyamaya
_____
MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
1100 E. Bridger Ave.
Las Vegas, Nevada 89101
Telephone:     (702) 299-5083
mike@mrlawlv.com
*Attorney for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTS AND PROCEDURAL HISTORY.**

This matter arises out of numerous breaches of a collective bargaining agreement ("CBA") between the Nevada Service Employees Union Staff Union ("NSEUSU"), the Service Employees International Union ("SEIU") Local 1107 an emergency trusteeship imposed over Local 1107 by SEIU on April 28, 2017, and Local 1107's subsequent refusal to provide reasonable accommodations to Plaintiff Debbie Miller pursuant to the Americans with Disabilities Act, and subsequent disability discrimination. Defendants have repeatedly and consistently failed to meet the Court's scheduled deadlines due to their own lack of diligence. The discovery scheduling order sought and received a special schedule, which set the deadline to disclose initial experts to August 12, 2019, and rebuttal expert disclosure on September 12, 2019. *See* ECF No. 31, at 5-6. On August 12, 2019, Plaintiffs disclosed their economic expert including the expert report, and a list of documents the expert considered. *See* Declaration of Counsel, at 1; *see also* Kirkendall Expert Report, attached as **Exhibit 1,** at 1-10. That same day, the SEIU Defendants sent Plaintiffs' counsel an email purporting to be "DEFENDANTS SERVICE EMPLOYEES INTERNATIONAL UNION'S AND MARY KAY HENRY'S EXPERT WITNESS DISCLOSURE." *See* Defs. 8/12/2019 Email RE: SEIU Expert Discl., attached as **Exhibit 2,** at 1. The attached pleading was not an expert witness disclosure. *See* SEIU Expert Discl. Pleading, attached as **Exhibit 3,** at 1-2. SEIU's expert witness pleading asserted that:

> Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A)-(B), *parties must disclose to other parties in this matter the identity of any expert witnesses they may use at trial, as well as written reports by these expert witnesses*. Defendants Service Employees International Union ("SEIU International") and Mary Kay Henry (collectively referred to herein as "Defendants") *intend, and hereby reserve their right*, to retain expert witnesses to evaluate any claim of damages averred by Plaintiffs.

*Id.* at 1.

Defendants' expert disclosure pleading did not identify the identity of the expert witnesses they intended to use, nor any reports of those witnesses. Rather, Defendants maintained that it was "premature to retain and, thus, to disclose any expert witness at this stage of the case" because

motions were pending before this court, despite there being no stay of discovery. *Id.* According to Defendants' expert pleading Defendants were reserving the right to disclose experts late. *Id.*

Plaintiffs' counsel noted in response to this deficient disclosure that it was not an expert disclosure in accordance with FRCP 26. *See* **Ex. 2,** at 1-2. On August 15, 2019, three days after the initial expert deadline had expired, Defendants requested that Plaintiffs stipulate to extending the deadline to disclose both initial and rebuttal experts. *See* Defs' Email RE Extend Expert Deadlines, attached as **Exhibit 4,** at 2-3. Defendants also claimed that Plaintiffs' expert disclosure was deficient because it did not include the documents sent to the expert. *Id.* However, the report listed documents reviewed by the expert that were already in Defendants' possession, and thus the disclosure was not deficient. *See* Decl. Counsel, at 1.

That same day, to avoid a dispute over the matter, Plaintiffs' counsel promptly sent the documents requested by Defendants. *See* Emails RE Ext. Expert Deadlines, attached as **Exhibit 5,** at 1. Plaintiffs' counsel also noted his confusion regarding why Defendants "did not simply request that I stipulate to the extension earlier before the deadline ran. I asked you if that is what you wanted me to consent to, and was clearly willing to so stipulate" prior to expiration of the deadline. *Id.* s*ee also* Decl. Counsel, at 1. Despite Defendants' lack of diligence, Plaintiffs' counsel decided not to be difficult and agreed to extend both the initial and rebuttal expert deadlines as Defendants had requested and asked Defendants to "[p]lease draft the stipulation to extend asap so that we may get it front of the new magistrate. As I am sure you know, neither of us are entirely clear on how this new judge will rule on matters such as this, and considering the deadline has ran, it would be best not to delay any further in requesting the extension." *See* **Ex. 5,** at 1. Instead of promptly drafting and submitting a stipulation to extend deadlines that day to avoid further delay Defendants waited until August 20, 2019, eight days after the subject deadline expired to provide Plaintiffs' counsel with the stipulation. *Id.* at 2-3. On August 23, 2019, after reviewing the stipulation, Plaintiffs' counsel wrote Defendants' counsel an email objecting to misrepresentations Defendants included in the stipulation regarding Defendants' "expert disclosure":

> I'm confused. My understanding is that we were extending both the expert and rebuttal disclosure deadlines because you wanted to provide an expert disclosure. I do not recall receiving an expert disclosure from SEIU (correct me if I am wrong). The stip says you provided an expert disclosure on the initial expert deadline. I have not received an expert report from you guys that I have seen. Is that a typo?

*Id.* at 5.

Defendants took until August 26, 2019, fourteen (14) days after the initial expert deadline expired, to respond to the inquiry regarding the misleading language in the stipulation asserting that "the expert disclosure pleading" was a sufficient expert disclosure, but acknowledging that "it is true we did not disclose an expert." *Id.* Defendants assured that the language would be eliminated from the stipulation. *Id.* Plaintiffs' counsel sent a final clarification email regarding what the parties were stipulating to because Defendants request had changed from seeking a stipulation to extend both the initial and rebuttal expert deadlines, to a request to extend only the rebuttal expert deadline. *Id.* at 6. Plaintiffs' counsel wanted to:

> make clear what were doing because your request changed. We are no longer asking to extend the expert disclosure deadline and the rebuttal expert deadline. Instead, we are only extending the rebuttal expert deadline so you can disclose a rebuttal expert to the expert I disclosed on the 12th. You have not disclosed an expert. You need extra time to disclose your rebuttal expert. Is that what we're doing?

*Id.* at 6.

Plaintiffs' counsel wanted to make absolutely clear that the parties were only seeking to extend the rebuttal expert deadline because if Defendants were going to disclose an initial expert that gave initial expert opinions, Plaintiffs' counsel wanted to be sure that he would have the opportunity to retain a rebuttal expert himself to respond to the expert's report within the deadline. *See* Decl. Counsel, at 2-3. Defendants' counsel responded confirming that Plaintiffs' counsel's understanding that the parties were now only stipulating to extend the rebuttal expert deadline, not the initial expert deadline Defendants' missed, was correct and any expert subsequently disclosed expert would be solely for the purpose of rebutting the specific opinions of Plaintiffs' economic expert. *Id.* Specifically, Defendants assured Plaintiffs' counsel that they sought "extension of the rebuttal expert disclosure deadline only, as SEIU or Local 1107 will likely be disclosing a rebuttal expert witness or witnesses." *Id.* Defendants assured Plaintiffs' counsel that "[t]he potential testimony *will address the issues of damages and mitigation in the Kirkendall report*." *Id.* (emphasis added). On August 27, 2019, Defendants filed the stipulation to extend the rebuttal expert deadline only. *See* ECF No. 71, at 1-7. On August 28, 2019, the Court granted an extension of the rebuttal expert deadline only to October 11, 2019. *See* ECF No. 72, at 7.

On October 10, 2019, Defendants disclosed two "rebuttal" experts, Kirk Marangi, M.B.A., an economist, and Edward L. Bennett, a vocational rehabilitation expert. *See* L1107 Expert Disclosure, 10/10/2019, attached as **Exhibit 6,** at 2-3. Defendants disclosed an economist rebuttal

expert report. *See* Marangi Report, attached as **Exhibit 7,** at Marangi – 001-12. Defendants also disclosed a vocational rehabilitation expert report. *See* Bennett Report, attached as **Exhibit 8,** at Bennett – 001-27. The Bennett report does not reference the opinions of Plaintiffs' expert, Kirkendall, a single time. *Id.* Bennett also fails to opine on any subject matter Kerkendall analyzed nor rebut any opinion that Kirkendall made in his report. *Id.* Instead, Defendants' vocational rehabilitation expert report consists entirely of new, initial expert opinions regarding Plaintiff Miller's alleged "post-termination employability and earnings capacity" based on an "Analysis of plaintiff's duty to mitigate damages," conduct a reasonably diligent job search, and opinions regarding the alleged "accommodations" Plaintiff requested and allegedly received. *Id.* These opinions do no rebut any of Plaintiffs' expert's opinions and instead seeks to offer initial expert opinions that were required to be disclosed on August 12, 2019, and must be excluded. Finally, the majority of Marangi's report that disputes Kirkendall's opinions relies entirely on Bennett's opinions, not Marangi's own specialized knowledge, and his testimony must be limited only to matters appropriate for rebuttal.

## II.    ARGUMENT

### A.    Standard Of Review.

The broad purpose of the discovery rules is to enable litigants to prepare for trial, and it is not their purpose to give one party a strategic advantage over the other. *Cooper v. Stender,* 30 F.R.D. 389, 393 (E.D. Tenn. 1962). As the Fourth Circuit Court of Appeals has stated, "[a] trial is not a sporting event, and discovery is founded upon policy that search for truth should be aided." *Tiedman v. American Pigment Corp.,* 253 F.2d 803 (4th Cir.1958). This is because "the purpose of discovery in civil actions is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *US. ex rel. Schwartz v. TRW, Inc.,* 211 F.R.D. 388 (C.D. Cal. 2002). Consistent with this policy, FRCP 26 requires litigants to disclose witnesses and documents, including initial and rebuttal expert testimony. *See* Fed. R. Civ. P. 26.

Under the Federal Rules of Civil Procedure, any non-disclosed, untimely disclosed, and/or improperly supplemented materials (and testimony derived from the same), as well as any witnesses not previously or timely identified, must be excluded at trial and in connection with any motion practice. FRCP 37(c)(1) expressly states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information*

*or witness* to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.*

The primary purpose of a motion in limine is to prevent prejudice at trial. *Hess v. Inland Asphalt Co.,* 1990 U.S. Dist. Lexis 6465, 1990-1 Trade Cases (CCH) P68, 954 (ED. Wash., Feb. 20, 1990). The court has authority to issue a preliminary ruling on the admissibility of evidence. The decision to do so is vested to the sound discretion of this court. *See State v. Teters*, 2004 MT 137, 91 P.3d 559, 563 (Sp. Ct. Mont. 2004). The court's discretion will not be overturned on appeal absent a showing of a clear abuse-of-discretion. *See Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 966-67 (7th Cir. 1996); *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.) (1979) cert. denied, 444 U.S. 862 (1979); *United States v. Robinson*, 560 F.2d 507, 513-515 (2d Cir. 1977), cert. denied, 435 U.S. 905 (1978); *United States v. Hall*, 565 F.2d 1052, 1055 (8th Cir. 1977); *Texas Eastern Transmission v. Marine Office-ARPleton & Cox Com.*, 579 F.2d 561, 567 (10th Cir. 1978); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir. 1978); *Longenecker v. General Motors Corp.,* 594 F.2d 1283, 1286 (9th Cir. 1979); *United States v. D'Alora*, 585 F.2d 16, 21 (lst Cir. 1978); *United States v. Juarez*, 561 F.2d 65, 70-71 (7th Cir. 1977). Such motions are designed to simplify the trial and avoid prejudice that often occurs when a party is forced to object in the presence of the jury, to the introduction of evidence. *Fenimore v. Drake Construction Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976).

**B.** **This Court Must Exclude Defendants' Economist And Vocational Rehabilitation Expert From Testifying Outside The Scope Of Rebuttal Because Defendants' Failed To Timely Disclose The Vocational Expert's Testimony In Violation Of FRCP 26 And 37.**

A rebuttal expert may only testify after the opposing party's initial expert witness testifies. *Laflamme v. Safeway, Inc.*, 2010 WL 3522378, *2 (D. Nev. Sept. 2, 2010). Proper rebuttal expert testimony "is intended solely to contradict or rebut evidence on the same subject matter identified *by an initial expert witness*." *R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 WL2923703, *2 (D. Nev. July 18, 2011) (emphasis added). Rebuttal expert reports are proper if they contradict or rebut the subject matter of the initial expert's report. *Id.* Rebuttal expert reports are not the proper place for presenting new arguments. *Nunez v. Harper*, 2014 WL 979933, *1 (D. Nev. Mar. 11, 2014) (citing *R&O Constr. Co.*, 2011 WL 2923703 at *2). "If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Id.* Indeed, a rebuttal expert is

"intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." *See* Fed. R. Civ. P. 26. "Rebuttal experts cannot testify in their parties' case-in-chief." *Specter v. Tex. Turbine Conversions, Inc.*, No. 3:17-cv-00194-TMB, 2020 U.S. Dist. LEXIS 230473, at *11 (D. Alaska Dec. 8, 2020). A "proper expert rebuttal cannot explore new areas not raised in initial reports." *Id. quoting TCL Commns. Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV 14-00341 JVS (Anx), 2016 U.S. Dist. LEXIS 194814, at *10 (C.D. Cal. Aug. 17, 2016).

Here, it is clear that Defendants' proffered vocational rehabilitation expert, Edward Bennett, is not a proper rebuttal expert witness because nothing in Mr. Bennett's report contradicts or rebuts the opinion of Plaintiffs' economist expert, Kirkendall. Further, Defendants' economist expert, Marangi, gives opinions regarding Plaintiff Miller's economic damages that are based on the vocational expert's opinions outside the scope of rebuttal, and thus are also outside the scope of rebuttal and must be excluded.

### 1. *Plaintiffs' Economist Expert Kirkendall's Report.*

Plaintiffs retained and disclosed as an initial expert the report of Kevin B. Kirkendall, MBA, CPA, CFE. *See* **Ex. 1,** at 2. The scope of Kirkendall's expert opinion was give his expert opinions "concerning economic damages alleged by Ms. Miller" relating to Plaintiff Miller's wrongful termination from Local 1107. *Id.* at 1. Kirkendall's expert opinion was limited to "Economic damages calculated as of this writing include the difference between Ms. Miller's earnings and benefits with Local 1107 and earnings an benefits obtained from post-termination employment." *Id.* Kirkendall reviewed the First Amended Complaint, SEIU's pension plan documents, Debbie Miller's tax returns for three years, Local 1107's health insurance costs report, the NSEUSU CBA and pay scale 2016, and pay stubs from Plaintiff's Miller's new employer, Davita. *Id.* at 1-2. Kirkendall explained:

> Economic damages in the form of lost earnings and benefits to Ms. Miller are calculated as the present value of her pre-termination earnings and benefits less the present value of post-termination employment earnings and benefits. The present value of Ms. Miller's earnings and benefits as if she had continued working for Local 1107 is calculated on Exhibit C - 1 and totals $534,335. The present value of Ms. Miller's postincident/mitigating earnings and benefits is calculated on Exhibit C - 2 and totals $158,654. The difference of $375,681 is calculated on Exhibit A and represents economic damages to Ms. Miller over a 5-year time period beyond the date of her termination. The value of employer-paid benefits is estimated at the rates set forth on Exhibit D. Pre-termination and post-termination earnings and

benefits are estimated to increase at the rates noted on Exhibit F. Future earnings under the pre-termination and post-termination scenarios are discounted to present value using the U.S. Treasury Bond rates set forth on Exhibit E.

*Id.* at 2.

Kirkendall's expert report includes no opinions regarding future earning capacity, the job search that Plaintiff Miller conducted, Plaintiff Miller's duty to mitigate damages under federal employment law, Plaintiff Miller's jobs applied to post-termination, what constitutes a reasonable and diligent job search effort under the law, nor any opinions about Plaintiff Miller's request for accommodations or any alleged accommodations provided. *Id.* at 1-10. Rather, Kirkendall's expert report is limited to actual economic damages incurred by Plaintiff Miller for her period of unemployment, and the difference between her compensation and benefits that she would have received from Local 1107 and the compensation and benefits she received with her new employer, Davita. *Id.*

### 2. Defendants' Economist Rebuttal Expert, Marangi's Report.

Defendants' economist expert, Kirk Marangi, gives some rebuttal expert opinions in his report produced by Defendants on October 10, 2019. *See* **Ex. 7,** at Marangi – 001-12. Mr. Marangi asserts that his "rebuttal report will discuss our opinion of deficiencies and differences with the Kirkendall report dated August 12, 2019 in the matter of Cabrera et al. v Service Employees International Union, et al. specifically related to economic damages for plaintiff Deborah Miller." *Id.* at Marangi – 002. Marangi's calculations of Plaintiff Miller's pay and benefits during her employment with Local 1107 and with her new employer do not differ substantially from Kirkendall's opinions. The primary issues of rebuttal appear to be in regards to one issue, the "Employer Paid Benefit Rate." *Id.* at Marangi – 003. According to Marangi, he disagrees with the percentage of employer paid benefits estimated by Kirkendall as "46.57% of wages," supplementing Marengi's "lower 37.52%" benefit rate. *Id.* However, aside from Marangi's disagreement with Kirkendall on the issue of employer paid benefit rate, the remainder of Marangi's so called rebuttal of Kirkendall's economic analysis of Plaintiff Miller's lost earnings relies on the undisclosed, non-rebuttal opinions of Defendants' vocational expert, Mr. Bennett.

For example, Marangi disputes that the contractually guaranteed auto allowance Plaintiff Miller was receiving is not a "loss to the plaintiff" because:

> According to Edward Bennett (Telephone Conference dated 10/7/19) the post-termination employment would have comparable auto allowance if needed for driving her own vehicle. During the period of "job search," there would be no loss of auto allowance as this benefit is tied to employer required driving. Therefore, there is no loss of auto allowance.

*Id.* at Marangi -003.

This opinion does not appear to be based on any specialized knowledge of Marangi as an economist. *Id.* Rather, Marangi uses an unsupported statement of Bennett in a telephone conference that Plaintiff did not do a reasonable job search as his entire basis for concluding that there is no auto allowance loss. *Id.* In fact, the vast majority of Marangi's opinions seek to pass off Bennett's untimely disclosed initial expert opinions as his basis for rebutting Kirkendall's opinions. Marangi asserts that on October 4, 2019, he received Bennett's vocational expert report, and that "In Mr. Bennett's opinion, the plaintiff would have conducted a job search from her date of termination until 3/14/18." *Id.* Marangi then adjusts "Mr. Kirkendall's Exhibit C-2 to reflect the job search time without work." *Id.* However, Plaintiffs never disclosed a vocational expert for Bennett to rebut, and at no point in Kirkendall's report did he give any opinion regarding what constitutes an acceptable job search, or time period to search for a job. *See* **Ex. 1,** at 1-10.

Marangi goes on to assert that "In Mr. Bennett's opinion, after the job search time frame, the plaintiff would have an earning capacity that was 'same or similar as that which she was accustomed to pre-termination,'" and because Bennett concluded Plaintiff should have had the same earning capacity if she had done a sufficient job search, Marangi decided to use "the same pay level of $67,564 as used in the Pre-Termination scenario." *See* **Ex. 7,** at Marangi – 003. Indeed, every single "rebuttal" of Kirkendall's report besides the benefits rate that Marangi asserts in his report relies on Bennett's opinions, not Marangi's opinions. *Id.* at Marangi – 001-4.

Marangi does give economist rebuttal opinions regarding Kirkendall's inclusion of life insurance, social security, and medicare as part of the employer paid benefit rate that do not rely on Bennett's untimely disclosed vocational expert opinions. *Id.* at Marangi – 003-5, 010-12. These issues are appropriate scope of rebuttal opinions. *Id.* Defendants' economist rebuttal expert, Marangi, should be limited to giving testimony only on matters that rebut Kirkendall's opinions and do not rely on Bennett's report. Specifically, Marangi should be limited to his opinions regarding the employer paid benefit rate used by Kirkendall only, as the remainder of Marangi's

analysis relies entirely on Bennett in a field that is outside the scope of rebuttal and Marangi's own expertise.

### 3.    *Defendants Vocational Expert, Bennett.*

Unlike Marangi, who at least cites to Kirkendall's report and attempts to rebut some of its conclusions and methods utilized by Kirkendall in his economic analysis, Bennett's report is entirely on new issues unrelated to any of Kirkendall's expert opinions. As an initial matter, in must be noted that Kirkendall is not a vocational rehabilitation expert and neither is Marangi. *See* **Ex. 7,** at Marangi – 013-15; *see also* Kirkendall Carriculum Vatae, attached as **Exhibit 8,** at 1. Neither Kirkendall nor Marangi have any education or specialized knowledge in the field of vocational rehabilitation, job searching, duties and appropriate methods for mitigating damages in employment cases, or what is a reasonable accommodation for a person with a disability under the ADA. *Id.* It is for this very reason that Marangi's rebuttal report is forced to rely on Bennett's vocational rehabilitation conclusions to justify deviations from Kirkendall's entirely economic analysis. *See* **Ex. 7,** at Marangi – 001-6. Marangi, like Kirkendall, as economists, have no specialized knowledge or education regarding vocational rehabilitation, reasonable job searches, duties and appropriate methods for mitigating damages, or what is a reasonable accommodation under the ADA, and therefore cannot and do not give any opinions on those subjects. *Id.* In contrast, Bennett is not an economist. *See* Bennett Report, attached as **Exhibit 9,** at Bennett – 045. Bennett is vocational rehabilitation counselor who has the expertise "To provide vocational rehabilitation services and vocational rehabilitation evaluations within various systems." *Id.* Bennett's expertise is in an entirely different subject matter, and is unqualified to give rebuttal opinions on the damages calculations of an economist.

Indeed, it is repeatedly noted, and now commonplace in civil litigation that economist experts are rebutted by economist experts, and vocational rehabilitation experts are rebutted by vocational rehabilitation experts. *LaFlamme.*, No. 3:09-cv-00514-ECR-VPC, 2010 U.S. Dist. LEXIS 98815, at *8; *Miller v. Vicorp Rests.*, No. C-03-00777 RMW, 2006 U.S. Dist. LEXIS 114327, at *5 (N.D. Cal. Apr. 14, 2006); *Weber v. Eco-Adventures, Inc.*, No. 02-00596 ACK/BMK, 2004 U.S. Dist. LEXIS 27485, at *7 (D. Haw. Apr. 2, 2004); *Nunez v. Harper*, No. 2:13-cv-00392-GMN-NJK, 2014 U.S. Dist. LEXIS 34343, at *11 (D. Nev. Mar. 11, 2014); *Nazar v. Harbor Freight Tools United States*, No. 2:18-cv-00348-SMJ, 2020 U.S. Dist. LEXIS 150201, at *2 (E.D. Wash. May 27, 2020); *Robinson v. Sherwin Williams Co.*, No. 1:20-cv-00112-DAD-

JLT, 2021 U.S. Dist. LEXIS 45252, at *3 (E.D. Cal. Mar. 9, 2021); *Holen v. Jozic*, No. C17-1147JLR, 2018 U.S. Dist. LEXIS 188479, at *4 (W.D. Wash. Nov. 2, 2018); *Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2014 U.S. Dist. LEXIS 110624, at *19 (D. Nev. Aug. 8, 2014). This is because economists and vocational experts opine on entirely different subject matter. *Id.* While it is not per se impossible for a vocational expert to appropriately rebut opinions of an economist expert, the opinions must still be limited to contradicting the initial expert's opinions and methodology, and cannot give opinions on "new areas not raised in initial reports." *Specter*, No. 3:17-cv-00194-TMB, 2020 U.S. Dist. LEXIS 230473, at *11   *quoting TCL Communs. Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV 14-00341 JVS (Anx), 2016 U.S. Dist. LEXIS 194814, at *10 (C.D. Cal. Aug. 17, 2016).

The fact that Bennett's report opines on entirely new subject matter related to Defendants' case in chief that were not reviewed or opined on by Kirkendall is clear on the face of the report itself for numerous reasons. *See Nunez*, 2014 WL 979933, *1. First, and most importantly, Bennett does not mention Kirkendall or his opinions a single time in the twenty-seven (27) pages of Bennett's report. *See* **Ex. 9,** at Bennett – 001-27. Indeed, Kirkendall's report is only mentioned at all one time in the eighty-three (83) pages of the Bennett disclosure, in Bennett's "Exhibit A," the list of records reviewed. *Id.* at Bennett – 028-29. The only other reference to Plaintiffs' expert in the Bennett report is on page four (4) of Bennett's report regarding the reason for his retention, where Bennett asserts that "[t]he purpose of the referral, per Specific Services Requested checklist in the Retainer Agreement, was for this office to perform the following:…(2) Rebuttal of the *Vocational Evaluation* by plaintiff's expert." *Id.* at Bennett – 004 (emphasis added).

However, Plaintiffs did not disclose a vocational rehabilitation expert and Kirkendall did not conduct a vocational evaluation of Plaintiff Miller. *See* **Ex. 1,** at 1-10. This much is clear from Marangi's own report, which cites to the vocational rehabilitation opinions of Bennett, but like Bennett, fails to cite a single vocational evaluation opinion of Kirkendall. *Id. see also* **Ex. 7,** at Marangi – 001-018. In fact, after this cursory mention of "the Vocational Evaluation by plaintiff's expert," Bennett's report does not mention "plaintiff's expert" anywhere else in the report, nor any specific vocational opinions made by Kirkendall. *See* **Ex. 9,** at Bennet – 001-027. Again, proper rebuttal expert testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *R&O Constr. Co.*, 2011 WL2923703, *2. Rebuttal expert reports are not the proper place for presenting new arguments or "to contradict an expected

and anticipated portion of the other party's case-in-chief." *Nunez*, 2014 WL 979933, *1. The Bennett report clearly is not intended to rebut evidence on the subject matter of Plaintiff's economist expert, who analyzed only the value of Plaintiff's lost earnings since her termination offset by her earnings in post-termination employment. *See* **Ex. 9,** at Bennet – 001-027 *compare to* **Ex. 1,** at 1-10. Rather, Bennett's report is an evaluation of Plaintiff Miller's legal duty to mitigate damages and her diligence in seeking equivalent post termination employment. *Id.*

Second, the documents reviewed by Bennett unquestionably relate to new arguments regarding defenses that Defendants intend to present in their case in chief, which Kirkendall did not opine on. For example, Bennett reviewed Plaintiff Miller's grievance forms, "Correspondence re Interactive Process," "Appeal of Unemployment Decision," "DETR Unemployment Case Decision," "DETR Unemployment Proceedings Transcript," "Doctors' Medical Notes & Correspondence re medical notes," "Correspondence re Accommodation," "DETR Document[s]," "Local 1107 Statement in Response to Unemployment Office Request," "DETR Decision," "EEOC Discrimination Charge," "Documents from Together We Rise," Plaintiff's "Resume," "Doctors' Medical Notes & Correspondence re medical notes 2," and "9.13.19 Plaintiff Debbie Miller's Responses to the SEIU International Defendants' First Requests for Interrogatories." *See* **Ex. 6,** at Bennett – 029. None of these documents were reviewed by Kirkindall because none of these documents were relevant to determining the amount of wage and benefit damages Plaintiff incurred from the date of her termination to the date of her report. *See* **Ex. 1,** at 1-2. Rather, these documents relate to facts and circumstances giving rise to Plaintiff Miller's ADA claims against Defendants, a subject Kirkendall gave no opinions regarding. *Id.* at 1-10.

Third, the analysis conducted by Bennett is clearly unrelated to any of Plaintiff's expert opinions. Bennett opens his vocational analysis considering a litany of factual issues related to Defendants' case in chief that Plaintiff's expert, Kirkendall, did not consider, like Plaintiff's physician notes, letters between Plaintiff and Defendants, grievances filed by Plaintiff's union, letters from Local 1107 to the Nevada Department of Employment and Rehabilitation ("DETR"), Plaintiff's "Mitigation Effort," job searches and contacts by Plaintiff, "intensity of job search," "Emphasis of job search" et.. *Id.* at Bennett – 003-4. Indeed, Bennett's own report explains that he was retained to perform analysis on three issues: (1) "Vocational Evaluation to determine post-termination employability and earnings capacity;" (2) "Rebuttal of the Vocational Evaluation by plaintiff's expert;" and (3) "Analysis of plaintiff's duty to mitigate damages." *Id.* Plaintiff's expert,

Kirkendall, made no opinions regarding Plaintiff Miller's post-termination employability or earnings capacity. *See* **Ex. 1,** at 1-10. In fact, the terms "employability" and "earnings capacity" do not even appear in Kirkendall's report. *Id.* Kirkendall did not render a vocational evaluation. *Id.* Finally, Kirkendall makes no opinions regarding Plaintiff Miller's duty to mitigate damages. *Id.* Kirkendall's only analysis related to mitigation is of Plaintiff Miller's actual "mitigating earnings and benefits," not whether Plaintiff Miller met any legal duty to mitigate. *Id.* By page four (4) of Bennett's own report he makes clear that he is not giving rebuttal expert opinion to the opinions of Plaintiff's economist expert. *See* **Ex. 9,** at Bennett – 004.

Bennett goes on to list Plaintiff's employment qualifications under the heading "Vital Statistics," outlining Plaintiff Miller's education and licenses, the medical opinions of one of her treating physicians, union grievances, Defendants' defenses to Plaintiff's termination status, unemployment benefits, EEOC charge, and vocational history and job duties at Local 1107, Plaintiff's medical issues, and post-termination efforts to seek employment. *Id.* at Bennett – 005- 12. Bennett uses this information to come to his ultimate conclusion that Plaintiff Miller's "mitigation earnings are less than what could be expected if she had made a reasonable and diligent job search effort utilizing her substantial skill base as a Labor Relations Specialist." *Id.* at Bennett – 013. This conclusion from Bennett is important because it forms the basis of Bennett's entire analysis, and Plaintiff's economist expert made no opinions whether Plaintiff Miller's mitigation earnings were less than what could be expected if she had made a reasonable and diligent job search effort utilizing her substantial skill base as a Labor Relations Specialist. *Id. compare to* **Ex. 1,** at 1-10. Rather, Plaintiff's expert simply offset the total amount of earnings and benefits Plaintiff would have earned if she had not been terminated by the actual value of her mitigation earnings. *Id.* Indeed, if Bennett's report were a proper rebuttal expert report it would be expected that Bennett would first cite to Plaintiff's expert's opinions on this subject matter. *Id.* Instead, Bennett makes entirely novel opinions and assertions unrelated to Plaintiff's expert's opinions.

Bennett goes on to conduct an "Analysis of Duty to Mitigate Damages." *Id.* at Bennett – 013-14. Plaintiff's expert rendered no opinions or analysis on Plaintiff Miller's duty to mitigate damages. *Id. compare to* **Ex. 1,** at 1-10. Bennett's analysis of Plaintiff Miller's duty to mitigate relies entirely on Plaintiff Miller's post-termination job search. *Id.* As part of Bennett's analysis of Plaintiff Miller's duty to mitigate, Bennett reviews the forty-two (42) jobs Plaintiff contacted and applied for post-termination. *Id.* Bennett noted Plaintiff Miller's "Contemporaneous Job

Search Records" that evidenced her application for forty (40) different jobs after her termination including "3 labor relations positions, 30 HR positions, and 7 other/clerical type positions," utilizing ZipRecruiter.com and Indeed.com. *Id.* at Bennett – 014. The cornerstone of Bennett's vocational rehabilitation analysis was that Plaintiff Miller "undertook limited effort to seek work similar to the job she held at time of discharge, applying to only; 3 jobs related to her skill base learned over the course and scope of her 9 years of employment with SEIU, notwithstanding the; large number of unions in the Las Vegas area to which she could have applied." *Id.* at Bennett – 017. Plaintiff's expert, Kirkendall, did not analyze any of the jobs Plaintiff Miller had applied for, nor did Kirkendall give any opinions regarding whether those jobs were "labor relations positions" or within her skill base. *Id. compare to* **Ex. 1,** at 1-10.

Bennett goes on to discuss the types of contacts that Plaintiff Miller made during her job search. *Id.* at Bennett – 017-20. Bennett noted that Plaintiff Miller did not utilize newpaper ads, personal contacts, private employment agencies, state and federal employment agencies, professional societies and journals, or outplacement programs by her prior employer. *Id.* Plaintiff's expert reviewed no information regarding how Plaintiff searched for jobs, and rendered no expert opinions regarding what the effective methods for obtaining employment are when conducting a job search. *Id. compare to* **Ex. 1,** at 1-10.

Bennett goes on analyze the intensity of Plaintiff's job search over a near two year period. *Id.* at Bennett – 020. Bennett then renders the opinion that Plaintiff Miller's job search was not sufficiently intense because between November 1, 2017 (two months before she was terminated), and September 13, 2019 (eighteen months after her employment with Davita) she made only forty-two (42) job contacts, or 22.95 contact per year. *Id.* Bennett opines that Plaintiff's job search efforts during this period were not sufficiently intense and would "expected to obtain a single interview" despite acknowledging on the very same page, in the very next paragraph, that Plaintiff Miller had secured employment just three months after her termination, and eighteen months prior the end date used by Bennett in his analysis. *Id.* Plaintiff's expert, Kirkendall, did not review the number of job searches Plaintiff Miller conducted, and gave no opinions regarding what period should be used in analyzing the number of searches for determining the intensity of Plaintiff Miller's job search. *Id. compare to* **Ex. 1,** at 1-10.

Bennett next analyzes Plaintiff Miller's vocational potential, occupational receptivity and earnings capacity, all subject matter Plaintiff's expert did not consider, analyze, opine on, nor have

expertise to give expert opinions regarding. *Id.* Bennett asserts that "plaintiff has same or similar vocational potential post-termination as that which she had pre-termination, if she can overcome the difficulties with her metabolic disorder and/or orthopedic issues which had caused a period of disability from a pre-incident standpoint." *Id.* at Bennett – 21. This conclusion is problematic both because Plaintiff's expert renders no opinions on this subject, and the fact that Bennett is not qualified to give medical expert testimony regarding whether diabetes and diabetic neuropathy are temporary conditions. *Id.* Further, while couched as opinions on vocational potential and earnings capacity, Bennett also renders opinions regarding Plaintiff's requests for reasonable accommodations asserting that "nothing reviewed by this counselor indicates that plaintiff has requested accommodations post-termination same or similar to those that she requested from a pre-termination standpoint," and that "plaintiff's .... accommodations as requested from a ..,.. pre-termination standpoint were within her ability to ..,.. self-accommodate, i.e., to ..,.. eat when necessary and ..,.. exercise on her own in an effort to control blood sugar levels; and the ..,.. same is true from a .,... post-termination standpoint." *Id.* Plaintiff's expert rendered no opinions regarding Plaintiff's requests for reasonable accommodations, nor any opinions about the ability of a diabetic to "self-accommodate." *Id.*

Finally, Bennett concludes his report making numerous sweeping expert opinions and conclusions regarding four broad subjects: (1) "plaintiff's mitigation effort;" (2) "accommodations;" (3) "post-termination earnings capacity;" and (4) "job search timeframe." *Id.* at Bennett – 025-26. Conspicuously absent from these final conclusions is any reference to what opinions of Plaintiff's economist expert Bennett was supposedly rebutting. *Id. compare to* **Ex. 1,** at 1-10.

A rebuttal expert may only testify after the opposing party's initial expert witness testifies. *Laflamme*, 2010 WL 3522378, *2. Rebuttal experts are limited to the scope and subject matter of the initial expert they are proffered to rebut. *Nunez*, 2014 WL 979933, *1; *see also R&O Constr. Co.*, 2011 WL 2923703 at *2. Indeed, "Rebuttal experts are not allowed to put forth their own theories; instead, 'they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Downs v. River City Grp., LLC*, No. 3:11-cv-00885-LRH-WGC, 2014 U.S. Dist. LEXIS 26056, at *13 (D. Nev. Feb. 28, 2014) *quoting R&O Constr. Co.*, 2011 WL 2923703 at *2. Here, Bennett's opinions fail to rebut any of Plaintiff's economist expert's analysis or opinions, and is, therefore, not a proper rebuttal expert. Rather, Bennett's conclusions regarding

mitigation efforts, accommodations, post-termination earnings capacity, and reasonable job searches are new matters related to Defendants' case in chief, making them initial expert opinions admissible only if they were timely disclosed before the initial expert deadline of August 12, 2019. *See* Fed. R. Civ. P. 26; Fed. R. Civ. P. 37. Untimely disclosures cannot be relied on by the disclosing party and must be excluded. *Id.*

### 4. Defendants' Untimely Disclosure Of Their Vocational Expert Is Not Substantially Justified Or Harmless, And Was Done In Bad Faith.

When a party's expert is found to have been improperly disclosed as a rebuttal expert and found to be an untimely initial expert disclosure, this District Court has reviewed the request to strike or exclude the expert as a sanction under Rule 37 of the Federal Rules of Civil Procedure. *Laflamme*, 2010 WL 3522378, *2; *Nunez*, 2014 WL 979933, *1; *R&O Constr. Co.*, 2011 WL 2923703 at *2; *Downs*, No. 3:11-cv-00885-LRH-WGC, 2014 U.S. Dist. LEXIS 26056, at *13. FRCP 37(c)(1), in pertinent part, states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). "The district court has wide latitude in using its discretion to issue sanctions under Fed. R. Civ. P. 37(c)(1)." *Amos v. Makita U.S.A., Inc.*, No. 2:09-cv-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *6-8 (D. Nev. Jan. 6, 2011) *citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The disclosing party has the burden "to show that the delay was substantially justified or harmless." *Id.*

"[F]actors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Id.* citing *Manneh v. Inverness Medical Innovations, Inc.*, 2010 U.S. Dist. LEXIS 81876, 2010 WL 3212129 at *2 (S.D. Cal. 2010) (quoting *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 2010 WL 1452527 at *6 (9th Cir. 2010). Inadvertent mistakes and unintentional oversights are not substantial  [*8] justifications for delay. *R & R Sails Inc. v. Insurance Co. Of State of Penn.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008); *Downs*, No. 3:11-cv-00885-LRH-WGC, 2014 U.S. Dist. LEXIS 26056, at *13; *Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2014 U.S. Dist. LEXIS 110624, at *11 (D. Nev. Aug. 8, 2014).

Courts in this District have found a failure to timely disclose an initial expert to be harmless when the rebuttal expert has given new opinions in the same field as Plaintiff's initial experts, permitting Plaintiff's initial expert to supplement their reports to rebut the new conclusion. *Calvert*, No. 2:13-cv-00464-APG-NJK, 2014 U.S. Dist. LEXIS 110624, at *11. Courts in this District have found a failure to timely disclose an initial expert to be harmless when the non-disclosing party still needed to depose one of the disclosing party's other experts, no pretrial order had yet been filed, and no trial date set. *Downs*, No. 3:11-cv-00885-LRH-WGC, 2014 U.S. Dist. LEXIS 26056, at *20. Courts in this district have found that "[a] party is not harmed where, even though an expert disclosure fails to satisfy Fed. R. Civ. P. 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert." *Amos*, No. 2:09-cv-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *9; *see also Ricks v. BMEzine.com, L.L.C.*, 727 F.Supp.2d 936, 2010 WL 2985795 (D. Nev. 2010).

However, Courts in this District have made clear that a party's "misunderstanding of the scheduling order and Plaintiff's awareness of that misunderstanding is not a substantial justification for the late disclosure." *Id. citing R & R. Sails*, 251 F.R.D. at 526. "Neither is the fact that Plaintiff did not provide [the other party] with its expert files." *Id.* Further, when the expert's opinions could be rendered within the discovery deadline" courts have found the disclosing party to have "no viable excuse, its late disclosure was not substantially justified." *Id.* at 8-9. Further, when the disclosing party has been "conspicuously stubborn, rebellious, or exhibited a pattern of deception and discovery abuse" the sanction of exclusion is warranted. *Id.* at *13. Harm is also found when trial would be delayed and costs of litigation multiplied by the failure to disclose. *Id.*

Here, Defendants' failure to timely disclose the vocational rehabilitation expert is not substantially justified or harmless, and Defendants' intentional disclosure of this expert as a rebuttal expert knowing that Bennett gives no actual rebuttal expert opinions was done in bad faith, and part of their pattern of conspicuously stubborn, rebellious, and deceptive discovery tactics and abuses, and flagrant and repeated disregard for this Court's deadlines. *Id.* First, it should be noted that Defendants' counsel made knowing misrepresentations of fact to Plaintiffs' counsel and the Court when seeking the extension of the rebuttal expert deadline. Again, Plaintiffs' counsel agreed to stipulate to an extension of the initial expert deadline to allow Defendants to timely disclose initial experts. *See* **Ex. 5**, at 1-6. However, to avoid risking the Court declining the request for lack of excusable neglect (*see* LR IA 6-1), which would in effect affirmatively close the door on the

production of an initial expert report, Defendants decided to engage in knowing an willful deception and bad faith with Plaintiffs' counsel and the Court by seeking to extend only the rebuttal expert deadline, despite having retained their vocational rehabilitation expert to give initial expert opinions before the deadline expired. *Id.* Indeed, Defendants' counsel assured Plaintiffs' counsel that they were seeking "extension of the rebuttal expert disclosure deadline only," and that their rebuttal witnesses would give testimony only on "the issues of damages and mitigation in the Kirkendall report." *Id.* at 6.

However, Defendants' expert report makes clear that Bennett was forwarded Plaintiff Miller's employment file and discussed his retention as a vocational rehabilitation expert witness on August 6, 2019, six (6) days before the initial expert deadline expired. *See* **Ex. 9,** at Bennett – 004. Defendants knew that they intended to use Bennett as a vocational expert before the initial expert deadline expired and Defendants failed to request Plaintiffs' counsel stipulate to extend the initial expert deadline before the deadline expired. *See* **Ex. 5,** at 1. Indeed, Plaintiffs' counsel had informed Defendants' counsel that he intended to disclose an expert, and when Defendants' counsel expressed surprise, Plaintiffs' counsel expressly asked if Defendants' needed an extension of the initial expert deadline and was "clearly willing to so stipulate." *Id.* Despite Defendants knowing they were going to use Bennett as a vocational rehabilitation expert on August 6, 2019, having already submitted the file to him for review, Defendants allowed the deadline to expire, seeking the stipulation to extend on August 15, 2019, three days after the deadline expired. *Id.* Further, despite knowing they intended to use Bennett as a vocational rehabilitation expert on August 6, 2019, Defendants disclosed an initial expert disclosure "pleading" that failed to identify him as an expert, nor their intent to disclose a vocational rehabilitation expert. *See* **Ex. 3,** at 1-2. Despite knowing they intended to use a vocational rehabilitation expert for Debbie Miller's claims on August 6, 2019, and knowing the identity of that expert on that date, Defendants' counsel intentionally withheld that information from their initial expert disclosure pleading to conceal it from Plaintiffs' counsel.

Despite Defendants lack of diligence, Plaintiffs' counsel agreed to "extend the [initial] expert disclosure deadline to September 19, 2019, and to have a corresponding extension of the rebuttal expert deadline to one month after that, October 19, 2019." *Id.* Bennett's report makes clear that he was formally retained on September 4, 2019, fifteen days before the September 19th deadline stipulated deadline. *See* **Ex. 9,** at Bennett – 004. Defense counsel's knowledge and intent

to deceive this Court and Plaintiffs' counsel is proven by their sending Miller's file to Bennett six days before the deadline expired, talking to him over the phone about providing vocational rehabilitation expert testimony, and subsequently demanding that Plaintiffs' counsel agree to extend the initial expert deadline on August 15, 2019, after the deadline expired. Defense counsel's intent to deceive Plaintiffs' counsel and this Court is further supported by the initial statement in Defendants' proposed stipulation that "Defendant SEIU served its expert disclosure," when Defendant SEIU had not disclosed an expert. *See* Defs' Initial Prop. Stipulation to Ext. Rebuttal Expert Deadline, attached as **Exhibit 10,** at 2:14-15. The misrepresentation prompted Plaintiffs' counsel to object, noting that he had not received "an expert disclosure from SEIU." *see* **Ex. 9,** at 5. Defendants corrected the misrepresentation they intended to make to this Court. *Id.* at 5-6.

After failing to promptly draft the stipulation to extend on August 15, 2019, waiting five days to provide Plaintiffs' counsel with the stipulation, Defendants decided deceive both Plaintiffs' counsel and the Court by seeking to extend only the rebuttal expert deadline that had not yet expired with knowledge and intent to disclose the initial expert report of Bennett, whom they retained on August 6, 2019. *See* **Ex. 6,** at 4-5; **Ex. 9,** at Bennett – 004. That is, to avoid the now high risk that their absurdly late request to extend the initial expert deadline would be denied for their lack of diligence and inability to demonstrate excusable neglect, which would affirmatively deny them the ability to disclose an initial expert, Defendants sought to fraudulently induce Plaintiffs' counsel to agree to extend only the rebuttal expert deadline despite knowing and intending to disclose the initial vocational rehabilitation expert anyway, having retained Bennett within the deadline and failing to disclose him as a witness on August 12, 2019. *See* LR IA 6-1;.*see also* **Ex. 3,** at 1-2; **Ex. 9,** at Bennett – 004. Defendants used this strategy to circumvent the excusable neglect standard in this Court's own local rules in hopes of succeeding with Defendants forthcoming arguments in response to this Motion in Limine that the late disclosure was either substantially justified or harmless. *Amos*, No. 2:09-cv-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *9.

This is because the excusable neglect standard requires an attorney to establish some excuse, such as their own negligence, to justify extending the deadline. *Victor v. Walmart, Inc.*, No. 2:20-cv-01591-JCM-NJK, 2021 U.S. Dist. LEXIS 163908, at *10 (D. Nev. Apr. 8, 2021). Here, Defendants had no legitimate excuse, such as their own negligence, to establish excusable neglect. Defendants contacted the vocational rehabilitation expert within the deadline and provided

him documents. *See* **Ex. 9,** at Bennett – 004. Defendants discussed disclosure of initial experts with Plaintiffs' counsel before expiration of the deadline. *See* **Ex. 5,** at 1. Plaintiffs' counsel expressed willingness to stipulate to extending the deadline before the deadline expired. *Id.* Defendants actually submitted an initial expert disclosure pleading on the August 12, 2019 deadline that failed to identify the vocational expert they had already retained, nor identify the subject matter of the expert testimony. *See* **Ex. 3,** at 1-2. Plaintiffs' counsel requested Defendants' send over the stipulation promptly to avoid the likely hood of it being denied for lack of excusable neglect. *See* **Ex. 5,** at 1. Defendants waited another five (5) days to provide Plaintiffs' counsel the stipulation, and then slipped in the misrepresentation about their initial expert disclosure, which Plaintiffs' counsel objected to. *Id.* at 4-5.

Defendants, knowing that any misrepresentation regarding alleged excusable neglect to the Court might subject them to future sanctions, chose to defraud Plaintiffs' counsel and the Court about their intentions to disclose the initial expert by seeking to extend only the rebuttal expert deadline with intent to disclose the initial expert. *Amos*, No. 2:09-cv-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *9. However, Plaintiffs' counsel made sure to confirm precisely what Defendants were seeking when they produced the stipulation for the express purpose of avoiding this very situation. Plaintiffs' counsel asked Defense counsel to admit that they had not disclosed any expert or report, and was only seeking to extend the rebuttal expert deadline to disclose a rebuttal expert. *Id.* at 6.

It should be noted that Plaintiffs' counsel was sure to clarify the issue to avoid the need to have to file this motion in limine and to ensure that Plaintiffs' counsel would have opportunity to disclose a rebuttal expert and report within the applicable deadline and depose any initial expert disclosed by Defendants. *Id.* Defense counsel made these assurances with full knowledge and intent to disclose an initial vocational rehabilitation expert that would opine on matters unrelated to the issues of damages and mitigating wages in the Kirkendall report, while also failing to disclose the identity and subject matter of the expert's testimony in the August 12, 2019 disclosure pleading, constituting bad faith and intent to deceive. Further, this late disclosure was the first of many instances of Defendants' stubborn refusal to cooperate in discovery, rebellious acts in defiance of the Court's ordered deadlines, and pattern of deception and discovery abuse that justifies striking this expert. *See* Decl. Counsel, at 1-9. Indeed, Defendants have repeatedly ignored and failed to meet deadlines set by the Court in this case including: (1) the initial expert deadline;

(2) every single discovery response deadline causing discovery to be extended multiple times; (3) the express discovery response deadline set by the Court on November 12, 2019 (ECF No. 84); (4) the deadline to file both their answer and amended answer. *See* ECF No. 224, at 7:3-9.

Finally, Plaintiffs have not been given the opportunity to depose Defendants' vocational rehabilitation expert, Bennett. Because of Defendants repeated failures to adhere to Court's deadlines discovery needed to be extended multiple times, the last being on January 17, 2020, extending discovery to April 9, 2020. *See* ECF No. 114. On March 11, 2020, however, the District Court dismissed Plaintiff Miller's discrimination claims, leaving only her breach of contract claim. *See* ECF No. 131. Bennett's vocational rehabilitation opinions were and are only relevant to Miller's discrimination claims, not the pure Section 301 breach of contract claims. This ruling forced Plaintiffs' counsel to direct attention to Reconsideration of the order, filed on March 31, 2020. *See* ECF No. 134. The District Court granted reconsideration reinstating the discrimination claims, but did not reopen discovery. *See* ECF No. 152. As such, Plaintiff Miller was deprived a month of discovery into Miller's claims, and was not able to depose the vocational rehabilitation expert on the opinions relating to the claims this Court dismissed on March 11, 2020. *Id.* To allow Defendants' vocational rehabilitation expert to testify would require reopening discovery and delay trial in this matter. As such, the late disclosure is not justified or harmless.

It must be noted that the last time the District Court endeavored to excuse Defendants' disregard for the deadlines in the scheduling order it did so by denying Plaintiffs' Motion for Summary Judgment for failure to file a responsive pleading (ECF No. 171) and Motion to Strike the untimely answer (ECF No. 185) asserting that "Defendant Local 1107 filed its Answer to the Amended Complaint on July 23, 2020, so Plaintiff could have filed a motion to strike within 21 days but failed to do so. *Plaintiffs waited over one year later until August 19, 2021 to file the motion to strike.*" *See* ECF No. 224, at 7:3-9 (emphasis added).

The Court's order is both factually incorrect, and functionally impossible, as the Court's Order is dated March 31, 2021, four and half months prior to the alleged August 19, 2021 date the Court asserted Plaintiffs' counsel delayed until to file their motion to strike. *Id.* Unless the laws of physics have changed for the purposes of this case, time flows in one direction. Quite obviously, because Plaintiffs' counsel is not a Time Lord and has no magic phone booth to use to travel into the future, Plaintiffs' counsel did not wait to file the Motion to Strike over one year after Local 1107 filed its amended answer "until August 19, 2021." *Id.* Rather, Plaintiffs' counsel filed a

Motion for Summary Judgment because of Defendants' failure to file the amended answer to the First Amended Complaint within the deadline for dispositive motions, July 22, 2020, at which time no amended answer was filed. *See* ECF No. 171. Plaintiffs' counsel expressly noted in that motion that neither Defendant sought a stipulation to extend nor moved for leave to extend the deadline to file their answers. *Id.* at 3:12-14. Plaintiffs' counsel also raised FRCP 12 regarding striking an answer in the Motion for Summary Judgment. *Id.* at 2:21-3:14. Plaintiffs' also noted that under the Local Rules of this Court, the Federal Rules of Civil Procedure, and the precedent of this District Court, Defendants would first need to request to extend the deadline and leave to file the untimely answer establishing excusable neglect before the amended answer could be filed. *Id.* at 4:3-6:23.

One day after Plaintiffs moved for summary judgment for failure to timely file the amended answer, after the dispositive motion deadline expired, Local 1107 filed the amended answer. *See* ECF No. 174. Local 1107 failed to move to extend the deadline and for leave to file their answer until August 5, 2020, making the late amended answer a fugitive document filed past the deadline without a motion to extend or leave of the Court, and without establishing excusable neglect in violation of both the Local Rules of practice of this Court, and the Federal Rules of Civil Procedure. *See* ECF No. 181; *see also* LR IA 6-1; *see also* Fed. R. Civ. P. 6(b). Plaintiffs opposed the extension, and moved to strike the answer on August 19, 2020, less than twenty-one days from the date of the request to extend the deadline, making the Motion to Strike timely, and redundant considering Plaintiffs' Motion for Summary Judgment made the same request. *See* ECF No. 185; *see also* ECF No. 171. Rather than hold defense counsel accountable for their repeated failure to meet the deadlines imposed by the Court in this case, this Court denied Plaintiffs' Motions asserting that Plaintiffs' counsel's filing of the Motions was untimely because "Plaintiff could have filed a motion to strike within 21 days but failed to do so. Plaintiffs waited over one year later until August 19, 2021 to file the motion to strike." *See* ECF No. 224, at 7:3-9.

This Court has repeatedly excused Defendants' consistent failures to meet deadlines prescribed by the rules and the Court, and stubborn refusal to cooperate in discovery which must end now before the case is further tainted by this unequal treatment of Plaintiffs and Defendants in the Court's application of the rules. Defendants failed to timely disclose the vocational rehabilitation expert before the deadline despite having already retained the expert. Defendants' actions were in bad faith, and the expert must be excluded. Defendants' rebuttal expert, Marangi, must be limited to opinions within the scope of rebuttal that do not rely on Bennett's report.

**III.**     **CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that the Court grant their Motion in Limine to Exclude Defendants' Untimely Vocational Rehabilitation Expert Testimony and Limit Expert Testimony to Rebuttal.

Dated the 15th day of September, 2021.

/s/ Michael J. Mcavoyamaya

_____
MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
1100 E. Bridger Ave.
Las Vegas, Nevada 89101
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of September, 2021, the undersigned served the foregoing **PLAINTIFF'S MOTION IN LIMINE EXCLUDE DEFENDANTS' UNTIMELY VOCATIONAL REHABILITATION EXPERT TESTIMONY AND LIMIT EXPERT TESTIMONY TO REBUTTAL** on all counsel herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Court pursuant to local order.

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com,
kba@cjmlv.com
Attorneys for Defendants

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHER (PRO HAC VICE)
JONATHAN COHEN (10551)
510 South Marengo Avenue
Pasadena, CA 91101-3115
Tel: (626) 796-7555
Facsimile: (626) 577-0214
Email: grothner@rsglabor.com,
jcohen@rsglabor.com
Attorneys for Defendants

Dated this 15th day of September, 2021.

/s/ Michael J. Mcavoyamaya

_____

MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
1100 E. Bridger
Las Vegas, NV, 89101
Telephone: (702) 299-5083

mike@mrlawlv.com
*Attorney for Plaintiffs*