UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAVIER CABRERA *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION *et al.*,<br><br>　　　　Defendants. | Case No. 2:18-cv-00304-RFB-BNW<br><br>**ORDER**<br><br>Defendants' Motion for Reconsideration and Clarification of Summary Judgment Order (ECF No. 225)<br><br>Defendant's Motion for Reconsideration re Order on Objection/Appeal of Magistrate Judge Order (ECF No. 227)<br><br>Plaintiff's Motion for Reconsideration (ECF No. 232)<br><br>Proposed Joint Pretrial Order (ECF No. 240)<br><br>Stipulation (ECF No. 249) |

**I.      INTRODUCTION**

Before the Court are five motions: (1) Defendant Service Employees International Union's ("SEIU") Motion for Reconsideration and Clarification of the Court's Summary Judgment Order, ECF No. 225; (2) Defendant Clark County Public Employees Association's ("Local 1107") Motion for Reconsideration of the Order on the Objection/Appeal of the Magistrate Judge Order/Ruling, ECF No. 227; (3) Plaintiff Miller's Motion for Reconsideration, ECF No. 232; (4) Proposed Joint Pretrial Order, ECF No. 240; and (5) Stipulation Regarding Availability of Parties for Trial, ECF No. 249.

For the reasons stated below, Defendant SEIU's Motion for Reconsideration is GRANTED in part and DENIED in part; Defendant Local 1107's Motion for Reconsideration is DENIED, and

1

Plaintiff's Motion for Reconsideration is DENIED. The parties' Proposed Joint Pretrial Order and Stipulation Regarding Availability of Parties for Trial are further DENIED as moot.

## II.     PROCEDURAL BACKGROUND

The Court incorporates by reference the procedural history stated in its March 31, 2021 Order, ECF No. 224, and adds the following:

On March 12, 2021, the Court held oral argument on Plaintiffs' objection to Judge Albregts' order [137], Plaintiffs' Motion for Reconsideration of Sanctions [155], Defendants' Motion for Summary Judgment [167, 168], Plaintiffs' Motion for Summary Judgment [171, 172], and Plaintiffs' Motion to Strike Answer to Amended Complaint [185]. On March 31, 2021, the Court issued an Order denying Plaintiffs' Objection/Appeal of Judge Albregts' Order, denying Plaintiffs' Motion for Reconsideration, denying Plaintiffs' Motions for Summary Judgment, and denying Plaintiffs' Motion to Strike. ECF No. 224. The Order further denied in part and granted in part Defendants' Motions for Summary Judgment; the Order granted Defendants' Motion for Summary Judgment with respect to Plaintiff Miller's Section 301 claim. Id. The Court further ordered the parties to submit a joint pretrial order with trial dates in July or August 2021. Id.

On April 7, 2021, Defendant SEIU filed a Motion for Reconsideration and Clarification of the Court's March 31 Summary Judgment Order. ECF No. 225. Plaintiffs responded on April 21, 2021, ECF No. 230, and Defendant replied on April 28, 2021, ECF No. 233. On April 7, 2021, Defendant Local 1107 filed a Motion for Joinder to Defendant SEIU's Motion for Reconsideration. ECF No. 227. Plaintiffs responded on April 21, 2021, ECF No. 231, and Defendants replied on April 28, 2021, ECF No. 234. On April 21, 2021, Plaintiffs filed a Motion for Reconsideration of the Court's March 31 Order. ECF No. 232. Defendants Blue, Local 1107, and Manteca responded on April 28, 2021, ECF No. 235, and Plaintiffs replied on May 4, 2021, ECF No. 236. Defendant SEIU responded on May 5, 2021, ECF No. 237, and Plaintiffs replied on May 12, 2021. ECF No. 239. On May 14, 2021, Defendant Local 1107 filed a proposed Joint Pretrial Order. ECF No. 240.

On September 22, 2021, Defendant SEIU filed a stipulation regarding the availability of the parties for trial. ECF No. 249.

On November 29 2021, the Court held an omnibus hearing on the parties' motions for reconsideration. ECF No. 254. The Court took the parties' arguments under submission and stated that it would issue a written ruling. This order follows.

### III.    LEGAL STANDARD

"As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of L.A. v. Santa Monica BayKeeper, 254 F.3d 882, 886 (9th Cir. 2001) (quoting Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981).

A district court may grant a motion for reconsideration only where: (1) it is presented with newly discovered evidence; (2) it has committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2004); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona, 229 F.3d at 890; Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citation and quotation marks omitted).  "A party seeking reconsideration . . . must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity." L.R. 59-1.

### IV.    DISCUSSION

The Court incorporates by reference the findings of disputed and undisputed facts stated in its March 31, 2021 omnibus order. For the reasons stated below, Defendant SEIU's Motion for

3

Reconsideration is granted in part and denied in part; Defendant Local 1107's Motion for Reconsideration is denied, and Plaintiff's Motion for Reconsideration is denied.

### a. Defendant SEIU's Motion for Reconsideration and Clarification (ECF No. 225)

Defendant SEIU, joined by Defendant Local 1107, seeks clarification and reconsideration of the Court's March 31 omnibus order. Defendants ask this Court to clarify and reconsider (1) whether Plaintiff Cabrera and Plaintiff Nevada Service Employees Union Staff Union's ("NSEUSU") § 301 claims should be dismissed for failure to exhaust contractual remedies; (2) whether Plaintiff Miller's claims for retaliation and hostile work environment under the Americans with Disabilities Act ("ADA") and Nevada state law should be dismissed for failure to show evidence of retaliation or harassment due to disability; and (3) whether the Court erred in its alter-ego analysis, such that all claims against SEIU should be dismissed. The Court addresses each issue in turn.

#### i. Failure to Exhaust Contractual Remedies

Defendants first argue that the Court did not rule on its argument, presented in Defendant SEIU's Motion for Summary Judgment, that Cabrera failed to exhaust the mandatory contractual remedy of arbitration under the Collective Bargaining Agreement ("CBA") between Local 1107 and the NSEUSU. Defendants contend that because the undisputed evidence in the record reveals that Cabrera failed to arbitrate, this Court should dismiss Cabrera's § 301 claim that his termination violated the CBA (Claim 7 of the First Amended Complaint).

Defendants argue it is undisputed that (1) the NSEUSU filed a grievance alleging that Cabrera's termination violated the CBA; (2) Article 11 of the CBA requires grievances relating to discipline to culminate in the third step of arbitration; and (3) despite Article 11's clear language, the NSEUSU did not advance Cabrera's claim to arbitration. Defendants argue that Local 1107 did not repudiate arbitration, thereby excusing Cabrera from exhausting his contractual remedies, as Cabrera contends. To the contrary, Defendants argue, the evidence in the record clearly shows that it was Cabrera who refused to participate fully in the grievance and arbitration procedures.

4

Defendants add that like Cabrera, the NSEUSU also failed to exhaust contractual remedies on its claimed CBA breaches. Thus, Claim 8 of the First Amended Complaint should also be dismissed.

Plaintiffs counter that the Court should not reconsider its March 31 Order, and that Cabrera's and the NSEUSU's § 301 claims should survive summary judgment. Cabrera argues that Defendants repudiated the grievance procedure, and thus exhaustion was not required and Cabrera was permitted to proceed with his suit in federal court. Cabrera argues that Defendants repudiated arbitration by unilaterally modifying the grievance procedure when it installed trustees as representatives of the executive board at the Step 2 meeting and rejected Plaintiff's request that the Step 2 meeting be held before a panel of former Local 1107 officers. Cabrera further contends that Defendant Local 1107 repudiated when it informed Cabrera that his grievance "does not articulate any violations of clear contract [and] is not cognizable under the CBA," and that "therefore, L1107 will not process it and will not consent to arbitrate it."

NSEUSU also argues that its § 301 claim should survive summary judgment. NSEUSU argues it did not have to grieve Articles 8 or 22 of the CBA because those articles are expressly excluded from grievance and arbitration. NSEUSU also joins Cabrera's arguments that Defendants repudiated the grievance procedure.

The Court acknowledges that it did not previously rule on Defendants' exhaustion argument in the March 31 Order and that it is therefore appropriate for the Court to rule now. The Court finds that Plaintiffs failed to exhaust the mandatory contractual remedy of arbitration, and that Cabrera's and NSEUSU's § 301 claims are thus barred. Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, permits plaintiffs to sue employers in federal district court to enforce the terms of their CBA, so long as the employee has "first exhaust[ed] the grievance procedures established by the CBA." Sidhu v. Flecto Co., 279 F.3d 896, 898 (9th Cir. 2002). Plaintiffs may pursue a § 301 claim without exhausting the grievance procedures, however, if the employer first repudiated those procedures. Id. Courts will not find that repudiation occurred "simply because the employer refused to follow one or more of the substantive terms of the CBA" – rather, they will "excuse the requirement for exhaustion based on repudiation only if the employer repudiates *the*

*specific grievance procedures provided for in the CBA*," such as when an employer takes the position that the CBA does not govern the dispute at all. Id. (emphasis added).

Article 11 of the CBA between Plaintiffs and Local 1107 set forth a three-step grievance procedure, the last step of which provides as follows:

> If the Step 2 decision is deemed unacceptable, the Union, on behalf of an employee, may make a written request for arbitration within five (5) working days of the receipt of the Step 2 decision. Both parties shall jointly request the Federal Mediation and Conciliation Service (FMCS) and/or the American Arbitration Association (AAA) to furnish a panel of seven (7) arbitrators from which the arbitrator shall be selected. Failure on the part of the Union or employee to submit a request to either FMCS or AAA within 30 calendar days of the Step 2 hearing decision will result in the grievance being abandoned and the Step 2 hearing decision will prevail.

ECF No. 167-18 at 17.

Plaintiffs do not dispute that Article 11 of the CBA included this mandatory arbitration procedure. Rather, they contend that Local 1107 repudiated the grievance procedures of the CBA – including the mandatory arbitration procedure – when it failed to provide Cabrera with a Step 2 meeting before a panel of Local 1107 board members, as required by Article 11. By failing to comply with this requirement and refusing to negotiate the modification to Step 2, Defendants repudiated the grievance procedure writ large.

The Court does not find that any unilateral modification of the CBA at Step 2 constituted repudiation by Defendants. Article 11 of the CBA provided that appeals of the Step 1 decision could be filed "with the SEIU Local 1107 Executive Board *as representative of the Employer*," and that within ten days of the receipt of the request for appeal, "a panel of 3 or 5 members from the Executive Board of SEIU Local 1107" would hold a Step 2 meeting "with the affected employee and his/her Union representative." ECF No. 172-2 at 16 (emphasis added). At the time of Cabrera's Step 2 meeting, Local 1107 was under emergency trusteeship – an emergency trusteeship that was in fact requested by a majority of the executive board – and the executive board had been disbanded.[1] Thus, to the extent that Article 11 required the Step 2 meeting be held before a panel

---

[1] The Court notes that the validity of the trusteeship was previously upheld in a decision by District Judge Gordon, and affirmed by a panel of the Ninth Circuit. See Garcia v. SEIU, 2:17-cv-

of Local 1107 executive board members, this requirement clearly could not have been followed to the letter. Further, as NSEUSU's own representative at the Rule 30(b)(6) deposition admitted, upon the local union being placed in a trusteeship, the Trustees became empowered to carry out the duties of the president and board members through the duration of the trusteeship, so long as those duties were carried out in accordance with the CBA. See ECF No. 167-5 at 45:17-24. The Court finds that Defendants substantially complied with the CBA's Step 2 requirements by having Trustees stand in for the executive board members "as representative of the Employer" while the emergency trusteeship was in place. See Servs. Emples. Int'l Union v. Nat'l Union of Healthcare Workers, 711 F.3d 970, 976 (9th Cir. 2013) (stating that a trusteeship allows the parent union to replace the existing local union leadership). Had former executive board members been empaneled for Cabrera's Step 2 meeting, as Cabrera requested, that would plainly have been contrary to the terms of the CBA, as those members were no longer "representative[s] of the Employer," but were at that time unrelated third parties to the dispute.

The Court further finds that Cabrera and NSEUSU failed to advance Cabrera's termination grievance to arbitration. The record reveals that on January 29, 2018, after Plaintiff's grievance was denied at Step 2, Local 1107's counsel sent Cabrera a letter informing him that he could "make a written request for arbitration within 5 working days." ECF No. 167-26. While Cabrera submitted a request for arbitration that day, he did not subsequently take the necessary steps to move the arbitration process forward. Most notably, the staff union was required under Article 11 of the CBA to submit on Cabrera's behalf "a [panel] request to either FMCS or AAA within 30 calendar days of the Step 2 hearing decision" – failure to do so would result in abandonment of the grievance. ECF No. 172-2 at 16; see also ECF No. 167-26. The staff union belatedly submitted the panel request on March 2, 2018 – two days after the deadline for submission, which fell on February 28. See ECF No. 203-1, at 11. As a result, on March 5, 2018, Local 1107's counsel sent Plaintiffs' counsel a letter noting that the staff union failed to timely submit the required documentation to

---

01340-APG-NJK, 2019 U.S. Dist. LEXIS 154734, at *34 (D. Nev. Sept. 10, 2019), aff'd, Garcia v. SEIU, 856 Fed. Appx. 105, 107-108 (9th Cir. 2021).

7

advance the matter to arbitration, and that Cabrera's grievance pertaining to his termination was therefore deemed abandoned. See id. at 5-6. Id. In response, Plaintiffs' counsel first represented to defense counsel that the panel request form was in fact submitted within time, see id. at 8, but appeared to later concede that the panel request was untimely, stating in an email to defense counsel that a court would be unlikely "to look kindly on [Defendants] trying to get out of arbitration to slow this process because the request was two days late." See id. at 13.

Plaintiffs' counsel and Local 1107's counsel subsequently engaged in a series of communications regarding the abandonment of the grievance, which culminated in Local 1107 agreeing to waive NSEUSU's failure to comply with the required timelines and offering to arbitrate Cabrera's wrongful termination claim. See id. at 25-26. Plaintiffs' counsel refused the offer, stating that he "[did] not believe that the CBA contains a mandatory arbitration provision anyway," and that he "[would] not subject [his] client to arbitration through the FMCS to address the CBA violations." Id. at 24. Plaintiffs' counsel further expressed that Plaintiffs "prefer to litigate those violations in a tribunal that is 1) less expensive to [Plaintiffs] because they can [be] addressed together in a single action, and 2) the decision be subject to review by a higher court if we believe the decision is wrong." Id. Plaintiffs' counsel also cited concerns that an arbitrator would be "subject to no checks and balances by the FMCS regarding their engaging in conflicts of interest." Id.

In sum, the record evidence shows that Plaintiffs failed to comply with the required timelines to advance the wrongful termination claim to arbitration, and later refused Local 1107's offer to waive the timelines and arbitrate the grievance, apparently out of concerns regarding cost, lack of appellate review, and perceived arbitrator bias. The Court therefore finds as a matter of law that Cabrera failed to exhaust the grievance procedure under the CBA, and his § 301 claim for violations of the CBA may not proceed to trial. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 31, 322 (1986); Scott v. Harris, 550 U.S. 372, 380 (2007) ("When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

The Court also finds that NSEUSU's § 301 claims do not survive summary judgment. NSEUSU alleges that Defendants violated Article 24 of the CBA by "forcing NSEUSU employees to sign new policies that altered the terms and conditions of the CBA without engaging in collective bargaining with NSEUSU;" violated Article 8 of the CBA "by hiring a temporary employee to fill a vacant permanent front desk position covered by the CBA for the sole purpose of displacing a bargaining unit employee;" and violated Article 11 of the CBA "by attempting to unilaterally alter the grievance procedure after imposition of the trusteeship without bargaining" and by "refusing to follow the grievance procedure for the working conditions grievance filed by NSEUSU on February 7, 2017 . . . unilaterally determining the grievance did not qualify for the grievance procedure."

Defendants ask this Court to dismiss the Article 24 and Article 8 claims because NSEUSU failed to grieve these articles. Defendants further allege that dismissal of the Article 11 claim is appropriate for the same reason that it was appropriate in the context of Cabrera's claim – not only did NSEUSU refuse to arbitrate, but the claimed violation fails as a matter of law because the Trustees had the authority to administer Steps 1 and 2 of the grievance procedure in place of the executive board. Plaintiff responds that NSEUSU did not have to grieve Article 8 or 22 violations because they are excluded from the grievance and arbitration procedures, and that the Article 11 claim should survive because it was Defendants who first repudiated arbitration.

First, the Court notes that while NSEUSU alleges that Article 22 is excluded from the CBA's grievance procedure, the Amended Complaint only alleges violations of Articles 8, 11, and 24 – not Article 22. The Court therefore disregards any argument raised by NSEUSU that pertains to Article 22. To the extent that NSEUSU alleges it did not have to grieve violations of Articles 8 and 24 because they are exempt from the CBA's grievance procedure, the Court notes that it previously rejected that argument with respect to Plaintiff Miller. See ECF No. 224 at 9. Like Plaintiff Miller, NSEUSU does not contest the fact that it failed to grieve Articles 8 and 24 – NSEUSU argues only that it was excused from exhausting remedies under the terms of the CBA. The Court incorporates by reference its conclusions in its March 31 Order on the subject of exhaustion and finds that NSEUSU cannot proceed under § 301 for the alleged breaches of Articles

8 and 24. The Court further finds that NSEUSU's Article 11 claims are also barred because NSEUSU, like Cabrera, failed to arbitrate these claims. Moreover, insofar as NSEUSU argues a unilateral modification of the grievance procedure constituted an Article 11 violation, the Court finds that this allegation fails on the merits, for the reasons explained above with regards to Cabrera's arguments about repudiation. Defendants had the authority to modify the Step 2 procedure once Local 1107 was placed under emergency trusteeship and the CBA's Step 2 requirements could on longer be followed to the letter, and their modification of the procedure constituted substantial compliance with the terms of the CBA.

The Court accordingly grants Defendant SEIU's Motion for Reconsideration with respect to Defendant Cabrera and Defendant NSEUSU's § 301 claims, and dismisses the seventh and eighth claims of the Amended Complaint.

### ii. Plaintiff Miller's ADA and State Law Claims

Defendants next argue that the Court failed to rule on its argument, raised in its Motion for Summary Judgment, that summary judgment is appropriate with respect to Plaintiff Miller's claims for retaliation and hostile work environment under the ADA and the Nevada state law counterpart, NRS 613.340. Defendants argue that the record evidence does not show that Miller was demoted, subjected to a change in organizing territory, or that the qualifications for the front desk position she requested were altered in response to her request. As such, Defendants contend there is no evidence supporting Miller's harassment and retaliation theories, and that summary judgment is thus appropriate on the second, third, and eleventh claims of the Amended Complaint. Plaintiff responds that there is sufficient evidence in the record to create at least a genuine dispute of material fact as to whether she was retaliated against for seeking reasonable accommodations and subjected to a hostile work environment for her disability.

To establish a prima facie case of retaliation und the ADA, an employee must show that (1) he or she engaged in a protected activity; (2) he or she suffered an adverse employment action; and (3) there was a causal link between the two. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 849 (9th Cir. 2004). To establish a case of hostile work environment, an employee must show that her

10

"workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

Plaintiff has sufficiently alleged that she engaged in a protected activity when she requested various accommodations after collapsing at work, including that she be transferred to the front desk position that had a fixed schedule. See Pardi, 389 F.3d at 850 ("Pursuing one's rights under the ADA constitutes a protected activity."). Plaintiff alleges that all of her requests were denied either without good reason or for pretextual reasons – for instance, Plaintiff alleges that Defendants declined her transfer request citing her lack of Spanish language skills, when no such bilingual requirement had previously been imposed. Further, Plaintiff alleges that after Defendants rejected her request for accommodations, they subjected her to retaliation by demoting her from Lead Organizer to Organizer and by changing her organizing territory. See id. ("An adverse employment action is any action reasonably likely to deter employees from engaging in protected activity." (internal quotations and citations omitted)).

The Court finds that there is sufficient evidence in the record to raise a triable question of fact as to whether Miller was retaliated against or subjected to a hostile work environment. There is testimony from various individuals – including Trustee Manteca and Plaintiff herself – that a Spanish language requirement was not imposed for the front desk position until after Miller requested the job change. There is also testimony representing that SEIU employee Grace Vergara transferred Miller to work for the County bargaining unit and directed her to report to another employee – Lanita Troyano – after Miller requested her accommodations. While Defendants argue that this transfer was not a demotion, Plaintiff contends that it was. Miller has thus adduced sufficient evidence to create a genuine dispute of material fact as to whether she was denied a request for accommodation on the basis of pretext, and also transferred to a less desirable assignment in retaliation for engaging in a protected activity under the ADA. See Pardi, 389 F.3d at 849 (summary judgment is inappropriate if a triable issue of fact exists as to whether an employer's reason for denying a reasonable accommodation is pretextual). Whether these actions

11

were causally linked to Miller's reasonable request for accommodation, whether Local 1107's denials of Miller's requests were pretextual, and whether these actions were severe or pervasive enough to alter the conditions of Miller's employment, are ultimately fact-based questions that turn on witness credibility, and that must be resolved by a jury at trial. See McLaughlin v. Liu, 849 F.2d 1205, 1207 (9th Cir. 1988).

The Court therefore denies Defendants' Motion for Reconsideration with respect to Miller's retaliation and hostile work environment claims. The second, third, and eleventh claims of the Amended Complaint shall proceed to trial.

### iii. Alter-Ego/Single Employer Analysis

Finally, Defendants argue that the Court clearly erred in its alter-ego analysis in the March 31 Order. Defendants raise two arguments on this issue.

First, Defendants argue that the Court provided the wrong legal standard in its alter-ego analysis for the purposes of the § 301 claims, because the standard for alter ego liability under § 301 is different than the standard under the ADA. Defendants contend that for § 301 purposes, Plaintiffs must show not only that Local 1107 and SEIU were a single employer, but also that Local 1107 was being used in "a sham effort to avoid collective bargaining obligations." Because this second showing has not been made, Defendants argue, there is no alter-ego liability for any of the Plaintiffs' § 301 claims. Second, with respect to all other claims against SEIU, Defendants argue that the Court clearly erred in finding that a genuine dispute of material fact exists as to whether SEIU is a single employer with Local 1107. Defendants argue there is no evidence in the record that SEIU itself was directly involved in the decisions related to Plaintiffs or had any "centralized control" over Local 1107's labor relations. Defendants argue that there must be evidence showing that "a common manager had a dominant role in both entities, which is absent here." As such, Defendants contend, Plaintiffs fail to establish an essential element of alter-ego liability for either the § 301 claims or the ADA and state law claims.

First, the Court notes that it previously dismissed claims five and thirteen of the Amended Complaint, which alleged § 301 violations as to Plaintiffs Miller and Mancini. See ECF Nos. 131,

224. As such, prior to the filing of the instant motion, the only § 301 claims that survive for the purposes of an alter-ego/single employer analysis in the § 301 context are Plaintiff Cabrera's and NSEUSU's claims (the seventh and eighth claims of the Amended Complaint). Because the Court dismisses those claims for the reasons stated above, Defendants' alter ego/single employer argument is moot with respect to the § 301 claims.

Thus, the only remaining claims for which an alter-ego analysis is required are Plaintiff Miller's ADA and state law claims. As previously stated in the Court's March 31 Order, to determine whether two employing entities are "alter-egos" for the purposes of the ADA and Nevada law, the court considers (1) inter-relation of operations; (2) common management;(3) centralized control of labor relations; (4) common ownership or financial control. Herman v. United Bhd. of Carpenters and Joiners of Am., Local Union No. 971, 60 F.3d 1375, 1383 (9th Cir. 1995). No separate showing of a "a sham effort to avoid collective bargaining obligation" is required. Id. The Court found in its March 31 Order that a genuine dispute of material fact exists as to whether Blue, "by virtue of her high-level position within [the] SEIU, may have had sufficient and continuous contact with SEIU" to support an alter ego finding. The Court does not find that this previous conclusion was "clearly erroneous" or that there has been an intervening change in controlling law sufficient to warrant reconsideration of its previous ruling. Nunes, 375 F.3d at 807. The Court therefore denies Defendants' Motion for Reconsideration with respect to its alter-ego/single-employer argument.

### b. Defendant Local 1107's Motion for Reconsideration (ECF No. 227)

In addition to joining Defendant SEIU's Motion for Reconsideration, discussed above, Defendant Local 1107 submitted its own motion, setting forth only one argument – that the Court erred in declining to enter summary judgment on Plaintiff Cabrera's claim for punitive damages. Local 1107 argues the Court committed clear error in permitting Cabrera's claim for punitive damages to proceed to trial, because the Court's order impermissibly rests upon allegations in the pleadings, rather than on evidence in the record.

Because the Court dismisses Plaintiff Cabrera's § 301 claim for failure to exhaust mandatory contractual remedies, it finds that Defendant Local 1107's motion for reconsideration on the subject of punitive damages is moot. The motion is accordingly denied.

### c. Plaintiff Miller's Motion for Reconsideration (ECF No. 232)

Finally, Plaintiff Miller moves for reconsideration of the Court's order dismissing Miller's § 301 claim. Plaintiff asks the Court to reinstate that claim for alleged clear error in misunderstanding that Articles 8 and 22 of the CBA were not subject to the grievance and arbitration procedures. Defendants counter that Miller was not excused from attempting to exhaust her contractual remedies for the claimed Article 8 and 22 breaches. Defendants submit that there is at least ambiguity as to whether Articles 8 and 22 were exempt from grievance and arbitration, and any ambiguity must itself be resolved through arbitration in the first instance.

The Court agrees with Defendants that it is not clear from the face of the CBA that Miller's claims under Articles 8 and 22 were exempt from the CBA's grievance process. Article 8 provides that "the reserved rights of SEIU Local 1107 shall not be subject to the grievance and arbitration provisions of this Agreement," and that Local 1107 shall have the unilateral right "to hire temporary employees . . . *unless it is for the sole purpose of displacing bargaining unit employees*." ECF No. 172-2 at 12 (emphasis added). Miller's Article 8 claim fell squarely within the excepted language – that is, Miller claimed a breach of Article 8 on the basis that the front desk person was hired "*for the sole purpose of displacing bargaining unit employees*." Thus, if Plaintiff were correct, this violation would not be within Local 1107's "reserved rights," and thus would not be exempt from the CBA's grievance and arbitration provisions. There was thus at least an ambiguity as to whether Miller's claimed Article 8 breach fell within the CBA's grievance and arbitration procedure. The same is true of Miller's Article 22 claim. Article 22's grievance and arbitration exclusion states: "while bilingual pay will not be arbitrarily denied or withdrawn, the President's determination is final and shall not be subject to the grievance and arbitration procedure." Id. at 29. However, Plaintiff did not challenge whether her bilingual pay was "arbitrarily denied" or "withdrawn" –

14

rather, she challenged whether it violated the CBA for a Trustee to determine that the front-desk receptionist must speak Spanish. Therefore, it is again at least ambiguous as to whether Plaintiff's claimed Article 22 violation would be subject to grievance and arbitration.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 649 (1986). Here, Article 11 of the parties' CBA unmistakably provided that "the arbitrator shall decide [arbitrability] prior to hearing the merits of the case" if and when "the parties disagree about the arbitrability of a grievance." ECF No. 172-2 at 17. Given that there is ambiguity and disagreement as to whether Plaintiff Miller's claimed breaches of Articles 8 and 22 were arbitrable, Plaintiff was bound by Article 11's requirement that the ambiguities and disagreements first be resolved by an arbitrator, rather than by this Court. Because Miller failed to arbitrate whether her claimed violations of Articles 8 and 22 were subject to the CBA's grievance and arbitration procedure, she cannot proceed under § 301, and her Motion for Reconsideration is accordingly denied.

V.   **CONCLUSION**

**IT THEREFORE IS ORDERED** that Defendant SEIU's Motion for Reconsideration, ECF No. 225, is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant Local 1107's Motion for Reconsideration, ECF No. 227, is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 232, is **DENIED**.

. . .

. . .

. . .

. . .

**IT IS FURTHER ORDERED** that the Proposed Joint Pretrial Order, ECF No. 240, and Stipulation Regarding Availability of Parties for Trial, ECF No. 249, are **DENIED** as moot. The parties are instructed to submit an amended joint pretrial order setting forth proposed trial dates in April, May, or June of 2022.

DATED: January 10, 2022.

_____
RICHARD F. BOULWARE, II
United States District Judge